# EXHIBIT 3

INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

WASHINGTON, D.C.

IN THE PROCEEDING BETWEEN

**VENEZUELA HOLDINGS, B.V.**
**MOBIL CERRO NEGRO HOLDING, LTD.**
**MOBIL VENEZOLANA DE PETRÓLEOS HOLDINGS, INC.**
**MOBIL CERRO NEGRO, LTD. AND**
**MOBIL VENEZOLANA DE PETRÓLEOS, INC.**
(RESPONDENTS)

AND

**BOLIVARIAN REPUBLIC OF VENEZUELA**
(APPLICANT)

**(ICSID CASE NO. ARB/07/27**

---

**DECISION ON REVISION**

---

*Members of the Tribunal:*
H.E. Judge Gilbert Guillaume, *President*
Professor Gabrielle Kaufmann-Kohler, *Arbitrator*
Dr. Ahmed Sadek El-Kosheri, *Arbitrator*

*Secretary of the Tribunal:*
Ms. Alicia Martín Blanco

Date of dispatch to the Parties: 12 June 2015

# PARTIES' REPRESENTATIVES

*Representing the Respondents:*

Mr. Thomas L. Cubbage III
Mr. Miguel López Forastier
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, D.C. 20004-2401
USA
  and
Mr. Gaëtan Verhoosel
Mr. Scott Vesel
Three Crowns LLP
New Fetter Place
8-10 New Fetter Lane
London EC4A 1AZ
UK
  and
Mr. René J. Mouledoux
Mr. Eugene J. Silva II
Production Company Law Department
Exxon Mobil Corporation
1301 Fannin Street
CORP-FB-1459
Houston, TX  77002
USA

*Representing the Applicant:*

Dr. Reinaldo Enrique Muñoz Pedroza
Viceprocurador General de la República
Av. Los Ilustres, cruce con calle Francisco
Lazo Martí
Edif. Procuraduría General de la
República, piso 8
Urb. Santa Mónica
Caracas 1040
Venezuela
  and
Mr. George Kahale, III
Mr. Benard V. Preziosi, Jr.
Ms. Miriam K. Harwood
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178
USA
  and
Ms. Gabriela Álvarez-Ávila
Curtis, Mallet-Prevost, Colt & Mosle, S.C.
Rubén Darío 281, Pisos 8 & 9
Col. Bosque de Chapultepec
11580 Mexico, D.F.
Mexico

## 1.    BACKGROUND AND PROCEDURAL HISTORY

1.1.    On 23 October 2014, the Bolivarian Republic of Venezuela ("Applicant") submitted to the Secretary-General of ICSID an Application for Revision of the Arbitral Tribunal's Award of 9 October 2014 ("Application").  The Application was made on the basis of Article 51 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention") and Rule 50 of the ICSID Rules of Procedure for Arbitration Proceedings ("Arbitration Rules").

1.2.    On 24 October 2014, the Application was registered by ICSID pursuant to ICSID Arbitration Rule 50(2)(a) and transmitted to Venezuela Holdings, B.V., Mobil Cerro Negro Holding, Ltd., Mobil Venezolana de Petróleos Holdings, Inc., Mobil Cerro Negro, Ltd. and Mobil Venezolana de Petróleos, Inc. ("Respondents" or "Mobil Parties") and to each Member of the Tribunal pursuant to ICSID Arbitration Rules 50(2)(c) and 51(1)(a).

1.3.    The Tribunal was reconstituted on 30 October 2014, in accordance with ICSID Arbitration Rule 51(2).

1.4.    On 21 November 2014, the Respondents filed a Request to Lift the Provisional Stay of Enforcement of the Award, in accordance with ICSID Arbitration Rule 54(2).

1.5.    On 3 December 2014, the Parties file a joint submission containing procedural arrangements to be discussed at the first session.  The first session was held on 10 December 2014 by conference call.

1.6.    On 18 December 2014, the Secretary circulated Procedural Order No. 1, containing the Parties' procedural agreements and the Tribunal's decisions.

1.7.    On 19 January 2015, The Applicant submitted its (i) Response to the Respondent's Request to Lift the Provisional Stay of Enforcement of the Award and (ii) Memorial in Further Support of its Application for Revision of the Award.

1.8.    On 27 February 2015, the Respondents submitted their Counter-Memorial in Opposition to the Application for Revision of the Award.

1.9.    On 11 March 2015, the Secretary circulated the Tribunal's invitation for the Parties' submissions regarding the existence of a time requirement contained in Article 51(1) of the ICSID Convention.  The Parties submitted their respective positions on 19 March 2015.

1.10.   Following consultations with the Parties, on 6 April 2015, the Tribunal informed the Parties that a hearing would not be necessary, in accordance with Section 12 of Procedural Order No. 1.  On the same date, the Tribunal invited the Parties to submit statements of costs.  The Parties submitted their respective statements of costs on 13 April 2015.

1.11.   The proceeding was declared closed on 11 May 2015, in accordance with ICSID Arbitration Rule 38(1).

## 2.    POSITION OF THE PARTIES

### 2.1    Application for Revision

**2.1.1**   The Applicant claims that the Respondents' actions after the Award was rendered show that they had no intention of honoring representations made before the Award was rendered.[1] Had these facts been known, they would have decisively affected the relief granted in the Award.[2]

**2.1.2**   In particular, before the Award was rendered, the Respondents stated that, in order to avoid double recovery in the event of an Award in their favor, they were willing to reimburse Petróleos de Venezuela, S.A. ("PDVSA") in accordance with Clause 15(1) of the Cerro Negro Association Agreement ("CNAA") for the compensation already received in the ICC arbitration. The Tribunal relied on this representation in its decision regarding double recovery.[3]

**2.1.3**   However, after the Award was rendered, the Respondents sought and obtained in a U.S. federal court an *ex parte* Order and Judgment in the full amount of the Award without mentioning the double recovery issue, and have not acknowledged that recovery should be reduced by the full amount already paid in satisfaction of the parallel ICC arbitration.  As these facts occurred after the Award was rendered, they were not known or capable of being discovered by the Tribunal or Venezuela at the time when the Award was rendered.  Had they been known, they would have decisively affected the relief granted, including the method to effectuate and calculate the reduction to avoid double recovery.[4]

**2.1.4**   Accordingly, the Applicant requests the following revisions to paragraph 404 of the Award:

---

[1] Application, paras. 4-5.

[2] Application, para. 12.

[3] Application, para. 9.

[4] Application, para. 12.

5

*Paragraph 404(e) of the Award should be revised to add the following sentence as the second sentence of the subparagraph: "The required reimbursements to PDVSA will be made simultaneously with the satisfaction of this Award."; and*

*Paragraph 404(h) of the Award should be revised to add the following sentence at the end of the subparagraph: "The reimbursement contemplated by subparagraph (e) above shall be with interest at the same rate of interest specified in this subparagraph (h) or, in the alternative, the portion of the Award equal to the amount of the reimbursement referred to in subparagraph (e) above shall not bear interest from the date such amount was paid to Mobil Cerro Negro."[5]*

**2.1.5**    The Applicant further requests that the stay of enforcement of the Award be maintained until the Tribunal's decision on the Application for Revision and that the Respondents be ordered to pay the full costs of these proceedings, including attorney's fees and expenses.[6]

**2.2**    **Preliminary Response to the Application for Revision**

**2.2.1**    In their Preliminary Response to the Application for Revision, the Respondents qualify the Application as an abuse of the revision procedure aimed to delay compliance with the Award.[7]    The Respondents contend that the Application should be dismissed for any of the following reasons.

---

[5] Application, para. 13.

[6] Application, para. 14.

[7] Preliminary Response, p. 1.

**2.2.2**    First, the Application does not meet the admissibility requirements of Article 50(1)(c)(ii) of the ICSID Convention as it does not identify any new facts.  The Respondents' interpretation of Clause 15.1(a) of the CNAA is the same now as it was before the Award was rendered, and the Respondents remain fully prepared to reimburse the relevant amount in accordance with the CNAA.[8]

**2.2.3**    Second, the Tribunal has no jurisdiction to grant the relief sought, as it would require interpreting a provision of the CNAA, which contains its own dispute settlement mechanism and to which the Applicant is neither a party nor a beneficiary.[9]

**2.2.4**    Third, the Application is based on a false premise because the Award does not require Mobil Cerro Negro ("MCN") to repay Petróleos de Venezuela, S.A. Cerro Negro ("PDVSA-CN") the full amount paid in satisfaction of the Award in the ICC arbitration.  To the contrary, reimbursement is only required for the payments made after deducting legal costs and to the extent that both payments relate to the same measures.  In addition, the CNAA does not require that reimbursement be made with interest, and any dispute over this issue is beyond the jurisdiction of this Tribunal.[10]

**2.2.5**    Based on the above, the Respondents conclude that the Application is of a "frivolous nature" and constitutes "nothing more than a dilatory tactic" that should be overruled forthwith.[11]

**2.3**        **Request to lift the Provisional Stay of Enforcement of the Award**

---

[8] Preliminary Response, pp. 1-2.

[9] Preliminary Response, pp. 2-3.

[10] Preliminary Response, pp. 3-5.

[11] Preliminary Response, p. 5.

**2.3.1**    The Respondents request that the stay of enforcement provisionally granted by the Secretary-General with the registration of the Application be entirely or partially lifted.

**2.3.2**    According to the Respondents, the circumstances of the present case do not require that enforcement be stayed since the Application has no factual or legal basis and, even if granted, it would affect less than twelve percent of the Applicants compensation obligations under the Award.[12]

**2.3.3**    The Respondent refers to instances where annulment committees have denied stays of enforcement when the application had a dilatory purpose or the State did not give reasonable assurances that it would comply with the award.  The Respondents contend that the rationale for these decisions applies all the more to a revision proceeding, where the merits of the decision are not contested.[13]

**2.3.4**    Should the Tribunal decide to continue the stay, the Respondents request that the Tribunal maintain the stay subject to the conditions that (i) it extends only to the portion of the Award affected and that it be subject to (ii) payment of the undisputed balance of the Award and (iii) posting an irrevocable guarantee or bond as security for the remainder of the Award.[14]

**2.4    Memorial in Support of the Application for Revision and in Response to the Request to lift the Provisional Stay of Enforcement of the Award**

**2.4.1**    In its Memorial, the Applicant addresses the Respondents' arguments.    As to admissibility of the Application, the Applicant identifies:

---

[12] Request to Lift the Provisional Stay, p. 1.

[13] Request to Lift the Provisional Stay, pp. 1-3.

[14] Request to Lift the Provisional Stay, pp. 3-5.

a) The "new facts upon which the Application for Revision is based".  Namely, the Mobil Parties (i) having made clear after the Award that they have no intention of honoring representations made before the Award regarding double recovery; and (ii) proceeding immediately after the rendering of the Award, *ex parte* and without consulting the Applicant to attempt to enforce the full amount of compensation without mentioning any reduction necessary to avoid double recovery.[15]

b) Two ways in which these facts affect the Award.  Namely, by (i) making it impossible to calculate the amount due under the Award and (ii) violating the terms on which the Award was made.[16]

**2.4.2**    As to the jurisdictional argument, the Applicant recognizes "certain jurisdictional issues", but considers that that the Tribunal has the power to take the necessary steps to ensure there is no double recovery.[17]  The Applicant argues that, irrespectively of how the amounts are calculated under the CNAA, both the ICC Tribunal and the ICSID Tribunal awarded compensation for the same act, namely the expropriation of the Cerro Negro Project.  In this sense, the Applicant's request is limited to the Tribunal giving effect to its directive to avoid double recovery by requiring that the credit for the compensation already paid be made simultaneously with the payment of the Award.[18]  Regarding interest, the Applicant does not consider that there is a jurisdictional issue.  According to the Applicant, when the Tribunal awarded interest it could not

---

[15] Applicant's Memorial, para. 9.

[16] Applicant's Memorial, para. 11.

[17] Applicant's Memorial, para. 12.

[18] Applicant's Memorial, paras. 13-15.

have intended for such interest to run on the full compensation awarded irrespective of interest on the amount thereof that had already been paid.[19]

**2.4.3**   The Applicant finally rejects the accusation of dilatory tactics.[20]

**2.4.4**   Regarding the request to lift the stay of enforcement, the Applicant states the following:

a) The stay should be maintained because it is necessary to prevent abusive litigation tactics during the pendency of the revision proceeding.  The Applicant further argues that the characterization of the Application as a ploy to delay payment cannot be reconciled with the willingness to proceed with briefing on an accelerated scheduled.  Moreover, it is not unusual for ICSID tribunals to maintain stays of enforcement for extended periods of time, and in this particular case with an expedited briefing schedule there is no reason to prematurely lift the stay when the entire revision proceeding has almost been completely briefed.[21]

b) The stay should not be subject to the provision of a bank guarantee since there is no general consensus that ICSID tribunals have the power to require security as a condition of exercising the right under the ICSID Convention to seek revision of an award.  Moreover, requiring security would place the Mobil Parties in a better position than they enjoyed before the Application.[22]

---

[19] Applicant's Memorial, para. 16.

[20] Applicant's Memorial, para. 17.

[21] Applicant's Memorial, paras. 19-22.

[22] Applicant's Memorial, paras. 23-24.

**2.4.5**    Accordingly, the Applicant request that the Application be admitted, that paragraph 404 of the Award be revised as specified in paragraph 2.1.4 above, that the stay of enforcement be maintained until a decision on the Application is rendered, that the alternative request for the stay to be partially lifted and conditioned on the provision of a bank guarantee be rejected and that the Mobil Parties be ordered to pay the full costs of these proceedings, including attorney's fees and expenses.[23]

**2.5**    **Counter-Memorial in Opposition to the Application for Revision**

**2.5.1**    In their Counter-Memorial, the Respondents argue that the Application:

a) Fails to identify a fact of such a nature as decisively to affect the Award or to provide evidence that this fact was unknown to the Tribunal and Applicant at the time the Award was rendered.  The only alleged new fact is the Respondents' attempt to recognize the Award, which as a threshold matter cannot possibly constitute a new fact in the sense of Article 51(1) of the ICSID Convention.[24]

b) Would require the Tribunal to decide matters outside its jurisdiction.  First, the Applicant's request that paragraph 404(e) of the Award be revised to require that the reimbursements to PDVSA be made simultaneously with the satisfaction of the Award would require the Tribunal to rule on matters (a) affecting PDVSA and MCN, which are not parties to the ICSID proceedings; and (b) concerning the CNAA, over which this Tribunal lacks jurisdiction.[25]  Second, the Applicant's

---

[23] Applicant's Memorial, para. 26.

[24] Respondents' Counter-Memorial, para. 8.

[25] Respondents' Counter-Memorial, paras. 16-18.

request that paragraph 404(h) of the Award be revised to include interest on the reimbursement would require a determination by the Tribunal of whether the CNAA requires reimbursement to include interest, a matter falling outside the jurisdiction of the Tribunal.[26]

c) Is premised on false contentions and mischaracterizations of the relevant facts. Generally, the Respondents contend that the Application is rooted in the premise that the Award requires the Mobil Parties to reduce, credit or offset the entirety of the amounts obtained under the ICC award from the amounts due under the ICSID Award, which is false.  What the Award orders is payment of the entire amount to the Mobil Parties while recording MCN's obligation to reimburse PDVSA under the CNAA upon receipt of these funds.[27]  The Respondents further deny the allegation that they have no intention of honoring their assurances that MCN will make the reimbursement required by the CNAA to prevent double recovery.[28]    Finally, the Respondents contend that the Applicant has mischaracterized the ICC award in arguing that it provided a remedy solely for the expropriation through Decree Law 5200.  In fact, the Respondents contend that the contractual indemnity determined by the ICC Tribunal was calculated to include compensation for every Discriminatory Measure, including the Income Tax Measure.  Since the ICSID Tribunal found that it could not provide a remedy for the Income Tax Measure, reimbursement under Article 15 of the CNAA may

---

[26] Respondents' Counter-Memorial, paras. 21-22.

[27] Respondents' Counter-Memorial, paras. 9-10.

[28] Respondents' Counter-Memorial, paras. 24-25.

not apply to the entire amount of compensation awarded by the ICC Tribunal.[29]
Accordingly, offsetting Venezuela's payment under the ICSID Award by the full
amount of the ICC award would create a windfall for the Applicant[30] and ignore
the requirement under the CNAA that reimbursement be reduced by the costs
incurred to obtain relief from Venezuela.[31]

**2.5.2**    In conclusion, the Respondents request that the Tribunal deny the Application and award
the Mobil Parties all associated costs.

## 2.6    Applicant's Response to the Tribunal's Question

**2.6.1**    In response to the Tribunal's question, the Applicant's position[32] is that Article 51(1) of
the ICSID Convention does not require that the discovered fact predate the Award.  However,
even if this were a requirement, the Application would still be admissible as it involves facts
both before and after the Award was rendered, the latter being a manifestation and revelation of
the former.

**2.6.2**    In support of its argument that there is no time requirement under Article 51(1) of the
ICSID Convention, the Applicant states that (i) the provision itself does not expressly require
that the fact predate the award;[33] (ii) there is nothing in the *travaux* that would lead to the
conclusion that a time requirement exists;[34] (iii) Prof. Schreuer acknowledges the possibility that

---

[29] Respondents' Counter-Memorial, paras. 28-34.

[30] Respondents' Counter-Memorial, para. 35.

[31] Respondents' Counter-Memorial, para. 37.

[32] Applicant's letter of 19 Mach 2015.

[33] Applicant's letter of 19 March 2015, para. 2.

[34] Applicant's letter of 19 March 2015, para. 2.

facts subsequent to an award may give rise to an application for revision;[35] (iv) when interpreting a similar provision, the European Court of Justice acknowledged that the relevant new fact may have arisen after the judgment;[36] and (v) the only ICJ decision on the issue involved a fact emerging years after the judgment that could not have had any impact on it.[37]

**2.7    Respondents' Response to the Tribunal's Question**

**2.7.1**    The Respondents argue that the newly discovered fact referred to by Article 51(1) of the ICSID Convention must predate the rendering of the award.   The Respondents reach this conclusion by analysing the language of the article and the practice of the ICJ.

**2.7.2**    According to the Respondents, the remaining requirements of Article 51(1) of the ICSID Convention reflect an understanding that the fact existed prior to the rendering of the award.   In particular, (i) a fact that did not exist before the award could never have been known by the Tribunal, (ii) its ignorance could never have been due to negligence; and (iii) such inexistent fact could not have been capable of decisively affecting the award.[38]

**2.7.3**    The Respondents further rely on the ICJ's interpretation of Article 61 of the Statute of the CJJ, on which Article 51(1) is based.[39]

**2.7.4**    Finally, the Respondents acknowledge the potential exception referred to by Professor Schreuer relating to costs but consider that it is not applicable to the present case, since the Application is not based on a new fact that relates to costs.[40]

---

[35] Applicant's letter of 19 March 2015, para. 4.

[36] Applicant's letter of 19 March 2015, para. 3.

[37] Applicant's letter of 19 March 2015, paras. 5-6.

[38] Respondents' letter of 19 March 2015, paras. 2-3.

[39] Respondents' letter of 19 March 2015, paras. 6-15.

## 3.    THE TRIBUNAL'S ANALYSIS

**3.1.1**    Article 51 of the ICSID Convention reads as follows:

"(1) Each Party may request revision of the award by an application in writing addressed to the Secretary-General on the ground of discovery of some fact of such a nature as decisively to affect the award, provided that when the award was rendered that fact was unknown to the tribunal and to the applicant and that the applicant's ignorance of the fact was not due to negligence.

(2) The application shall be made within 90 days after the discovery of such fact and in any event within three years after the date on which the award was rendered."

**3.1.2**    The text of the ICSID Convention must be interpreted "in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in the context and in the light of its object and purpose", in accordance with Article 31(1) of the Vienna Convention on the Law of Treaties.[41]

**3.1.3**    The Tribunal notes that, under Article 51 of the ICSID Convention, an application for revision must satisfy the following conditions:

a)    the application should be based upon the "discovery" of a "fact";

b)    the fact, the discovery of which is relied on, must be "of such a nature as decisively to affect the award";

c)    the fact should have been "unknown" to the Tribunal and to the applicant "when the award was rendered";

d)    the applicant's ignorance of the fact must not be due to "negligence"; and

---

[40] Respondents' letter of 19 March 2015, paras. 16-18.

[41] Vienna Convention on the law of treaties, concluded at Vienna on 23 May 1969.

e)    the application for revision must be made within 90 days after the discovery of the fact and in any event within three years after the date on which the award was rendered.

**3.1.4**    The Tribunal considers that these constitute cumulative requirements and that, if any among them is not met, the application must be dismissed.

**3.1.5**    Following the Tribunal's request that the Parties provide their comments on whether it was also a condition under Article 51(1) of the ICSID Convention that the discovered fact predate the Award, the Respondents contended that "the newly discovered fact must be a fact that predates the rendering of the Award."[42]

**3.1.6**    In response to the same question, the Applicant stated that the discovered fact "may have been pre-existing or may have arisen subsequent to the award".  However, the Applicant added, "the reality in this case is that the steps taken by the Mobil Parties immediately after the rendering of the Award are inextricably linked to the intentions and strategy formulated by the Mobil Parties prior to the Award when they made their representations to the Tribunal, which intentions and strategy were unknown to either the Tribunal or the Applicant until they were revealed after the rendering of the Award, when the Mobil Parties sought to enforce the full amount of the Award without recognition of the compensation already paid in 2012 or even any interest thereon."[43]  The Applicant concluded that this case involves "facts both before and after the award was rendered, the latter being a manifestation and revelation of the former."[44]

---

[42] Respondents' letter of 19 Mach 2015, p. 1.

[43] Applicant's letter of 19 Mach 2015, para. 1.

[44] Applicant's letter of 19 Mach 2015, para. 7.

**3.1.7**    The Tribunal understands that Venezuela's position is that there is no requirement under Article 51(1) of the ICSID Convention that the discovered fact predate the Award.  However, this requirement, even if it existed, would be irrelevant in the present case because the post-award facts are not relied on independently but in connection with pre-award facts.  Specifically, the Applicant argues an inextricable link between the two, where the subsequent facts constitute a revelation of the prior facts.  In other words, the subsequent facts are presented as evidence of the prior facts.

***Whether the discovered fact has to predate the award under Article 51(1) of the ICSID Convention***

**3.1.8**    In support of its position that post-award facts are covered by Article 51(1) of the ICSID Convention, the Applicant contends that (i) the provision itself does not expressly require that the fact predate the award;[45] (ii) there is nothing in the *travaux* that would lead to the conclusion that a time requirement exists;[46] (iii) Prof. Schreuer acknowledges the possibility that facts subsequent to an award may give rise to an application for revision;[47] (iv) when interpreting a similar provision, the European Court of Justice acknowledged that the relevant new fact may have arisen after the judgment;[48] and (v) the only ICJ decision on the issue involved a fact emerging years after the judgment that could not have had any impact on it.[49]

---

[45] Applicant's letter of 19 March 2015, para. 2.

[46] Applicant's letter of 19 March 2015, para. 2.

[47] Applicant's letter of 19 March 2015, para. 4.

[48] Applicant's letter of 19 March 2015, para. 3.

[49] Applicant's letter of 19 March 2015, paras. 5-6.

**3.1.9**  While it is true that Article 51(1) does not expressly require that the discovered fact predate the Award, both the textual implications of the provision as well as its object and purpose confirm that the discovered fact needs to have existed before the Award was rendered.

**3.1.10**  The Tribunal observes that, under Article 51(1) of the ICSID Convention, an application for revision of an award <u>requires</u> that (i) the fact "was unknown" and that (ii) ignorance of the fact "must not be due to negligence".  These requirements must be met "when the award was rendered".

**3.1.11**  Thus, Article 51 <u>presupposes</u> that the relevant fact *could have been known when the award was rendered* and that, had it not been known, said ignorance *could have been due to negligence when the award was rendered*.  Only a fact that existed when the award was rendered could have been known when the award was rendered.  Only ignorance of a fact that existed when the award was rendered could be due to negligence.  It follows that only a fact that existed when the award was rendered may form the basis for a request for revision under Article 51(1) of the ICSID Convention.

**3.1.12**  That interpretation not only corresponds to the terms of Article 51(1), but also to its object and purpose.  The concept of revision adversely affects the principle of *res judicata* and is therefore capable of impairing the stability of legal relations.[50]  It is not accepted in all arbitral rules[51] and, when accepted, it must remain exceptional.

**3.1.13**  The Tribunal acknowledges Prof. Schreuer's opinion that "[e]xceptionally, a new fact may arise after the award has been completed that may be an appropriate basis for revision.  For

---

[50] Sh. Rosenne, *The Law and Practice of the International Court*, Vol. III, 167 1.

[51] Christoph Schreuer et al., *The ICSID Convention: A Commentary* (2nd ed. 2009), p. 879.

instance, payments made to ICSID towards the costs of proceedings after the awards' completion or legal fees that are billed after the award's signature will not be reflected in the award's determination on costs."[52]  However, the Tribunal notes that Article 51 of the ICSID Convention does not contemplate exceptions.  In any event, the exception referred to by Prof. Schreuer would not be applicable in the present case.

**3.1.14**  The Tribunal observes that there are few cases dealing with revision, including non-ICSID cases, and that both Parties have relied on judgments of international courts in furtherance of their arguments.  According to the Applicant, the ECJ has acknowledged that facts occurring after the issuance of a judgment may constitute grounds for an application for revision,[53] whereas the ICJ's contrary position does not apply to the present case as it is distinguishable on the facts.[54]  To the contrary, the Respondents rely on the ICJ's reasoning because Article 51 of the ICSID Convention was modeled after Article 61 of the ICJ Statue,[55] and because there is no substantive difference between the texts of these articles that could justify a different interpretation.[56]

**3.1.15**  The Tribunal does not agree that the ECJ acknowledged in *Jean-François Ferrandi v. Commission of the European Communities*[57] that facts occurring after the issuance of a judgment may constitute grounds for an application for revision.  In fact, the ECJ does not address this issue.  The application in that case was deemed inadmissible on the grounds that it was untimely

---

[52] Christoph Schreuer et al., *The ICSID Convention: A Commentary* (2nd ed. 2009), pp. 879-880.

[53] Applicant's letter of 19 March 2015, para. 3.

[54] Applicant's letter of 19 March 2015, paras. 5-6.

[55] Respondent's letter of 19 March 2015, para. 6.

[56] Respondent's letter of 19 March 2015, paras. 11-15.

[57] *Jean-François Ferrandi v. Commission of the European Communities*, Case C-403/85 Rev., ECR I991 I-01215, para. 12.

filed. Conversely, the European Court of Justice addressed this issue in *Riseria Modenese Srl v Council and Commission of the European Communities and Birra Peroni SpA*, where it decided that the admissibility of an application for revision is conditional on the existence of a fact "antedating the delivery of the judgment".[58]

**3.1.16** The Tribunal disagrees with the Applicant's assessment of the ICJ's judgment in *Bosnia and Herzegovina v. Yugoslavia*[59] when interpreting Article 61 of the ICJ Statute. In 2003, the Court had to examine a request presented by Yugoslavia to revise a judgment rendered in 1996. Yugoslavia was *inter alia* founding its request on a fact which occurred in 2000. The Court decided that it could not be regarded as "a new fact within the meaning of Article 61 capable of founding a request for revision of that Judgment".[60]

**3.1.17** In that case, the ICJ specifically addressed the issue of whether the discovered fact had to predate the judgment, and reached the conclusion that Article 61 of the ICJ Statute, on which Article 51 of the ICSID Convention was modelled,[61] refers to "a fact existing at the time when the judgment was given and discovered subsequently. A fact which occurs several years after a judgment has been given is not a 'new' fact within the meaning of Article 61. This remains the case irrespective of the legal consequences that such a fact may have."[62] The Court went on to

---

[58] *Riseria Modenese Srl v Council and Commission of the European Communities and Birra Peroni SpA.*, Case 267/80 rév., ECR 1985 -03499.

[59] *Application for Revision of the Judgment of 11 July 1996 in the Case Concerning Application of the Convention on the Prevention and Punishment of the Crime of Genocide (Bosnia and Herzegovina v. Yugoslavia), Preliminary Objections (Yugoslavia v. Bosnia and Herzegovina)*, Judgment of February 3, 2003, I.C.J. REPORTS 2003.

[60] *Application for Revision of the Judgment of 11 July 1996 in the Case Concerning Application of the Convention on the Prevention and Punishment of the Crime of Genocide (Bosnia and Herzegovina v. Yugoslavia), Preliminary Objections (Yugoslavia v. Bosnia and Herzegovina)*, Judgment of February 3, 2003, I.C.J. REPORTS 2003, para 68.

[61] Christoph Schreuer et al., *The ICSID Convention: A Commentary* (2nd ed. 2009), p. 879.

[62] *Application for Revision of the Judgment of 11 July 1996 in the Case Concerning Application of the Convention on the Prevention and Punishment of the Crime of Genocide (Bosnia and Herzegovina v. Yugoslavia), Preliminary Objections (Yugoslavia v. Bosnia and Herzegovina)*, Judgment of February 3, 2003, I.C.J. REPORTS 2003, para. 67.

analyze the legal consequences of the alleged new facts and concluded that they did not have the effects sought by the applicant and, even if they did, they did not constitute facts in the sense of Article 61.[63]

**3.1.18**  The same solution has been retained by a number of arbitral tribunals in comparable circumstances.  Thus, the Franco-Bulgarian Mixed Arbitral Tribunal held in 1929 that "the use of the word 'discovery' implies unquestionably the existence of the fact, which was unknown to the Tribunal, at the time when it gave the decision."[64]

**3.1.19**  The Tribunal notes that all international courts and tribunals which had the opportunity to consider the matter arrived at the conclusion reached by this Tribunal in paragraphs 3.1.10 to 3.1.11 above.  Under Article 51(1) of the ICSID Convention, an application for revision requires that the fact motivating it existed when the award was rendered.  Facts arising after the award was rendered are not capable of funding an application for revision under Article 51(1) of the ICSID Convention.  Accordingly, an application that relies on post-award facts is not admissible.

*Whether the Application relies on facts that predate the Award*

**3.1.20**  The Tribunal recalls that Venezuela's position has shifted from being based on post-award facts to being based on pre- *and* post-award facts, where the facts arising after the award was rendered serve as evidence of the facts arising before the award was rendered.

---

[63] *Application for Revision of the Judgment of 11 July 1996 in the Case Concerning Application of the Convention on the Prevention and Punishment of the Crime of Genocide (Bosnia and Herzegovina v. Yugoslavia), Preliminary Objections (Yugoslavia v. Bosnia and Herzegovina)*, Judgment of February 3, 2003, I.C.J. REPORTS 2003, para. 69.

[64] *Battus case*, Franco-Bulgarian Mixed Arbitral Tribunal, RDTAM, vol IX, p. 284-286. Cf. also decisions of the Franco-German mixed Arbitral Tribunal, *Creange case,* RDTAM 1924, vol V, p.114-116; *Guillaume Krichel case*  RDTAM,1928, Vol.VIII, p. 764; *Otzenberger case,* RDTAM 1929, vol IX, p.272.

**3.1.21** The alleged facts predating the Award are identified as "intentions and strategy". The Tribunal considers that "intentions and strategy" may or may not materialize into facts. Intentions and strategy characterise a state of mind and do not constitute events that may be considered facts in the sense of Article 51(1) of the ICSID Convention. Accordingly, even if the Tribunal were minded to find that an application for revision under Article 51(1) of the ICSID Convention may be based on the discovery of post-award facts relied on as evidence of pre-award facts, the Application would still be dismissed for want of pre-award facts.

**3.1.22** Moreover, even if intentions and strategy were considered facts, the Applicant has not provided evidence of the Mobil Parties' intentions and strategy at the time the contested representations were made to the Tribunal in the original proceeding.

**3.1.23** Since the only facts relied on in the Application arose after the Award had been rendered and have no connection to pre-award facts in the sense of Article 51(1) of the ICSID Convention, the Tribunal finds that the Application is not admissible. As a consequence, the Tribunal dismisses the Application in its entirety.

## 3.2    Stay of Enforcement

**3.2.1**    Rule 54 of the ICSID Arbitration Rules states as follows:

> "(1) The party applying for the interpretation, revision or annulment of an award may in its application, and either party may at any time before the final disposition of the application, request a stay in the enforcement of part or all of the award to which the application relates. The Tribunal or Committee shall give priority to the consideration of such a request.
>
> (2) If an application for the revision or annulment of an award contains a request for a stay of its enforcement, the Secretary-General shall, together with the notice of registration, inform

both parties of the provisional stay of the award. As soon as the Tribunal or Committee is constituted it shall, if either party requests, rule within 30 days on whether such stay should be continued; unless it decides to continue the stay, it shall automatically be terminated.

(3) If a stay of enforcement has been granted pursuant to paragraph (1) or continued pursuant to paragraph (2), the Tribunal or Committee may at any time modify or terminate the stay at the request of either party. All stays shall automatically terminate on the date on which a final decision is rendered on the application, except that a Committee granting the partial annulment of an award may order the temporary stay of enforcement of the unannulled portion in order to give either party an opportunity to request any new Tribunal constituted pursuant to Article 52(6) of the Convention to grant a stay pursuant to Rule 55(3).

(4) A request pursuant to paragraph (1), (2) (second sentence) or (3) shall specify the circumstances that require the stay or its modification or termination. A request shall only be granted after the Tribunal or Committee has given each party an opportunity of presenting its observations.

(5) The Secretary-General shall promptly notify both parties of the stay of enforcement of any award and of the modification or termination of such a stay, which shall become effective on the date on which he dispatches such notification."

**3.2.2**    In the present case, a provisional stay was granted by the Secretary-General upon registration of the Application, in accordance with ICSID Arbitration Rule 54(2).  Subsequently, the Tribunal decided to continue the stay in Section 15 of Procedural Order No. 1, in accordance with the last sentence of the same provision of the ICSID Arbitration Rules.

**3.2.3**    In accordance with ICSID Arbitration Rule 54(3), the stay is automatically terminated on the date of rendering of this Decision.

**4.     COSTS**

**4.1.1**   Article 61(2) of the ICSID Convention states as follows:

> "In the case of arbitration proceedings the Tribunal shall, except as the parties otherwise agree, assess the expenses incurred by the parties in connection with the proceedings, and shall decide how and by whom those expenses, the fees and expenses of the members of the Tribunal and the charges for the use of the facilities of the Centre shall be paid. Such decision shall form part of the award."

**4.1.2**   The Parties agreed the following in Section 3(2) of Procedural Order No. 1:

> "The Tribunal's assessment of the costs set forth in Convention Article 61(2), and its decision pursuant to that Article as to how and by whom those costs should be paid, may be set forth at the Tribunal's discretion in the Decision or in one or more separate Orders preceding or subsequent to the Decision. Each Party may present, in addition to the information required by Arbitration Rule 28(2), its position as to how and by whom costs should be paid and arguments supporting that position. Without prejudice to the foregoing, absent any contrary decision by the Tribunal, all costs shall be borne by both Parties in equal shares."

**4.1.3**   Both Parties have requested that the Tribunal award them all costs related to the proceedings.

**4.1.4**   In their submission on costs, the Respondents contended that they should be awarded all of their costs in accordance with the prevailing practice in international arbitration, which consist in apportioning costs on the basis that costs must follow the event.  In addition, awarding costs to the Mobil Parties would be particularly appropriate in this case, where the Application is alleged to be manifestly inadmissible and unmeritorious and filed for the sole purpose of delaying enforcement.  While the Applicant also requested that costs be awarded to Venezuela, it did not elaborate on why the apportionment of costs should be made in that manner.

**4.1.5**   Venezuela has filed an application for annulment of the Award, in addition to the Application that triggered the current revision proceedings.   The Tribunal notes that parallel post-award proceedings relating to the same award are permitted under the ICSID Convention. In fact, concurrent or overlapping applications may constitute the only procedural avenue for a party seeking the alternative application of these remedies as a consequence of the time limits envisaged in the Convention.   Accordingly, the Tribunal cannot conclude on this ground that the Application was filed for the sole purpose of delaying enforcement.

**4.1.6**   On the other hand, the Application has been dismissed as inadmissible on the grounds that it is not based on pre-award facts.   Every international court and tribunal considering this issue in the context of a revision proceeding has decided that the discovered fact must predate the award.   However, the Application was originally based on post-award facts only.   Moreover, Venezuela has consistently relied on the post-award nature of the alleged facts to substantiate another requirement of Article 51(1) of the ICSID Convention, namely that the discovered fact be unknown when the award was rendered.   In this sense, Venezuela argued that facts arising after the Award was rendered "could only become known after the Award".   It was only when the Tribunal invited the Parties to submit their positions on the timeliness of the discovered facts that the Applicant shifted to a position according to which the post-award facts constituted mere evidence of pre-award facts.

**4.1.7**   The Tribunal considers that the change in the Applicant's position is the result of the speedy preparation of the Application following the Mobil Parties' attempt to enforce the Award one day after it had been rendered.   Accordingly, the Tribunal finds that the purpose of the Application was not to request the revision of the Award on the basis of a genuine concern that

an unknown decisive fact had been left out, but rather to hinder the Respondents' swift attempt at enforcement.

**4.1.8**   The Respondents' legal fees and expenses amount to USD 93,463 and GBP 32,561.16.

**4.1.9**   The Applicant's legal fees amount to USD 157,999.25.

**4.1.10**  In the exercise of the discretion granted to the Tribunal by Article 61(1) of the ICSID Convention as well as Section 3(2) of Procedural Order No. 1, the Tribunal finds it appropriate to award (i) *all* of the costs of the proceedings, including ICSID's administrative fees and expenses and the Tribunal's fees and expenses,[65] as well as (ii) *all* of their legal fees and expenses to the Mobil Parties.  In making this decision, the Tribunal has taken into account the circumstances described in paragraphs 4.1.6 to 4.1.7 above.  Accordingly, the Applicant shall pay the Mobil Parties the following amounts:

a)      USD USD93,463 and GBP32,561.16 as legal fees and expenses; and

b)      all of the costs of the proceedings, once they have been definitely established by ICSID and no later than 30 days after ICSID has notified the Final Financial Statement to the Parties.

---

[65] The costs of the proceedings, which include the Tribunal's fees and expenses as well as ICSID's administrative fees and expenses, are paid out of the deposit on costs made by the Parties.  The ICSID Secretariat will provide the Parties with an *Interim* Financial Statement of the case account as of the date of this Decision.  A detailed *Final* Financial Statement of the case account will be provided as soon as all invoices are received and the account is final.  The remaining balance in the account will be reimbursed by ICSID to the Parties in proportion to the payments that they advanced to ICSID.

**5.    DECISION**

**5.1.**    For the reasons stated above, in accordance with Article 51 of the ICSID Convention, the Arbitral Tribunal makes the following Decision, which shall become part of its Award dated 9 October 2014:

    (i)    The Application for Revision is dismissed as inadmissible;

    (ii)    The stay of enforcement is hereby automatically terminated; and

    (iii)    The Applicant shall bear all costs related to the proceeding, including the administrative fees and expenses of the Centre, the fees and expenses of the Members of the Tribunal and the costs and legal fees of the Mobil Parties, as described in paragraph 4.1.10 above.

[SIGNED]

_____

Prof. Gabrielle Kaufmann-Kohler
Arbitrator

6 May 2015

[SIGNED]

_____

Dr. Ahmed Sadek El-Kosheri
Arbitrator

28 April 2015

[SIGNED]

_____

Judge Gilbert Guillaume
President

11 May 2015