UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOBIL CERRO NEGRO, LTD., *et al.*,

Petitioners,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

Respondent.

Case No. 23-cv-3506-RCL

**PETITIONERS' MOTION FOR DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND ......................................................................................................... 2

    A.    Venezuela's Consent to ICSID Arbitration and the Tribunal's Rejection of Venezuela's Objections to ICSID Jurisdiction. ..................................................... 2

    B.    The Original Award, Revision Proceeding, and Annulment Proceeding. .............. 3

    C.    The Resubmission Proceeding and Award. ............................................................ 5

    D.    Procedural History and Service. ............................................................................. 6

LEGAL STANDARD .................................................................................................................... 7

ARGUMENT .................................................................................................................................. 7

I.    This Court has Jurisdiction to Enforce Petitioners' ICSID Award Against Venezuela. .... 9

    A.    This Court Has Subject-Matter Jurisdiction Because, As *NextEra* Holds, the Arbitration Exception Applies. ................................................................................ 9

    B.    This Court Has Personal Jurisdiction Over Venezuela and Venezuela Has Been Duly Served. .......................................................................................................... 11

        1.    Because Venezuela Is A Foreign Sovereign with No Due Process Rights, Subject-Matter Jurisdiction Plus Service Equals Personal Jurisdiction.... 11

        2.    Venezuela Has Been Properly Served by Diplomatic Note ...................... 12

        3.    Venue Against A Foreign Sovereign Is Proper in This District. .............. 14

II.    Because Petitioners Have Presented a Duly Authenticated ICSID Award, They Have Established A Prima Facie Case Under 28 U.S.C. § 1608(e). .......................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Azadeh v. Gov't of Islamic Republic of Iran*,
  318 F. Supp. 3d 90 (D.D.C. 2018) ..................................................................................13

*Beer v. Islamic Republic of Iran*,
  574 F. Supp. 2d 1 (D.D.C. 2008) ......................................................................................7

*Blue Ridge Invs., L.L.C. v. Republic of Argentina*,
  735 F.3d 72 (2d Cir. 2013) ........................................................................................10, 11

*CC/Devas (Mauritius) Ltd. c. Republic of India*, 2022 QCCS 4785 (Can.), *aff'd sub. nom. Republic of India c. CCDM Holdings, LLC*, 2024 QCCA 1620 (Can.). .........................................................................................................................11

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
  No. 23-1201, 2024 WL 4394121 (U.S. Oct. 4, 2024) (mem.) .........................................11

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
  628 F. Supp. 3d 1 (D.D.C. 2022) ....................................................................................13

*Creighton Ltd. v. Government of State of Qatar*,
  181 F.3d 118 (D.C. Cir. 1999) ........................................................................................11

*Gates v. Syrian Arab Republic*,
  580 F. Supp. 2d 53 (D.D.C. 2008) ...............................................................................7, 14

*Kingdom of Spain v. Infrastructure Servs. Luxembourg S.à.r.l.*,
  [2023] HCA 11 (Austl.) ..................................................................................................11

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
  375 U.S. 311 (1964) ........................................................................................................11

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
  112 F.4th 1088 (D.C. Cir. 2024) ....................................................................1, 9, 10, 11

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
  73 F.4th 157 (3d Cir. 2023) .............................................................................................12

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ..........................................................................................11

*Tatneft v. Ukraine*,
  771 F. App'x 9 (D.C. Cir. 2019) .....................................................................................11

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
    No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) ...............................10, 13

*Trapote v. Bolivarian Republic of Venezuela*,
    729 F. Supp. 3d 34 (D.D.C. 2024) ................................................................................12, 13

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del
    Poder Popular para Relaciones Exteriores*, 87 F.4th 510 (D.C. Cir. 2023) .............1, 8, 14, 15

*Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*,
    336 F.2d 354 (2d Cir. 1964) ..................................................................................................11

**Statutes**

22 U.S.C. § 1650a ................................................................................................................ *passim*

28 U.S.C. § 1330 ................................................................................................................... 9, 11

28 U.S.C. § 1331 ........................................................................................................................ 9

28 U.S.C. § 1391 ...................................................................................................................... 14

28 U.S.C. § 1603 .................................................................................................................. 9, 14

28 U.S.C. § 1605 ............................................................................................................. 1, 9, 10

28 U.S.C. § 1608 ................................................................................................................ *passim*

**Other Authorities**

Agreement on Encouragement and Reciprocal Protection of Investments Between
    the Kingdom of the Netherlands and the Republic of Venezuela (With
    Protocol), Signed at Caracas on 22 October 1991, 1788 U.N.T.S. 45 ......................................3

Convention on the Settlement of Investment Disputes Between States and
    Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 ....................3, 10

Fed. R. Civ. P. 55 ............................................................................................................... 1, 7, 14

Federal Rule of Civil Procedure 55(b)(2) ...................................................................................1

The Hague Convention on the Service Abroad of Judicial and Extrajudicial
    Documents in Civil or Commercial Matters, 20 U.S.T. 1361; 658 U.N.T.S.
    163; T.I.A.S. No. 6638; 28 U.S.C.A.; 16 I.L.M. 1339 (1977) ...........................................6, 13

U.S. Const. amend. V ................................................................................................................11

## INTRODUCTION

Petitioners hereby move for Default Judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2). In support of their motion, Petitioners state as follows: As a party to the ICSID Convention, the United States is required to enforce ICSID awards and to give them the same full faith and credit as a judgment of a state court. Here, ICSID has entered an award in favor of Petitioners against Venezuela on claims related to expropriation of Petitioners' assets in Venezuela. Petitioners seek, pursuant to the Convention's implementing statute, 22 U.S.C. § 1650a, to enforce the award. Venezuela has failed to respond to service of the summons and the clerk has entered its default, so Petitioners are entitled to default judgment under Federal Rule of Civil Procedure 55(b)(2) and 28 U.S.C. § 1608(e).

Entering a default judgment against a foreign sovereign requires a *prima facie* evidentiary showing of entitlement to relief under 28 U.S.C. § 1608(e). For a claim to enforce an ICSID award, that is a very limited inquiry. "A district court tasked with enforcement must establish it has subject matter and personal jurisdiction over the matter." *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 519 (D.C. Cir. 2023). Once the Court establishes its jurisdiction, the *only* task for the Court is to "authenticate the award." *Id.* Neither the correctness of the ICSID tribunal's reasoning on the merits nor its jurisdictional rulings can be relitigated. *Id.* And here, the Court has jurisdiction and Petitioners have presented a duly authenticated copy of the Award. That ends the inquiry and entitles Petitioners to judgment.

To start, this Court has subject-matter jurisdiction over Venezuela. The D.C. Circuit has held that an action to enforce an ICSID award falls within the arbitration exception to sovereign immunity under 28 U.S.C. § 1605(a)(6). *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1105 (D.C. Cir. 2024). Venezuela lacks sovereign immunity in an action

to enforce an arbitration award under the ICSID Convention, so this Court must enter default judgment in Petitioners' favor.

Similarly, this Court has personal jurisdiction.  Venezuela is a foreign state with no due process rights, so when Petitioners properly served it under 28 U.S.C. § 1608(a), this Court acquired personal jurisdiction.[1]  Petitioners properly served Venezuela through diplomatic note, after previously attempting service through Venezuela's Central Authority (which, consistent with its longstanding practice that violates the Hague Service Convention, refuses to certify whether service has been made or even attempted on the government).  And even if it had due process rights, Venezuela negotiated with Petitioners' parent company in the United States, arbitrated in part in Washington, and in any event agreed by joining the Convention to submit to entry of judgment on the award in every Contracting Party.

Finally, on the merits, the ICSID Convention forbids Contracting Parties from requiring anything more than a duly authenticated copy of the Award, which Petitioners have done.  Thus, since Venezuela is in default and Petitioners have shown even more than a *prima facie* case for its liability, Petitioners are entitled to default judgment.

## FACTUAL BACKGROUND

### A. Venezuela's Consent to ICSID Arbitration and the Tribunal's Rejection of Venezuela's Objections to ICSID Jurisdiction.

On October 22, 1991, Venezuela signed the Agreement on Encouragement and Reciprocal Protection of Investments Between the Kingdom of the Netherlands and the Republic of Venezuela (With Protocol), Signed at Caracas on 22 October 1991 (the "BIT"), 1788 UNTS 45.  Davidson Decl. Ex. 1.  The BIT entered into force on November 1, 1993, in accordance with

---

[1] Petitioners have also provided courtesy copies to counsel known to represented Venezuela in similar litigation in this District.  *See* ECF No. 13-1 ¶ 8.

2

Article 14(1). *Id.* The English, Spanish, and Dutch versions of the BIT are equally authentic. *Id.*

Under Article 9(1) of the BIT, "[d]isputes between one Contracting Party and a national of the other Contracting Party concerning an obligation of the former under this Agreement in relation to an investment of the latter, shall at the request of the national concerned by submitted to the International Centre for Settlement of Investment Disputes for settlement by arbitration or conciliation under the Convention on the Settlement of Investment Disputes between States and Nationals of other States opened for signature at Washington on 18 March 1965." *Id.*[2] And under Article 9(4) of the BIT, "[e]ach Contracting Party hereby gives its unconditional consent to the submission of disputes as referred to in Paragraph 1 of this Article to international arbitration in accordance with the provisions of this Article." *Id.*

As the Original Award recounts, on September 6, 2007, Petitioners submitted a Request for Arbitration pursuant to the BIT. Davidson Decl. Ex. 2 (Original Award) ¶ 1. Venezuela objected to ICSID's jurisdiction, but, after briefing and a hearing on jurisdiction, the ICSID Tribunal rejected in relevant part Venezuela's objections. Davidson Decl. Ex. 2 at Annex 2 (Decision on Jurisdiction).

### B.   The Original Award, Revision Proceeding, and Annulment Proceeding.

On October 9, 2014, the original tribunal issued a final award in favor of Petitioners, Mobil Venezolana de Petróleos Holdings, Inc., and Mobil Venezolana de Petróleos, Inc.[3] in the

---

[2] Venezuela was a Contracting Party to the ICSID Convention, but in 2012 denounced (withdrew from) the Convention. By the terms of Article 72 of the Convention, denunciation (withdrawal) "shall not affect the rights or obligations under this Convention of that State or of any of its constituent subdivisions or agencies or of any national of that State arising out of consent to the jurisdiction of the Centre given by one of them before such notice was received by the depositary."

[3] The latter two entities relate to the La Ceiba project, as to which Venezuela has now satisfied its pecuniary obligations regarding compensation.

3

amount of one billion six hundred million forty-two thousand four hundred eighty-two dollars (US$1,600,042,482) plus interest ("Original Award"), terminating the Original Proceeding. The original tribunal found that Venezuela expropriated the property of Petitioners, Mobil Venezolana de Petróleos Holdings, Inc., and Mobil Venezolana de Petróleos, Inc. and, therefore, was required to pay just compensation in the amounts of (i) US$9,042,482 in compensation for the production and export curtailments imposed on the Cerro Negro Project, (ii) US$1,411,700,000 in compensation for the expropriation of investments in the Cerro Negro Project, and (iii) US$179,300,000 in compensation for the expropriation of investments in the La Ceiba Project, plus annual compound interest on all sums at the rate of 3.25% from June 27, 2007 until payment in full. Davidson Decl. Ex. 2.

After the Original Award was issued, Venezuela applied to the Tribunal for revision of the Original Award. On June 12, 2015, the original tribunal denied Venezuela's application for revision of the Original Award, terminating the Revision Proceeding. Davidson Decl. Ex. 2 (Revision Decision).

The original tribunal awarded Petitioners, Mobil Venezolana de Petróleos Holdings, Inc., and Mobil Venezolana de Petróleos, Inc., their legal fees and expenses in the amounts of USD 93,463 and GBP 32,561.16. *Id*. ¶¶ 4.1.10, 5.1. The original tribunal ordered Venezuela to pay these fees and expenses. The original tribunal further ordered that the Decision "shall become part of its Award dated 9 October 2014." *Id*. at ¶ 5.1.

Venezuela then applied to an *ad hoc* ICSID annulment Committee (the "Committee") for annulment of the Original Award; pending these proceedings, enforcement of the Original Award was stayed. Davidson Decl. Ex. 2 (Annulment Decision). On March 9, 2017, the Committee granted in part and denied in part the annulment application. It granted annulment as

4

to the award of US$1,411,700,000 in compensation as to the award of US$1,411,700,000 in compensation for the expropriation of investments in the Cerro Negro Project. *Id.* ¶ 196(3). The Committee rejected Venezuela's other requests for annulment and lifted the stay of enforcement of the portions of the Original Award it did not annul. *Id.* ¶ 191. The pecuniary obligations of the Original Award related to La Ceiba have now been resolved and are not at issue in this proceeding.

        C.       **The Resubmission Proceeding and Award.**

Petitioners filed a request to resubmit the portions of the ICSID claim that had been annulled and an ICSID tribunal (the "Resubmission Tribunal") was constituted on August 17, 2020. Davidson Decl. Ex. 3 (Final Award).

On July 10, 2023, the Tribunal issued a final Award in Petitioners' favor in the amount of US$985,545,515 plus interest (the "Final Award"), comprising $984,527,000 in just compensation for expropriation of investments in the Cerro Negro Project and annual compound interest at the rate of 3.25% from June 27, 2007, until payment in full, and $1,018,515.045 in legal fees and costs at the rate of 7.75% from July 10, 2023, until payment in full. *Id.* The copies of each of the Original Award (including the Decision on Jurisdiction incorporated therein), the Revision Decision, the Annulment Decision, and the Final Award are duly certified as authentic by the Secretary-General of ICSID. Davidson Decl. Exs. 2-3.

Venezuela has not complied with its pecuniary obligations under the Original Award, Revision Decision, Annulment Decision, and Final Award (except as to the provisions of the Original Award related to La Ceiba). Davidson Decl. ¶ 7. No stay of the Original Award, Revision Decision, Annulment Decision, and Final Award is in effect. *Id.* ¶ 8.

5

### D.     Procedural History and Service.

Petitioners commenced this proceeding on November 22, 2023.  ECF No. 1.  They then began efforts to serve Venezuela pursuant to the Foreign Sovereign Immunities Act.  No special arrangement for service exists between Petitioners and Venezuela.  Davidson Decl. ¶ 9.  But Venezuela is a Contracting Party to the Hague Service Convention, so Petitioners served Venezuela with the summons, petition, all attachments thereto, and a Notice of Suit and copy of the Foreign Sovereign Immunities Act, all with an accompanying translation into Spanish, through its Central Authority under the Hague Service Convention on January 5, 2024.  ECF No. 7.

Venezuela has a long-documented history of violating its obligations under the Convention by refusing to supply a certificate of service when parties seek to have Venezuela's Central Authority serve the state itself.  Consistent with that track record, it failed to do so here as well, rendering service through the Central Authority unsuccessful or futile.  Because Venezuela objects to service of process by postal channels under Article 10 of the Hague Service Convention, that option for service is unavailable here too.  *See* Davidson Decl. Ex. 4 (Venezuela's Objection to Service by Postal Channels).

Accordingly, Petitioners requested and the Clerk dispatched to the State Department copies of the summons, petition, all attachments thereto, and a Notice of Suit and copy of the Foreign Sovereign Immunities Act, all with an accompanying translation into Spanish, for service via diplomatic channels.  ECF Nos. 8-11.  The State Department has certified that the documents were served via diplomatic channels, with delivery confirmed on September 4, 2024.  ECF No. 12.

Venezuela failed to answer or otherwise respond within 60 days of that date and the Clerk entered Venezuela's default on November 18, 2024. ECF Nos. 13-14. Nor has it sought to vacate its default in almost three months since.

## LEGAL STANDARD

A court may enter a default judgment where a party has failed to respond to the Complaint and the clerk has entered the party's default. Fed. R. Civ. P. 55(b)(2). Where the defendant is a foreign sovereign, the movant must also "establish[] his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This means "a legally sufficient prima facie case," meaning "a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff." *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008). This does not require "more or different evidence" against a sovereign than a court would otherwise require for a prima facie case. *Id.* A court may thus credit a plaintiff's uncontradicted testimony as credible. *Id.* at 63; *see also Beer v. Islamic Republic of Iran*, 574 F. Supp. 2d 1, 9 (D.D.C. 2008).

## ARGUMENT

Pursuant to 22 U.S.C. § 1650a, which implements the ICSID Convention, "[t]he district courts of the United States … shall have exclusive jurisdiction over actions and proceedings [enforcing ICSID awards], regardless of the amount in controversy." Congress implemented the United States' treaty obligations through subpart(a) of Section 1650a, which provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

7

22. U.S.C. § 1650a(a). Thus, under this provision, the "pecuniary obligations" of an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment" of a state court. *See id.* Indeed, district courts do not conduct even the limited scrutiny that other arbitral awards receive because the statute expressly provides that "[t]he Federal Arbitration Act shall not apply to enforcement of awards rendered pursuant to the [C]onvention." *Id.*

The D.C. Circuit has confirmed the extremely limited nature of a court's role when presented with an ICSID award. "A district court tasked with enforcement must establish it has subject matter and personal jurisdiction over the matter." *Valores Mundiales*, 87 F.4th at 519. Once it has done so, *all* it may do is "authenticate the award." *Id.* Like a final state court judgment, a court "may not deny" an ICSID award "full faith and credit because it disagrees with the reasoning underlying the [award] or deems it to be wrong on the merits." *Id.* (quotation marks omitted). Rather, the full faith and credit obligation "precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the [award] is based." *Id.* The "bar against relitigation is unyielding," applying "even as to questions of jurisdiction" when "those questions have been fully and fairly litigated and finally decided in the [tribunal] which rendered the original [award]." *Id.* at 519-20.

Here, this Court has subject-matter jurisdiction under multiple independent grounds and has obtained personal jurisdiction over Venezuela too. And Petitioners supply duly authenticated copies of the Award. As such, the Award is entitled to full faith and credit and the Court should enter judgment against Venezuela.

## I. This Court has Jurisdiction to Enforce Petitioners' ICSID Award Against Venezuela.

### A. This Court Has Subject-Matter Jurisdiction Because, As *NextEra* Holds, the Arbitration Exception Applies.

To start, this Court has subject-matter jurisdiction. Under 22 U.S.C. § 1650a(b), Congress has vested exclusive jurisdiction over ICSID awards in the District Courts and under 22 U.S.C. § 1650a(a) has recognized that obligations under ICSID awards arise under federal treaties. *See* 28 U.S.C. § 1331. Because this is an action against a foreign state, this Court also has subject-matter jurisdiction under 28 U.S.C. § 1330, which provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against as defined in section 1603(a) of this title as to any claim for relief *in personam* with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330. Venezuela is a foreign state within the meaning of the Foreign Sovereign Immunities Act. 28 U.S.C. § 1603(a).

Venezuela lacks sovereign immunity here because this is an action to confirm an arbitral award and 28 U.S.C. § 1605(a)(6) provides this Court with jurisdiction. Under that provision, a court has jurisdiction "either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate" under several specified circumstances. 28 U.S.C. § 1605(a)(6). One such circumstance is that "the agreement or award is or may be governed by a treaty or other

9

international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." *Id.*

All of those circumstances plainly exist here. As the D.C. Circuit held in *NextEra*, "[t]o proceed under this clause of the FSIA's arbitration exception, we have explained, a district court must find three 'jurisdictional facts': (1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." 112 F.4th at 1100. Here, there is an arbitration agreement—the BIT, which explicitly provides for ICSID arbitration for the benefit of private parties such as Petitioners. Davidson Decl. Ex. 1. The *NextEra* court recognized that such treaty provisions are "a unilateral offer to arbitrate" for the benefit of a private party that is accepted, and a "second arbitration agreement" *with* the private party formed, when the private party files a notice of arbitration in accordance with the treaty. 112 F.4th at 1101-02. Disputes about the scope of a consent to arbitrate, as opposed to its existence, are not jurisdictional. *Id.* at 1102-03. There is an Award. Davidson Decl. Exs. 2-3. And there is a treaty, the ICSID Convention, in which Article 54 calls for recognition and enforcement of awards. Indeed, *NextEra* itself involved an ICSID award and expressly recognizes that "enforce[]" in Section 1650a is synonymous with "confirm" in Section 1605(a)(6). "[E]very court" to have considered the issue has found an ICSID award falls within this exception. *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457 (TJK), 2018 WL 6605633, at *4 (D.D.C. Dec. 17, 2018) (quoting *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013)).[4]

---

[4] Venezuela also waived its immunity within the meaning of 28 U.S.C. § 1605(a)(1) by agreeing to arbitrate under the terms of the ICSID Convention that obliges all Contracting Parties to recognize awards as binding and enforce them like judgments. A state that both ratifies a Convention that provides for all its signatories to treat an award as binding and enters into an arbitration agreement electing to arbitrate subject to that Convention "must have contemplated enforcement actions in" each of the Contracting States, "including the United States." *Blue Ridge*, 735 F.3d at 84. After all, for a state to recognize an award as binding and to enforce it as

**B.      This Court Has Personal Jurisdiction Over Venezuela and Venezuela Has Been Duly Served.**

**1.      Because Venezuela Is A Foreign Sovereign with No Due Process Rights, Subject-Matter Jurisdiction Plus Service Equals Personal Jurisdiction.**

Under 28 U.S.C. § 1330(b), personal jurisdiction exists over a foreign state if the Court has subject-matter jurisdiction and service has been made under 28 U.S.C. § 1608. Foreign states do not have due process rights under the Fifth Amendment, so the D.C. Circuit has held that there is no additional constitutional minimum contacts requirement if the statute is satisfied. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002).[5] Here,

---

a judgment, its courts necessarily must be involved—it is courts that *make* the loser bound to the award and it is courts that enforce judgments. To be sure, as *NextEra* recognizes, the D.C. Circuit has adopted the Second Circuit's theory only in *dicta* and unpublished cases and has not needed to address the issue head on. 112 F.4th at 1100 (discussing *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999) and *Tatneft v. Ukraine*, 771 F. App'x 9 (D.C. Cir. 2019)). But it is plainly correct, as courts around the world (including those in countries that do not have a standalone arbitration exception to sovereign immunity) have recognized. *E.g.*, *Kingdom of Spain v. Infrastructure Servs. Luxembourg S.à.r.l.*, [2023] HCA 11 ¶ 79 (Austl.) (holding ICSID Convention waived state immunity); *CC/Devas (Mauritius) Ltd. c. Republic of India*, 2022 QCCS 4785 ¶¶ 161-169 (Can.) (collecting decisions worldwide holding that international arbitration conventions impliedly waive immunity), *aff'd sub. nom. Republic of India c. CCDM Holdings, LLC*, 2024 QCCA 1620 (Can.).

[5] While the Supreme Court has granted *certiorari* in a case that presents, among other questions, the issue of whether foreign states have due process rights, *see CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, No. 23-1201, 2024 WL 4394121, at *1 (U.S. Oct. 4, 2024) (mem.), the result here is the same either way for numerous reasons.

   ***First***, as discussed above, the ICSID Convention expressly contemplates entry of the award as a judgment in every Contracting Party. *Blue Ridge*, 735 F.3d at 84. For similar reasons to why the Convention is a waiver of immunity defenses, a state that agrees to arbitrate before ICSID thus contractually agrees to litigate for the purpose of entry of judgment on an award in any of those states. *Id.* Because consent is a constitutionally sufficient basis for personal jurisdiction, Venezuela's consent for every Contracting Party to enter awards as judgments satisfies any due process rights Venezuela may have. *See, e.g.*, *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).

   ***Second***, ICSID is headquartered in Washington, D.C., and the secretariat that administered the arbitration is also in D.C. The seat of the arbitration was thus in the United States, and the Annulment Committee hearing was in the United States. Arbitrating in the United States is plainly a sufficient contact to make this Court's exercise of jurisdiction consistent with due process under the Fifth Amendment. *See Victory Transp. Inc. v. Comisaria Gen. de*

11

subject-matter jurisdiction exists for the reasons discussed above. And, as addressed below, Venezuela has been served consistent with 28 U.S.C. § 1608.

### 2. Venezuela Has Been Properly Served by Diplomatic Note.

Under 28 U.S.C. § 1608, there are four methods of service on a foreign state; a plaintiff must attempt them in order or else determine that it is "plainly inapplicable" before proceeding to the next one. *Trapote v. Bolivarian Republic of Venezuela*, 729 F. Supp. 3d 34, 36 (D.D.C. 2024).

***There Is No Special Arrangement.*** The first method, "special arrangement" service under 28 U.S.C. § 1608(a)(1) is inapplicable because there is no special arrangement in this case. Davidson Decl. ¶ 9.

***Central Authority Service Pursuant to the Hague Service Convention Was Unsuccessful Due to Venezuela's Defiance of Its Treaty Obligations.*** The second method, service "in accordance with an applicable international convention on service of documents" under 28 U.S.C. § 1608(a)(2), was either completed or is excused. Venezuela is a party to the Hague Service Convention and designates the Consular Affairs Bureau of its Ministry of Foreign Affairs as its Central Authority. Davidson Decl. Ex. 5. Accordingly, Plaintiffs transmitted the requisite documents, together with translations into Spanish, to Venezuela's Central Authority in

---

*Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964) (consent to arbitrate in New York impliedly included submission to jurisdiction of courts there).

**Third**, the underlying investment that Venezuela expropriated has a United States nexus. While the entities owning the investments are Dutch, the agreements underlying the investment were negotiated with attorneys at ExxonMobil's headquarters in the United States. Moreover, the contracts for the investment were with Venezuela's wholly state-owned oil company, PDVSA, which has on a number of occasions been adjudicated to be Venezuela's alter ego. *E.g.*, *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 172 (3d Cir. 2023) ("[I]t is clear PDVSA is Venezuela's alter ego."). It is thus consistent with due process to attribute PDVSA's contacts with the United States in negotiating these investments to Venezuela.

12

accordance with Articles 3 and 5 of the Hague Service Convention. However, consistent with its longstanding pattern of violating its obligations under the Hague Service Convention, the Venezuelan Central Authority refuses to certify whether or not Venezuela served itself. Davidson Decl. ¶ 10.

This is not a new problem with Venezuela. Courts have found that Venezuela's well-documented defiance of the Hague Service Convention when it comes to service on the state means that an attempt at Central Authority service followed by no certificate is sufficient to allow plaintiffs to pursue the next options under Section 1608(a)(3) and (4). *E.g.*, *Trapote*, 729 F. Supp. 3d at 36; *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 8 (D.D.C. 2022); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457 (TJK), 2018 WL 6605633, at *5 (D.D.C. Dec. 17, 2018). That is what occurred here. Davidson Decl. ¶ 10.

***Clerk's Mailing Is Unavailable Because Venezuela Objects to Mail Service.*** In the event that the Court finds that Section 1608(a)(2) service was not completed, Section 1608(a)(3) service by clerk's mailing has repeatedly been held to be unavailable when a state objects under the Hague Service Convention to service through postal channels. *Trapote*, 729 F. Supp. 3d at 37; *ConocoPhillips*, 628 F. Supp. 3d at 8; *Tidewater*, 2018 WL 6605633, at *5; *see also Azadeh v. Gov't of Islamic Republic of Iran*, 318 F. Supp. 3d 90, 99 (D.D.C. 2018). Here, Venezuela has specifically objected under the Hague Convention to service by mail, so this method is unavailable. Davidson Decl. Ex. 4 (Venezuela Objection)

***Service Through Diplomatic Channels Succeeded.*** 28 U.S.C. § 1608(a)(4) authorizes service by diplomatic channels, which is also authorized by Article 9 of the Hague Service

13

Convention. As shown by the Department of State's proof of service, this method succeeded. ECF No. 12. Accordingly, Venezuela has been served and this Court has personal jurisdiction.

### 3.     Venue Against A Foreign Sovereign Is Proper in This District.

Finally, venue is found here because pursuant to 28 U.S.C. § 1391(f)(4), a civil action against a foreign sovereign may be brought in the United States District Court for the District of Columbia. 28 U.S.C. § 1391(f) ("A civil action against a foreign state as defined in section 1603(a) of this title may be brought—(4)in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.").

## II.    Because Petitioners Have Presented a Duly Authenticated ICSID Award, They Have Established A Prima Facie Case Under 28 U.S.C. § 1608(e).

As discussed above, Venezuela has been duly served and has failed to respond within 60 days, as required under 28 U.S.C. § 1608(d). The clerk has duly entered Venezuela's default under Federal Rule of Civil Procedure 55(a).

For a sovereign in default, a default judgment may only be entered if "the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This means "a legally sufficient prima facie case," meaning "a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff." *Gates*, 580 F. Supp. 2d at 63. This does not require "more or different evidence" against a sovereign than a court would otherwise require for a prima facie case. *Id.*

Here, Plaintiffs have presented much more than a prima facie case—they have presented indisputable evidence that they are entitled to prevail. Under the Convention, the *only* issues that this Court is permitted to consider under the Convention are whether it has jurisdiction and whether the Award is duly certified as authentic by the Secretary-General. *Valores Mundiales*, 87 F.4th at 519. Each of these elements are satisfied here.

14

To grant an ICSID award full faith and credit under 22 U.S.C. § 1650a, a Court merely authenticates the award and confirms that it is binding under ICSID's own rules. *Valores Mundiales*, 87 F.4th at 520. ICSID's jurisdiction cannot be reexamined by this Court, and neither can the merits of its award—even if a party contends ICSID itself violated international law or due process—and the FAA grounds for review of arbitration awards do not apply to ICSID awards. *Id.* at 515, 519-20. Petitioners have provided a copy of the Final Award duly certified by the Secretary-General; that is all it is required to do, and all that the ICSID Convention permits a Contracting Party to require in order to enforce the award as a judgment. Davidson Decl. Ex. 3.

As such, Petitioners have proven their *prima facie* case. They are entitled to entry of default judgment.

## CONCLUSION

For the foregoing reasons, this Court should enter judgment in Petitioners' favor, enforcing the Award's pecuniary obligations and affording it the same full faith and credit that a judgment of a state court of general jurisdiction would receive.

Dated:   February 13, 2025                    Respectfully submitted,

   */s/ Steven K. Davidson*
Steven K. Davidson (D.C. Bar No. 407137)
Michael J. Baratz (D.C. Bar No. 480607)
Molly Bruder Fox (D.C. Bar No. 981619)
Emma Marshak (D.C. Bar. No. 1048357)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 429-3000
Fax: (202) 429-3902
sdavidson@steptoe.com
mbaratz@steptoe.com
mbfox@steptoe.com
emarshak@steptoe.com

Joseph M. Sanderson (D.D.C. No. NY0560)
STEPTOE LLP
1114 Avenue of the Americas
New York, NY  10036-7703
Tel: (212) 506-3900
Fax: (212) 506-3950
josanderson@steptoe.com

*Counsel for Petitioners*

Of Counsel:

Eugene J. Silva II
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
Tel: (713) 656-3636
Fax: (713) 656-3496
eugene.j.silva@exxonmobil.com