UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOBIL CERRO NEGRO, LTD., et al., | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | Case 1:23-cv-3506-RCL |
| | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
|     Defendant. | : | |

DEFENDANT'S MEMORANDUM
<u>SUPPORTING THE MOTION TO SET ASIDE DEFAULT</u>

COMES NOW defendant Bolivarian Republic of Venezuela (the "Republic" or "Venezuela"), by undersigned counsel, and in support of its motion to set aside the default entered by the Clerk of Court on November 18, 2024 (Doc. Rec. No. 14), pursuant to Fed. R. Civ. P. 55(c), provides the following memorandum of points and authorities.

Setting aside the default is appropriate here. The Republic's default was not willful but rather resulted from an extraordinary period in the Republic's history that is being addressed as best as possible by a small staff with limited resources facing nearly 90 lawsuits across the nation. Moreover, setting aside the default would not prejudice plaintiffs Mobil Cerro Negro, Ltd., Venezuela Holdings, B.V., and Mobil Cerro Negro Holding LLC. (collectively the "Plaintiffs"), as this case already has been open for well over a decade and has been subject to extensive litigation. Finally, the Republic has a meritorious defense because the International Centre of the Settlement of Investment Disputes ("ICSID") award Plaintiffs seek to enforce is not entitled to full faith and credit as the arbitral panel during the resubmission process denied the Republic the opportunity to appear and contest Plaintiffs' allegations. The panel thus did not have jurisdiction over a relevant party.

# I. INTRODUCTION

This litigation relates to the effort by Plaintiffs to enforce an arbitral award against the Republic following an arbitration and resubmission proceeding under the rules of the ICSID and all arising from a dispute dating to 2006 alleging that the former president of Venezuela Hugo Chávez, expropriated Plaintiffs' investments in two oil field projects in Venezuela. Plaintiffs now seek to enforce a final judgment issued in July 2023 by the ICSID tribunal of US$985,545,515 plus interest, including legal fees and expenses incurred.

The litigation comes at a time of extraordinary economic and humanitarian crisis for Venezuela. The prior president, Nicolás Maduro, led Venezuela from 2013 until 2018 (the "Maduro regime"), when the Maduro regime engaged in fraud and intimidation during the 2018 presidential election.[1] Following this misconduct by the Maduro regime, the Venezuelan National Assembly declared its president, Juan Guaidó, as the Interim President of the Republic pursuant to the Venezuelan constitution.[2] On January 23, 2019, President Trump exercised his constitutional power to recognize the National Assembly and its leadership as the only legitimate government of Venezuela, binding all domestic courts to recognize the Interim Government as the sole legitimate government in Venezuela in proceedings before them.[3] *See Guaranty Trust Co. v. United States*, 304 U.S. 126, 137-38 (1938) (executive branch's action in recognizing a foreign government "is conclusive on all

---

[1] U.S. State Department, Venezuela 2023 Human Rights Report at 40 (2018 presidential election marred when Maduro "arbitrarily banned key opposition figures from participating in the political process, threatened them with spurious judicial charges, held hundreds of political prisoners, utilized judicial processes to deprive political parties of legal standing, and denied opposition political representatives equal access to media coverage and freedom of movement in the country."). Available at: https://www.state.gov/wp-content/uploads/2024/02/528267_VENEZUELA-2023-HUMAN-RIGHTS-REPORT.pdf.
[2] *See Jiménez v. Palacios*, 250 A.3d 814, 831 (Del. Ch. 2019) ("Guaidó is the voice of Venezuela's sole effective government as recognized by the U.S. President.").
[3] *See* Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019).

domestic courts."). The United States continues to recognize the democratically elected 2015 National Assembly as the last remaining democratic institution in Venezuela and the functional successor to Mr. Guaidó's interim government.[4]

The United States, Netherlands, and over 50 other nations recognized the National Assembly's selection of Mr. Guaidó as the effective government of the Republic. This recognition grants the Republic the sole authority to represent Venezuela in the U.S. court system. *See The Maret*, 145 F.2d 431, 442 (3d Cir. 1944) ("the courts of this country may not examine the effect of decrees of the unrecognized foreign sovereign and determine rights in property . . . upon the basis of these decrees.").

The resubmission of the arbitration took place against this turbulent backdrop. As made clear in Plaintiffs' papers, the Maduro regime and the Plaintiffs both filed in late 2018 for a resubmission of the arbitration which had commenced in 2007. Doc. Rec. No. 1-5 at ¶¶ 5-6. By January 30, 2019, the arbitral panel was in place and prepared to hold proceedings on the resubmission. *Id*. at ¶ 8. On March 21, 2019, the Maduro regime advised that it would appear for the arbitration through a law firm. *Id*. at ¶ 9. On March 27, 2019, the Republic explained that no other appearance of counsel should be accepted by the panel, and that the Republic would be represented by the Special Attorney General of the Republic and the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP. *Id*. at ¶¶ 10, 18.

On August 26, 2020, Plaintiffs asked the arbitral panel to determine "which of Venezuela's purported representatives are properly authorized to represent Venezuela in these proceedings…." *Id*. at ¶ 14. Plaintiffs later explained that "they have in no way created this issue" and "do not take a position as to whom should represent Venezuela…."

---

[4] U.S. State Department, *Venezuela's Interim Government and the 2015 National Assembly* (Jan. 3, 2023).

*See* Decision on the Respondent's Representation in this Proceeding at ¶ 36, *Mobil Cerro Negro Holding, Ltd. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/27 (Mar. 1, 2021).

Despite widespread international recognition of the National Assembly's decision and condemnation of the Maduro regime, the ICSID arbitration panel refused to recognize the Republic and its counsel, or to permit the Republic to participate in the resubmission proceedings instead of the Maduro regime. *Id*. at ¶ 72. The Republic had no further role in the resubmission proceeding.

On November 22, 2023, Plaintiffs filed a Petition to Enforce ICSID Arbitration Award pursuant to 22 U.S.C. § 1650A (Doc. Rec. No. 1), seeking to enforce the arbitration award pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of other States (the "ICSID Convention"), and to enter judgment thereon. On November 18, 2024, the Clerk of Court entered a default as to the Republic. *See* Doc. Rec. No. 14. On February 13, 2025, Plaintiffs filed a motion for default judgment (Doc. Rec. No. 16), which has not been addressed by the Court. By order dated April 10, 2025 (Doc. Rec. No. 23), this Court granted an unopposed motion to provide the Republic with a 30-day extension in which to file a motion to set aside the default.

This motion to set aside the default followed.

## II. LEGAL ARGUMENT

An entry of default may be set aside "for good cause" at the court's discretion. Fed. R. Civ. P. 55(c); *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980). Exercise of a court's discretion entails consideration of whether: (1) the default was willful; (2) a set-aside would prejudice plaintiff; and (3) the alleged defense is meritorious. *Keegel*, 627 F.2d at 373 (internal citation omitted). A defense is meritorious if it contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 10 n.5 (D.D.C. 2005).

Defaults are highly disfavored where, as here, the defendant is a foreign state, because actions against foreign sovereigns implicate sensitive foreign relations and comity concerns that rarely appear in an ordinary lawsuit. *FG Hemisphere Assocs. v. Democratic Republic of Congo*, 447 F.3d 835, 838-39 (D.C. Cir. 2006). Entries of default "should not be applied inflexibly to deny a willing state the opportunity to offer a full defense." *Owens*, 374 F. Supp. 2d at 8 ("[i]ntolerant adherence to default judgments against foreign states could adversely affect this nation's relations with other nations."). Thus, "[w]hen a defendant foreign state has appeared and asserts legal defenses, albeit after a default judgment has been entered, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1552 (D.C. Cir 1987).

The three factors under Rule 55(c) for setting aside a default entered by the clerk of court all are met in this case, as discussed below.

A. *<u>The Default was Not Willful</u>*.

First, the Republic's default was not willful. Courts applying this factor have observed that willfulness is a higher bar than mere negligence. *See*, *e.g.*, *Jackson v. Beech*, 636 F.2d 831, 836-37 (D.D.C. 1980) ("Default judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing."); *Owens*, 374 F. Supp. 2d at 9 n.5 (finding willfulness factor "overridden" by "absence of significant prejudice, the potential of a meritorious defense, and the strong presumption against entry of default judgment against a foreign state").

The Republic's failure to timely respond to the Plaintiffs' petition in this case was the result of the extraordinary conditions facing the Republic, including the press of more than 90 cases alleging wrongdoing by the former regimes in Venezuela brought at a time of profound transition and political turmoil, which the Republic faces with limited resources. *See* Declaration of Gustavo Marcano at ¶¶ 7-9 (attached as Exhibit A). The failure to respond was not intentional and resulted instead from the rush of litigation concerning the Republic and very limited resources available to address the litigation. *Id*. at ¶ 9.

The Republic's untimeliness was excusable under these circumstances.

B. *<u>Plaintiffs would not be Prejudiced by Vacatur</u>*.

Second, Plaintiffs would not be prejudiced by vacatur of the default, as the Republic has now appeared and is engaged through counsel in the matter. *See Owens*, 374 F. Supp. 2d at 9. This dispute has been ongoing for over a decade and already has been subject to extensive litigation in the federal courts. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 105 (2d Cir. 2017). In addition, even if Plaintiffs succeed in

converting their ICSID award to judgment, current Venezuelan sanctions regulations prevent them from executing on that judgment without a specific license from the Office of Foreign Assets Control ("OFAC"). *See* Executive Order No. 13884, §§ 1(a), 6(d) (Aug. 5, 2019) (providing that all property and interests in property of the Republic "are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in."). Plaintiffs have not alleged that an OFAC license has been sought or obtained to enforce any judgment. Finally, even if vacatur of the default might delay enforcement of Plaintiffs' judgment, delay alone is insufficient to demonstrate prejudice. *Keegel*, 627 F.2d at 375.

### C. *The Republic Has a Meritorious Defense*.

Third, the Republic has advanced a meritorious defense, namely, that the ICSID award Plaintiffs seek to enforce is not entitled to full faith and credit by this Court because the arbitral panel denied the Republic the opportunity to appear and contest Plaintiffs' allegations and instead, seated an illegitimate rogue state at the proceedings. The arbitral panel thus did not have jurisdiction over a relevant party, and its judgment is not entitled to full faith and credit. The Republic readily can demonstrate a meritorious defense, well beyond the required showing of "a hint of a suggestion" of a defense. *See Owens*, 374 F. Supp. 2d at 10 n.5.

The D.C. Circuit has made clear that a U.S. court is not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award. *See Valores Mundiales, S.L. v. Bolivarian Republic Of Venezuela*, 87 F.4th 510, 519 (D.C. Cir. 2023). The statutory framework requires a federal court to give an ICSID award "the same full faith and credit" it would receive if the award were a "final judgment" of a state court. *Id.*; 22 U.S.C. § 1650a(a). A final judgment in one State, if rendered by a

court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. *Valores Mundiales,* 87 F.4th at 519. A court may not deny a judgment full faith and credit because "it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits." *Id*. The full faith and credit obligation owed final judgments "precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *Id*. (citations omitted).

But the D.C. Circuit in *Valores Mundiales* also recognized that want of jurisdiction can be an "exceptional instance" in which an arbitral judgment may be denied full faith and credit. *Valores Mundiales,* 87 F.4th at 519-20 (citing *Underwriters Nat'l Assur. v. N.C. Life & Acc.*, 455 U.S. 691, 705 (1982)). That is because chief among the "basic limitations on the full faith and credit principles" is the caveat that a judgment of a court in one State is conclusive upon the merits in a court in another State, "only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." *Underwriters*, 455 U.S. at 704. Thus, "before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Id*. at 705 (citing *Nevada v. Hall*, 440 U. S. 410, 421 (1979)). A judgment is entitled to full faith and credit only to the extent it "meet[s] the tests of justice and fair dealing that are embodied in the historic phrase 'due process of law.'" *Williams v. North Carolina*, 317 U.S. 287, 306 (1942) (Frankfurter, J., concurring).

Here, no inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based is required to

understand the jurisdictional fault from the arbitral process. The Republic and its chosen legal counsel did not participate in the resubmission proceeding, thus depriving the Republic and its legal counsel the opportunity to properly defend against Plaintiffs' allegations. The arbitral panel lacked jurisdiction over the resubmission because of this exclusion. The judgment is not enforceable against the Republic.

        1. <u>The Arbitral Panel Excluded the Republic from the Resubmission</u>.

Here, the Republic's National Assembly selected Mr. Guaidó to lead the Republic on January 23, 2019, thus becoming the only legitimate branch of government duly elected by the Venezuelan people. *See* Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela (Jan. 23, 2019). Despite this recognition, the ICSID arbitral panel thereafter excluded the recognized and effective government of the Republic from participating in the arbitral proceedings, thus depriving the Republic and its legal counsel the opportunity to properly defend against Plaintiffs' allegations. Because of this exclusion, the recognized and effective government of the Republic was not properly before the jurisdiction of the arbitral panel. Instead, the arbitral panel permitted Plaintiffs to proceed against an illegitimate state in the Maduro regime while depriving the legitimate government of the Republic of the due process right to appear and be heard. *See* Decision on the Respondent's Representation in this Proceeding at ¶ 72, *Mobil Cerro Negro Holding, Ltd. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/27 (Mar. 1, 2021).

In deciding who would appear at the arbitration, the ICSID ignored the recognition by the United States as well as Netherlands, the party nation to the bilateral investment treaty that gave rise to Plaintiffs' claims, as both nations had recognized the Mr. Guaidó and

the National Assembly as the only legitimate government of the Republic following January 2019. *See Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015) ("[r]ecognition is an act with immediate and powerful significance for international relations, so the President's position must be clear."). The arbitral panel failed to recognize Mr. Guaidó and the National Assembly as the government of Venezuela, where no other regime is recognized and only Mr. Guaidó and his regime are recognized by the United States and the Netherlands (among many others) as the effective government of Venezuela. *See Jiménez v. Palacios*, 250 A.3d 814, 831 (Del. Ch. 2019) ("Guaidó is the voice of Venezuela's sole effective government as recognized by the U.S. President.").

Thus, Plaintiffs seek to enforce an ICSID arbitral judgment resulting from a proceeding where the ICSID excluded the Republic and its legal counsel from participation, thus rendering the ICSID without jurisdiction over relevant and necessary parties. This Court need not give full faith and credit to a decision resulting from such a flawed process. *Underwriters*, 455 U.S. at 704-05 & n.10 ("It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties."). The ICSID proceedings involved only the illegitimate Maduro regime and its lawyers, even following the 2019 recognition by the United States and Netherlands of the Republic's rightful and sole authority. The arbitral panel excluded a relevant party, thus denying the party the due process opportunity to present its defense. *See, e.g.*, *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d. Cir. 1992) (refusing to enforce arbitration award where the company was denied "the opportunity to present its claim in a meaningful manner"); *Hoteles Condado Beach v. Union De Tronquistas*, 763 F.2d 34, 40-42 (1st Cir. 1985) (affirming

vacatur of arbitral award where respondent was denied "a full and fair hearing on the dispute").

### 2. Plaintiffs Took No Steps to include the Republic in the Resubmission.

In support of enforcement, Plaintiffs allege that "Venezuela was represented by counsel and actively participated in the ICSID Arbitration from 2007 through the present." Doc. Rec. No. 1 at ¶ 17.  Yet, Plaintiffs acknowledge that the ICSID tribunal refused after 2019 to seat at the arbitration the only government of Venezuela recognized by the United States and the Netherlands as the effective government of the state.  *Id*. at ¶ 17 & n.1.  Indeed, the Plaintiffs also knew that any arbitral award would likely be brought to the United States for enforcement; knew that as of January 23, 2019, the United States recognized solely the Republic and Mr. Guaidó as the rightful authority; and knew that lawyers representing the Republic sought to make an appearance before the arbitral panel.  Doc. Rec. No, 1-5 at ¶ 14.  Yet Plaintiffs took no position on the participation of the Republic and its counsel in the arbitration.  *See* Decision on the Respondent's Representation in this Proceeding at ¶ 36, *Mobil Cerro Negro Holding, Ltd. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/27 (Mar. 1, 2021) (Plaintiffs said that they "do not take a position as to whom should represent Venezuela….").  Plaintiffs readily could have recommended that the Republic proceed with its counsel, while also allowing the illegitimate Maduro regime to appear through counsel, as has happened in other ICSID cases.  *See*, *e.g.*, *ConocoPhillips v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/30 (Apr. 3, 2020).  Plaintiffs cannot now claim surprise that the lack of participation by the Republic and its lawyers has caused a jurisdictional infirmity in the arbitral award.

Instead, the party that appeared in the arbitration—the Maduro regime—is an illegitimate state, sanctioned by the United States for its abuses, including human rights violations and abuses in response to anti-Maduro protests, and "continued attempts to undermine the Interim President of Venezuela and undermine the National Assembly, the only legitimate branch of government duly elected by the Venezuelan people, and to prevent the Interim President and the National Assembly from exercising legitimate authority in Venezuela." *See* Executive Order 13857 (Jan. 25, 2019).

The judgment issued here is in a proceeding where an illegitimate regime not recognized by the United States purported to speak for the Republic. While the party to the arbitral proceeding was the Bolivarian Republic of Venezuela—the nation state—the representative before the panel had no authority to speak for the Republic or bind the way that the Republic's property in the United States should be utilized. A regime not recognized as the government of a state is not entitled to property belonging to that state located in the United States. *See PDVSA United States Litig. Tr. v. Lukoil Pan Ams. LLC*, 65 F.4th 556, 562-63 (11th Cir. 2023) (Maduro regime not authorized to litigate on behalf of Petróleos de Venezuela as "No Guaidó-appointed officials have authorized this suit or the Maduro entity's motion to substitute, nor has any entity they control opted to bring suit itself."); *Repub. of Panama v. Rep. Nat. Bank of N.Y.*, 681 F. Supp. 1066, 1071 (S.D.N.Y. 1988) ("[I]t is not a proper function of a domestic court of the United States to attempt to judge which government best represents the interests of" a foreign nation.).

Assets of Venezuela located anywhere in the United States should not be subject to a judgment resulting from an arbitration where only the illegitimate Maduro regime participated rather than the recognized and effective government of Venezuela and its

chosen legal counsel.  *See The Maret*, 145 F.2d at 442 (when the fact of nonrecognition of a foreign sovereign and nonrecognition of its decrees by our Executive is demonstrated, "the courts of this country may not examine the effect of decrees of the unrecognized foreign sovereign and determine rights in property, subject to the jurisdiction of the examining court, upon the basis of those decrees.").  Such a result should have been foreseeable both to Plaintiffs and to the arbitral panel that elected to exclude the Republic from the proceedings.

            3.   <u>Enforcing the Judgment Circumvents United States Policy on Venezuela</u>.

Ignoring the jurisdictional flaw of the arbitral panel's judgment further would circumvent the stated intent of the United States to protect Venezuelan assets from the acts and abuses of the Maduro regime, and preserve the assets for use by the recognized government of the Republic for the benefit of the Venezuelan people.  *See*, *e.g.*, Fact Sheet, *President Donald J. Trump is Cutting Off Financial Resources to Maduro and His Cronies* (Aug. 6, 2019) (referring to measures taken for the purpose of isolating Maduro's illegitimate regime from the global financial system and the international community).  As President Trump stated, "[t]his action is not against the Venezuelan people, but against Maduro and his ongoing human rights abuses." *Id*.

As the arbitral panel itself recognized, the panel had no jurisdiction to decide the political question of deciding on recognition of the legitimate government of Venezuela.  *See* Decision on the Respondent's Representation in this Proceeding at ¶¶ 43-44, *Mobil Cerro Negro Holding, Ltd. v. Bolivarian Republic of Venezuela*, ICSID Case No. ARB/07/27 (Mar. 1, 2021).  The panel labeled the issue as procedural, but the true impact of the decision was to empower the illegitimate Maduro regime to continue to exercise control over the

arbitration proceeding at the expense of the recognized and legitimate government of the Republic. As is clear from these proceedings, Plaintiffs seek to enforce the arbitral panel's decision against the assets of the Republic in the United States, where the Maduro regime is not recognized and where the Maduro regime has no right to any asset of the Republic. *See Jiménez* v. *Palacios*, 250 A.3d 814, 828 (Del. Ch. 2019) (Del. Ch. 2019) (finding that, under the political question doctrine, U.S. courts must recognize the National Assembly as the only legitimate, democratically elected branch of government in Venezuela and therefore refusing to give deference to the Venezuelan Supreme Tribunal's decision nullifying the Democracy Transition Statute). The determinations by the United States Executive Branch are unambiguous: Guaidó is recognized, the National Assembly is legitimate, and neither Maduro nor the National Constituent Assembly are legitimate parts of the Venezuelan government. *Id*. at 830-31. As the Supreme Court has explained, "[l]egal consequences follow formal recognition." *Zivotofsky*, 576 U.S. at 11.

Yet aiding enforcement of the arbitral judgment would undermine this plain direction by the United States Executive Branch and would ratify the arbitral panel's selection of the Maduro regime to advocate for the Republic. Accepting the judgment further would place control of the assets of the Republic located in the United States at the disposal of the Maduro regime, in contradiction of the recognition by the Executive Branch and its stated intent of isolating Maduro's regime from the global financial system and the international community. The Maduro regime could not do in a domestic court what it purported to do in the underlying arbitration, it necessarily follows that this Court cannot indirectly give effect to the Maduro regime's acts by converting the resulting award into a

U.S. judgment. This Court should not accept this trespass into a political question by the arbitral panel.

Plaintiffs did not advocate for the participation of the recognized government of Venezuela in the resubmission proceedings. Had Plaintiffs done so, and had Venezuela participated in the resubmission process, then Plaintiffs could have ensured the enforceability of any resulting award in the United States (as other ICSID claimants have done). Ultimately, the denial of the Republic's right to defend the Republic in the resubmission proceedings resulted in an award that, like a state court judgment rendered in those same circumstances, is not enforceable or entitled to full faith and credit anywhere in the United States.

### D. *The Default Should Be Set Aside*.

For all of the reasons stated, setting aside the default against the Republic is appropriate. The Republic's default was not willful, but rather resulted from an extraordinary period in the nation's history that is being addressed as best as possible by a small staff and limited resources facing nearly 90 lawsuits across the United States arising from the conduct of prior regimes. Moreover, setting aside the default would in no way prejudice Plaintiffs, as this case already has been open for well over a decade and has been subject to extensive litigation in the federal courts. Finally, the Republic has a meritorious defense because the ICSID award Plaintiffs seek to enforce is not entitled to full faith and credit as the arbitral panel denied the Republic the opportunity to appear and contest Plaintiffs' allegations. The panel thus did not have jurisdiction over a relevant party. For all of these reasons, the default should be set aside.

### III.  CONCLUSION

For all the reasons stated, the default entered by the Clerk of Court on November 18, 2024 (Doc. Rec. No. 14) should be set aside.  The Court should direct the Republic to answer or otherwise respond to Plaintiffs' Petition to Enforce ICSID Arbitration Award Pursuant To 22 U.S.C. § 1650A (Doc. Rec. No. 1) within 60 days.

Dated:   May 12, 2025                    Respectfully Submitted,

FREEH SPORKIN & SULLIVAN LLP

By: /s/ Gregory A. Paw
    Gregory A. Paw
    Bar Number 421897
    Jennifer Arbittier Williams *
    Bar Number 90010166
    2550 M Street NW, First Floor
    Washington, DC  20037
    267-421-7033
    paw@fsslaw.com

    COUNSEL FOR
    BOLIVARIAN REPUBLIC OF VENEZUELA

* Admitted Pro Hac Vice