**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MOBIL CERRO NEGRO, LTD., *et al*.,

      Petitioners,

      v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

      Respondent.

Case No. 23-cv-3506-RCL

**MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>RESPONDENT'S MOTION TO SET ASIDE DEFAULT</u>**

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 2

    A.    The First Decade of ICSID Proceedings, 2007–2017 ............................................ 2

    B.    The Resubmission Proceeding, 2018–2023 ........................................................... 3

    C.    The Petition to Enforce The Final Award, 2023–Present .................................... 8

ARGUMENT .................................................................................................................... 10

I.      Venezuela's Default Was Willful ................................................................................ 11

II.    There Is No Meritorious Defense and Venezuela is Precluded from Asserting
      Otherwise ..................................................................................................................... 12

    A.    This Court's Role in an ICSID Case is Limited and the Award Should be
           Enforced as a Judgment ...................................................................................... 12

           1.    Petitioners' ICSID Award is Entitled to Full Faith and Credit ............... 15

           2.    Petitioners' ICSID Award Should Be Enforced In This Court ................ 18

    B.    Venezuela is Collaterally Estopped from Raising Its Defense ............................ 19

           1.    The Issue Venezuela Raises Here Is Identical to The Issue Raised in
               *Valores* ................................................................................................... 21

           2.    The Issue Was Necessarily and Actually Litigated ................................. 22

           3.    The D.C. Circuit Issued a Valid Judgment on the Merits ......................... 22

           4.    Collateral Estoppel Works No Unfairness to Respondent ....................... 23

III.   Petitioners Would Be Prejudiced If the Default Were Set Aside .................................... 23

CONCLUSION................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ass'n of Indep. Sch. of Greater Washington v. D.C.*,
    311 F. Supp. 3d 262 (D.D.C.), *amended*, 317 F. Supp. 3d 355 (D.D.C. 2018)......................20

*Bryson v. Gere*,
    268 F. Supp. 2d 46 (D.D.C. 2003) ..............................................................20, 21, 22

*Canonsburg Gen. Hosp. v. Burwell*,
    807 F.3d 295 (D.C. Cir. 2015).............................................................................20, 23

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*,
    628 F. Supp. 3d 1 (D.D.C. 2022).............................................................................7, 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    No. 17-MC-151-LPS, 2023 WL 4826467 (D. Del. July 27, 2023) .........................................24

*Crystallex v. Bolivarian Republic of Venezuela*,
    No. 17-MC-151-LPS (D. Del.) ..............................................................9, 23, 24, 25

*Devengoechea v. Bolivarian Republic of Venezuela*,
    No. 12-23743- CIV, 2016 WL 4370067 (S.D. Fla. July 5, 2016), *report and
    recommendation adopted as modified*, 2016 WL 11552419 (S.D. Fla. Sept.
    29, 2016) .................................................................................................12, 24

*Durfee v. Duke*,
    375 U.S. 106 (1963)..........................................................................................16, 18

*Egypt Dep't of Def. v. Alboghdady*,
    No. CV 21-1144 (BAH), 2022 WL 715229 (D.D.C. Mar. 10, 2022).....................................11

*F.T.C. v. GlaxoSmithKline*,
    202 F.R.D. 8 (D.D.C. 2001)...............................................................................20, 21

*Flanagan v. Islamic Republic of Iran*,
    190 F. Supp. 3d 138 (D.D.C. 2016) .......................................................................11

*Hillcrest Bank, N.A. v. Anzo*,
    No. 11-2035-JAR, 2011 WL 3299756 (D. Kan. Aug. 1, 2011)............................................24

*Jack Faucett Associates, Inc. v. AT&T Co.*,
    744 F.2d 118 (D.C. Cir. 1984)...............................................................................19

*Keegel v. Key W. & Caribbean Trading Co.*,
    627 F.2d 372 (D.C. Cir. 1980) .................................................................................10, 12

*Koch Mins. Sarl v. Bolivarian Republic of Venezuela*,
    514 F. Supp. 3d 20 (D.D.C. 2020) ...........................................................................11, 24

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) ...................................................................................3, 9, 13

*Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela*,
    87 F. Supp. 3d 573 (S.D.N.Y. 2015) ..............................................................................2

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    No. 14 Civ. 8163 PAE, 2015 WL 926011 (S.D.N.Y. Mar. 4, 2015) ...............................2

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
    419 F. Supp. 3d 51 (D.D.C. 2019) ...............................................................................23

*Republic of Iraq v. ABB AG*,
    768 F.3d 145 (2d Cir. 2014) .........................................................................................15

*Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*,
    No. 18-cv-1963-LPS, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ...........................11, 24

*Tenaris S.A. v. Bolivarian Republic of Venezuela*,
    No. 18-cv-1371 (CRC), 2020 WL 3265476 (D.D.C. June 17, 2020) ..........................11, 24

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
    No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) .............................12

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del
    Poder Popular para Exteriores*,
    87 F.4th 510 (D.C. Cir. 2023) .............................................................................. *passim*

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
    No. 1:19-cv-00046-ACR-RMM, 2023 WL 3453633 (D.D.C. May 15, 2023) .............9, 10, 22

*Weinstein v. Islamic Republic of Iran*,
    175 F. Supp. 2d 13 (D.D.C. 2001) ...............................................................................12

*Yamaha Corp. of Am. v. United States*,
    961 F.2d 245 (D.C. Cir. 1992) ......................................................................................23

## Statutes

22 U.S.C. § 1650a ............................................................................................... *passim*

28 U.S.C. § 1608 ............................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 55 ...................................................................................................................10

ICSID Convention Article 25 ...............................................................................................15

ICSID Convention Article 53 ...........................................................................................13, 14

Restatement (Third) U.S. Law of Int'l Comm. Arb. Archive § 5.6 (2017)...................................13

Schreuer et al., *The ICSID Convention: A Commentary*, Article 25 ¶ 36 (2d ed.
    2009) ...........................................................................................................................15, 17

## INTRODUCTION

Respondent the Bolivarian Republic of Venezuela ("Venezuela" or "Respondent") is entitled to no grace here. Venezuela intentionally ignored this case, which resulted in the entry of a default. And regardless, Venezuela has no defenses to Mobil Cerro Negro, Ltd., Venezuela Holdings, B.V., and Mobil Cerro Negro Holding LLC's (collectively "Petitioners") petition to recognize the International Centre for Settlement of Investment Disputes ("ICSID") award entered in their favor after resubmission proceedings (the "Final Award"). Accordingly, the default should not be set aside, and the Court should grant Petitioners' motion for default judgment (ECF No. 16). However, now that Venezuela has appeared it may be preferable to resolve this case *inter partes*, in which case the Court can adjudicate Petitioners' soon-to-be-filed motion for summary judgment, which will allow the Court to enter judgment on the merits.

Whether the Court resolves this matter on Petitioners' motion for default judgment or motion for summary judgment, the result should be the same because Venezuela has no defense, and in any event is collaterally estopped from re-raising a defense it lost in *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Exteriores*, 87 F.4th 510 (D.C. Cir. 2023). The D.C. Circuit conclusively and categorically held that the only purported defense Venezuela asserts here— that ICSID permitted the "wrong" representative of the Venezuelan government to participate in the ICSID proceedings and therefore the Final Award is not entitled to full faith and credit—is *not* meritorious. The *Valores* court rejected that exact same defense in an action seeking to enforce another ICSID award against Venezuela. Additionally, Venezuela's default was willful and intentional, and granting Venezuela relief from default would prejudice Petitioners.

## FACTUAL BACKGROUND

### A.    The First Decade of ICSID Proceedings, 2007–2017

As set forth in the accompanying Declaration of Leilah Bruton ("Bruton Dec.") and the

Petition ("Pet.," ECF No. 1), in 2007 Petitioners initiated ICSID arbitration against Venezuela

for Venezuela's expropriation of two of Petitioners' investment projects in Venezuela, the La

Ceiba project and the Cerro Negro project.  Pet. ¶ 18.

The original ICSID tribunal issued a Decision on Jurisdiction on June 10, 2010, in which

it held that it had jurisdiction over Petitioners' claims based on breaches of the Netherlands-

Venezuela bilateral investment treaty ("BIT").  Pet. ¶ 19.  After a series of written submissions, a

hearing, and post-hearing briefing, in 2014 the original ICSID tribunal issued an award in favor

of Petitioners (the "Original Award") for (i) US$9,042,482 in compensation for the production

and export curtailments imposed on the Cerro Negro project, (ii) US$1,411,700,000 in

compensation for the expropriation of investments in the Cerro Negro project, and (iii)

US$179,300,000 in compensation for the expropriation of investments in the La Ceiba project,

plus annual compound interest on all sums at the rate of 3.25% from June 27, 2007 until payment

in full.  Pet. ¶¶ 20–22; ECF No. 1-6 ¶ 404.

On October 10, 2014, the United States District Court for the Southern District of New

York entered judgment on the Original Award.  *Mobil Cerro Negro Ltd. v. Bolivarian Republic*

*of Venezuela*, 87 F. Supp. 3d 573, 576 (S.D.N.Y. 2015).  Venezuela's subsequent motion to

vacate that judgment on procedural grounds was denied on February 13, 2015, *id.* at 603, and its

motion to modify the judgment by reducing the post-judgment interest rate was denied on March

4, 2015.  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, No. 14 Civ. 8163 PAE,

2015 WL 926011, at *3 (S.D.N.Y. Mar. 4, 2015).  Venezuela timely appealed, and on July 11,

2017, the United States Court of Appeals for the Second Circuit rendered its opinion overturning

the District Court's decision and vacating the judgment on the grounds that a different procedure should have been used to reduce the Original Award to judgment.  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96 (2d Cir. 2017).  Petitioners have followed that procedure here.

After Venezuela's 2014 application for revision of the Original Award was denied in its entirety in 2015, and during the pendency of the Second Circuit appeal, Venezuela initiated an annulment proceeding (the ICSID equivalent of final appellate review), which resulted in the annulment of a portion of the Original Award in 2017.  Pet. ¶¶ 23–26, Bruton Dec. ¶ 5.  The annulment committee affirmed the compensation due to Petitioners for the La Ceiba project and for export curtailments at the Cerro Negro project, but annulled the portion of the award relating to the Cerro Negro project's expropriation based on its determination that the original tribunal failed to adequately explain why the cap on damages in the indemnity owed by Venezuela's state-owned oil company did not affect or limit the amount owed for the expropriation of the Cerro Negro project.  ECF No. 1-8.  As a result, Petitioners retained an award for approximately $260 million (including accrued interest).  In accordance with an agreement between Petitioners and Venezuela, the $260 million has been fully paid.  Pet. ¶ 27.  The agreement did not impact Petitioners' ability to re-arbitrate the issue that was the basis for the annulment in a new ICSID arbitration proceeding.  Bruton Dec. ¶¶ 5–6.

### B.    *The Resubmission Proceeding, 2018–2023*

As provided for under the ICSID rules and permitted by the annulment decision, Petitioners subsequently resubmitted the annulled parts of their award for consideration by a new tribunal.  Bruton Dec. ¶ 6.

While the resubmission proceeding was pending and before a full tribunal was constituted, Venezuela held a presidential election and the incumbent president, Nicolás Maduro,

declared victory.  Bruton Dec. ¶ 9.  The government led by Maduro, which maintained control over key institutions within Venezuela, is defined for purposes of this Opposition as the "Maduro government."  Venezuela's National Assembly declared the election of Maduro to be fraudulent and appointed an Interim President, Juan Guaidó, as the Venezuelan head of state.  *Id.*  The United States, along with other countries, recognized the National Assembly as the government of Venezuela and Juan Guaidó as the Venezuelan head of state in February 2019.  *Id.*  The government led by Guaidó from 2019–2023, and by the 2015 National Assembly from 2023– present, is defined for purposes of this Opposition as the "Guaidó government."  The Tribunal that issued the Final Award at issue in this case used the language of "the Maduro government" and "the Guaidó government."  *See* Bruton Dec. Ex. 23 ¶ 38.

    In the months preceding the split between the Venezuelan governments, Petitioners had appointed an arbitrator and Venezuela, under Maduro and through its Attorney General Reinaldo Enrique Muñoz Pedroza (appointed by Maduro) and its counsel at the time Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis Mallet"), had also appointed an arbitrator.  Bruton Dec. Ex. 23 ¶¶ 4–6.  George Kahale, III, of Curtis Mallet was lead counsel.  Later, after the split between the competing Maduro and Guaidó governments, Curtis Mallet and Mr. Kahale were appointed as counsel in the resubmission proceeding for the Guaidó government instead of the Maduro government.[1]  The only remaining step before the new panel could be constituted was the appointment of the presiding arbitrator "by agreement of the Parties, with the assistance of the two co-arbitrators."  Bruton Dec. Ex. 23 ¶ 3.  It is therefore not true—as Venezuela claims—that "[b]y January 30, 2019, the arbitral panel was in place and prepared to hold proceedings on the

---

[1] As a U.S.-based law firm, Curtis Mallet was precluded from representing the Maduro government by the U.S. sanctions regime.

resubmission," Br. at 3, because the Tribunal could not be constituted until the third, presiding arbitrator was appointed.

In March 2019, Venezuela, through Mr. Pedroza (Maduro government), informed ICSID that it had revoked the power of attorney issued to Curtis Mallet, and that Mr. De Jesús would be its counsel. Bruton Dec. Ex. 23 ¶ 7. That same month the Guaidó government's Special Attorney General—José Ignacio Hernández G.—informed ICSID that he was the proper representative of Venezuela. Bruton Dec. Ex. 23 ¶ 8.

Petitioners notified ICSID of the communications they had received from "competing purported representatives of the Republic of Venezuela, including external counsel appointed by the Maduro government and the Special Attorney General appointed by the Guaidó government," and advised ICSID they were reflecting on the most appropriate manner in which to complete the constitution of the Tribunal. Bruton Dec. ¶¶ 11–12; Bruton Dec. Ex. 23 ¶ 11.

On November 11, 2019, Petitioners wrote to both Mr. De Jesús (Maduro government) and Mr. Hernández (Guaidó government), requesting that they agree to a modified procedure by which to appoint the presiding arbitrator. Bruton Dec. ¶ 13; Bruton Dec. Ex. 8. Specifically, Petitioners proposed that the two regimes confirm that they agreed to: "(i) empower the two co-arbitrators to select the presiding arbitrator by agreement without further input from the Parties; and (ii) recognize a Tribunal constituted in this manner as validly constituted." Bruton Dec. ¶ 13; Bruton Dec. Ex. 8. Mr. De Jesús responded on behalf of the Maduro government without agreeing, but representatives of the Guaidó government did not respond at all. Bruton Dec. ¶¶ 14–15.

To overcome this impasse, on February 13, 2020, Petitioners proposed that ICSID appoint the presiding arbitrator itself, without further input from any of the parties, in accordance

with its rules, and on August 17, 2020, ICSID did so and the Tribunal was constituted.  Bruton Dec. ¶¶ 16–17; Bruton Dec. Ex. 23 ¶¶ 14, 17–19.

Promptly thereafter, on August 26, 2020, Petitioners wrote to the Tribunal asking it to decide—as a preliminary issue—the question of which of Venezuela's purported representatives were properly authorized to represent Venezuela in the proceedings.  Bruton Dec. ¶ 18; Bruton Dec. Ex. 23 ¶ 20.  After having raised the issue to the Tribunal, Petitioners took no position, thus Respondent's assertion that "Plaintiffs [t]ook [n]o [s]teps to include the Republic in the Resubmission" is wrong as contrary to the evidence.  Br. at 11.

In September 2020, Guaidó appointed a new Special Attorney General, Enrique Sánchez Falcón, to replace Mr. Hernández.  Bruton Dec. ¶ 20; Bruton Dec. Ex. 23 ¶¶ 24–28.  ICSID considered Mr. Falcón to be "the person currently in charge of briefing the Tribunal on the representation issue . . . on behalf of '*the Interim President of the Bolivarian Republic of Venezuela*'" and set a briefing schedule.  Bruton Dec. Ex. 23 ¶¶ 24–28 (emphasis in original).

On November 5, 2020, Mr. Falcón informed ICSID that Curtis Mallet, with lead counsel George Kahale, III, would represent the Guaidó government in the resubmission proceeding.  Bruton Dec. ¶ 21; Bruton Dec. Ex. 23 ¶ 29.  In other words, Mr. Kahale and his firm Curtis Mallet represented Venezuela in the resubmission proceeding prior to February 2019 (as appointed by Maduro's Attorney General), and Mr. Kahale and his firm Curtis Mallet again represented Venezuela in the resubmission proceeding after November 2020 (as appointed by Guaidó's Special Attorney General).

Venezuela has told this Court it was not given an opportunity to be heard in the resubmission proceeding.  That is false.  Petitioners, the Maduro government (represented by Mr. De Jesús) and the Guaidó government (represented by Curtis Mallet) briefed the issue of

Venezuela's representation in two rounds of submissions, in November and December 2020. Bruton Dec. ¶¶ 22–26 and Exhibits 17–22. The Guaidó government's detailed submissions are attached as Exhibits 17 and 20 to the Bruton Declaration, and correspondence from the Guaidó government's counsel to ICSID is attached as Exhibits 4, 15, and 16 to the Bruton Declaration— directly contradicting Respondent's various assertions that "The Republic and its chosen legal counsel did not participate in the resubmission proceeding," and that the ICSID panel "depriv[ed] the legitimate government of the Republic of the due process right to appear and be heard." Br. at 9.

Around this time, other ICSID panels presiding over other proceedings involving Venezuela considered the same question of Venezuela's representation. In fact, Petitioners' November 2020 submission, which did not "take a position on the issue of which of Venezuela's purported representatives is properly authorized to represent Venezuela in these proceedings," summarized each of the six tribunals or *ad hoc* committees that had considered the issue of Venezuela's representation in other proceedings. Bruton Dec. Ex. 19. These six proceedings were *Fábrica de Vidrios Los Andes C.A. et al. v. Venezuela* (which continued with representation from the Maduro government only), *Air Canada v. Venezuela* (same), *Valores Mundiales S.L. et al. v. Venezuela* (same), *Kimberly-Clark et al. v. Venezuela* (same), *Agroinsumos Ibero-Americanos, S.L. et al. v. Venezuela* (same), and *ConocoPhillips v. Venezuela* (which allowed two sets of counsel, from both the Maduro government and the Guaidó government, to represent Venezuela). Bruton Dec. Ex. 19.

The Tribunal issued a 25-page decision[2] holding that the Maduro government which had represented Venezuela at the initiation of the resubmission proceedings should continue to

---

[2] The Tribunal referenced the *Valores* arbitration in its decision three times: once to "reject[] Curtis's objection to jurisdiction as unfounded," ¶¶ 45-46 & n.9; once as support for the proposition that "Most if not all earlier decisions

represent Venezuela.  Bruton Dec. Ex. 23.  The Guaidó government did not protest or otherwise react to the Tribunal's decision.  Bruton Dec. ¶ 34.

Following the Tribunal's decision, no representative from the Guaidó government attempted again to involve itself in the resubmission proceedings in any way and at any stage up to and including the issuance of the Final Award on July 10, 2023.  Bruton Dec. ¶ 35; Pet. ¶ 5. The Final Award required Venezuela to pay Petitioners the amount of US$984,527,000 for the expropriation of investments in the Cerro Negro Project, plus annual compound interest at the rate of 3.25% from June 27, 2007 until payment in full, as well as legal fees and expenses for the resubmission proceeding in the amount of US$1,018,515, plus annual compound interest at the rate of 7.75% from July 10, 2023 until payment in full.  Pet. ¶¶ 38–39.  The total amount of the Final Award is accordingly US$985,545,515 plus interest.  No representative of Venezuela has sought the annulment of the Final Award, and the time for such an appeal has long since passed. Bruton Dec. ¶ 36.

### C.    *The Petition to Enforce The Final Award, 2023–Present*

After obtaining the Final Award, Petitioners filed suit in this Court seeking recognition and enforcement of their award.  ECF No. 1.  As required by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a), Petitioners first served Venezuela under the Hague Convention, ECF No. 7, and then through diplomatic service, ECF No. 12.  The U.S. Department of State served the Guaidó government in the person of "the Presidential Commissioner for Foreign Relations of the Bolivarian Republic of Venezuela, an accredited representative put

---

have accorded a central role to the maintenance of the *status quo*, laying the burden of proof with the person or body seeking to change the existing representation," ¶ 50 & n.10; and once as support for the undisputed fact "that the Venezuelan law at the basis of the appointment of Mr. Falcón's predecessor has been annulled by the Constitutional Court," ¶ 55 & n.11.

forward by the National Assembly to represent the Bolivarian Republic of Venezuela to the United States." ECF No. 12.

Furthermore, Petitioners provided a courtesy notice directly to Venezuela's counsel nearly a week before Venezuela's response was due. *See* ECF No. 13-2 (email from Petitioners' counsel to Curtis Mallet attorneys including George Kahale (who represented Venezuela in the original ICSID arbitration, as well as the resubmission proceedings both prior to February 2019 and after November 2020), and Joseph Pizzurro, Juan Perla, and Kevin Meehan (who represented Venezuela in many different cases including both *Valores* and a previous case related to the original award issued to Petitioners in 2014 (*Mobil*, 863 F.3d 96), as well as to five attorneys at Arnold & Porter Kaye Scholer LLP who presently represent Venezuela in *Crystallex v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del.)).

Despite Petitioners' proper FSIA service and additional courtesy notice, Venezuela failed to answer or otherwise respond, and Petitioners subsequently obtained a default, ECF No. 14, and filed a motion for default judgment, ECF No. 16.

These same steps—thoroughly brief the issue of Venezuela's representation before ICSID, obtain a decision on representation and subsequent award from ICSID, file an action to enforce the award pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, serve Venezuela pursuant to the FSIA, obtain a default, and file a motion for default judgment—were followed by Valores. *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, No. 1:19-cv-00046-ACR-RMM, 2023 WL 3453633, at *1 (D.D.C. May 15, 2023). In response, Venezuela, through the Guaidó government, argued that the award was not entitled to full faith and credit because the ICSID panel had not recognized the Interim Government as Venezuela's representative in the arbitration proceedings. *Id.* at *4. The magistrate judge recommended the

District Court "set aside the default and rule accordingly on the parties' default motions. Neither party objected to this recommendation." *Id.* The District Court granted Venezuela's motion to set aside the default, denied Valores' motion for default judgment as moot, granted Valores' motion for summary judgment, and denied Venezuela's motion for summary judgment. *Id.* at \*8. The D.C. Circuit in *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510 (D.C. Cir. 2023) held that the ICSID committee's procedures had been adequate (including careful consideration of the Guaidó government's arguments on representation) and that the legitimacy of the Maduro government was not before the court, and therefore affirmed the District Court's decision in full.

Venezuela has now appeared, and asserts that its default should be set aside because it has a purportedly meritorious defense—even citing *Valores* for the proposition—while ignoring that the D.C. Circuit has already ruled against it on the precise issue for which it now seeks to set aside the default, and the same reasoning applies to the facts here. *Compare* Br. at 15 ("the Republic has a meritorious defense because the ICSID award Plaintiffs seek to enforce is not entitled to full faith and credit as the arbitral panel denied the Republic the opportunity to appear and contest Plaintiffs' allegations") *with Valores*, 87 F.4th at 521 ("The issue of [Venezuela's] representation was considered and decided . . . in full accordance with ICSID rules. We will not allow Venezuela to re-open the issue in federal court. On the record before us, it is clear that the judgments . . . are entitled to full faith and credit.").

## ARGUMENT

An entry of default may be set aside only for good cause. Fed. R. Civ. P. 55. Federal courts in the District of Columbia must consider "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980).

## I.    Venezuela's Default Was Willful

Respondent does not argue that service was improper or that Venezuela was unaware of this action.  Instead, it argues that Venezuela has been sued so many times it is incapable of responding in a timely manner.  Br. at 6; Declaration of Gustavo Marcano ¶¶ 7–9.  That is not good cause.  In fact, Respondent *cannot* argue lack of knowledge here, where Petitioners not only properly served Venezuela pursuant to the FSIA but also provided a courtesy notice directly to Venezuela's counsel before Venezuela's response was due.  *See* ECF No. 13-2.

Rather than respond in a timely manner to a nearly billion-dollar petition, Venezuela instead followed a well-worn pattern in this court and others of defaulting, and then appearing— if at all—only after the issuance of a default, a "continued pattern of delinquent behavior" that demonstrates the willfulness of its default here.  *Egypt Dep't of Def. v. Alboghdady*, No. CV 21-1144 (BAH), 2022 WL 715229, at *9 (D.D.C. Mar. 10, 2022); *see also Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 156 (D.D.C. 2016) (due to "Sudan's history of litigating, and abandoning, other FSIA actions against it, . . . the Court concludes that Sudan's default in this case constituted a 'deliberate decision to default.'") (citing *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003)).

Venezuela continues this willful pattern because it has proven to be a successful strategy to delay proceedings.  *See, e.g.*, *Valores*, 87 F.4th 510 (Venezuela appeared months after a default, which was set aside); *Koch Mins. Sarl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 29 (D.D.C. 2020) ("Venezuela's hibernation ended just four days before the Court was to have a hearing on the motion" for default judgment but the default was set aside); *Tenaris S.A. v. Bolivarian Republic of Venezuela*, No. 18-cv-1371 (CRC), 2020 WL 3265476, at *1 (D.D.C. June 17, 2020) (Venezuela appeared years after a default, which was set aside); *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, No. 18-cv-1963-LPS, 2019

WL 6785504 (D. Del. Dec. 12, 2019) (default vacated); *Devengoechea v. Bolivarian Republic of Venezuela*, No. 12-23743- CIV, 2016 WL 4370067 (S.D. Fla. July 5, 2016), *report and recommendation adopted as modified*, No. 12-23743-CIV, 2016 WL 11552419 (S.D. Fla. Sept. 29, 2016) (default vacated); *see also ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1 (D.D.C. 2022) (Venezuela never appeared and the default judgment was subsequently enforced in the District of Delaware); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) (same).[3]

## II.    There Is No Meritorious Defense and Venezuela is Precluded from Asserting Otherwise

Respondent's only asserted defense does not "contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense," *Keegel*, 627 F.2d at 374 (quoting *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969)), because the D.C. Circuit ruled against Venezuela on this exact issue, and the same analysis applies to this case.  Indeed, Venezuela is collaterally estopped from raising that defense by *Valores*, 87 F.4th 510.

### A.    This Court's Role in an ICSID Case is Limited and the Award Should be Enforced as a Judgment

Respondents do not dispute that by the specific design of the ICSID Convention and the enabling statute, 22 U.S.C. § 1650a, "a U.S. court is not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award."  Br. at 7 (citing *Valores*, 87 F.4th at 519).  In fact, "under the Convention's terms, [U.S. courts] may do no more than examine the judgment's authenticity and enforce the obligations

---

[3] Petitioners acknowledge that this Court has commented that "courts have gone to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside." *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 20 (D.D.C. 2001) (Lamberth, J.).  That said, there is no good cause here to set the default aside.

imposed by the award." *Valores*, 87 F.4th at 519 (citing *Mobil*, 863 F.3d at 102); *id.* at 522 (U.S. District courts are "[p]recluded by Section 1650a from examining the merits of matters decided in an ICSID award").  Petitioners have supplied a duly authenticated copy of the Final Award, ECF No. 1-5, and affirmed that the Final Award was not obtained by default and remains unsatisfied, ECF No. 1-4 ¶ 11.  Accordingly, Respondent has no defense, and the Final Award is entitled to full faith and credit as a matter of law.

Article 54 of the ICSID Convention and Section 1650a "strictly limit a federal court's authority to review an ICSID award[,] . . .treat[ing] [the federal] courts as courts of enforcement, not review." *Valores*, 87 F.4th at 518; ICSID Convention Art. 54(1)[4]; 22 U.S.C. § 1650a(a) ("An award of an arbitral tribunal . . . shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.").

Furthermore, "Article 53 of the Convention provides that a party dissatisfied with an award may challenge it on various grounds, but may do so only through proceedings at the Centre and not collaterally in the courts of member states." *Mobil*, 863 F.3d at 101; ICSID Convention Art. 53(1) ("The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention."); *see* Restatement (Third) U.S. Law of Int'l Comm. Arb. Archive § 5.6 TD No 5 cmt. a (2017) ("The ICSID Convention imposes an obligation on courts of the contracting States to recognize and enforce

---

[4] "Each Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State. A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." ICSID Convention Art. 54(1).

ICSID Convention awards.  It recognizes no grounds on the basis of which recognition or enforcement of such awards may be denied.").  "Searching re-examination of ICSID awards by enforcement courts would be contrary to the Convention's central purpose of ensuring a neutral framework for dispute resolution," the efficacy of which "depends on the finality of ICSID Arbitral Tribunal decisions."  *Valores*, 87 F.4th at 518.

"Because Section 1650a borrows the language of [28 U.S.C. §] 1738," the statute governing "the enforcement of state court judgments in federal courts," federal courts in the District of Columbia must "interpret Section 1650a by reference to Section 1738."  *Id.* at 518– 519 (citing 112 Cong. Rec. 13149 (1966) ("To give full faith and credit to an arbitral award as if it were a final judgment a court of one of the several States means that an action would have to be brought on the award in a United States District court just as an action would have to be brought in a United States District court to enforce the final judgment of a State court.") (statement of Senator J. William Fulbright)).

Since "[p]reventing relitigation of issues already decided is the keystone of the full faith and credit obligation," and "Section 1650a contains further signals that Congress did not intend federal courts to re-open the merits of ICSID awards," federal courts in the District of Columbia "look to whether ICSID would treat the award as binding," which it would.  *Id.* at 519–520; ICSID Convention Article 53(1) ("The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention."). "Venezuela asks the Court to . . . undertake a *de novo* review of the [Tribunal's] decision to recognize the representatives of the Maduro government as counsel.  The Court cannot undertake that review."  *Valores*, 2023 WL 3453633, at *5.

14

Moreover, contrary to Venezuela's misplaced suggestion that "[t]he arbitral panel lacked jurisdiction over the resubmission," Br. at 9, there is no question that ICSID had jurisdiction over this dispute. Article 25 of the ICSID Convention sets forth the scope of ICSID's jurisdiction, which "extend[s] to any legal dispute arising directly out of an investment, between a Contracting State . . . and a national of another Contracting State, which the parties to the dispute consent in writing to submit to the Centre." ICSID's jurisdiction is determined by reference to the date on which judicial proceedings are instituted (here, in 2007), and "events taking place after that date will not affect jurisdiction." Schreuer et al., *The ICSID Convention: A Commentary*, Article 25 ¶ 36 (2d ed. 2009) (collecting cases); *see also* Pet. ¶ 19 (ICSID tribunal determined it had jurisdiction over Petitioners' claims in 2010). The Tribunal found—and Venezuela does not assert anything to the contrary—that the dispute involved Petitioners' investment, and that Venezuela was at the relevant time a Contracting State and that Petitioners were nationals of another Contracting State. With those elements indisputably satisfied, jurisdiction is met regardless of how Venezuela attempts to present its defense.[5]

### 1.    Petitioners' ICSID Award is Entitled to Full Faith and Credit

"Full faith and credit's bar against relitigation is unyielding." *Valores*, 87 F.4th at 519. And although Respondent quotes the sentence, "[t]he Supreme Court has recognized want of jurisdiction as an exceptional instance in which a judgment may be denied full faith and credit," Br. at 8, *Valores*, 87 F.4th at 519, to argue that ICSID had no jurisdiction—an argument

---

[5] Respondent argues that ICSID did not have "jurisdiction over relevant and necessary parties," Br. at 10, but the relevant party for purposes of ICSID's jurisdiction is "the Bolivarian Republic of Venezuela—the nation state," as even Respondent agrees, Br, at 12, and not the Guaidó government. ICSID Convention Article 25; *see also Republic of Iraq v. ABB AG*, 768 F.3d 145, 163–64 (2d Cir. 2014) ("Our law has long recognized that the legal position of a foreign state survives changes in its government. Thus, a foreign state's proprietary rights, and its causes of action in our courts, persist following a change in its form of government. Similarly, the obligations of a foreign state are unimpaired by a change in that state's government. Because 'the rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it,' when a foreign 'government changes, the nation remains, with rights and obligations unimpaired.'") (internal citations omitted).

contradicted by the evidence—Respondent ignores that "even this exception must yield to the prohibition against relitigation." *Valores*, 87 F.4th at 519–20; *Durfee v. Duke*, 375 U.S. 106, 111 (1963) ("[A] judgment is entitled to full faith and credit—even as to questions of jurisdiction— when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.").

In this case, "Venezuela seeks to prevent enforcement by rehashing an issue that the [Tribunal] considered and resolved. However, Venezuela's attempt cannot succeed because Section 1650a prohibits relitigation of issues that have been fully considered, carefully addressed, and decided on the merits in an ICSID action." *Valores*, 87 F.4th at 520. "Venezuela [may] disagree[] with the [Tribunal's] decision to deny the Guaidó government's request to participate in the . . . proceedings," but "[a]part from its claim that new counsel selected by the Guaidó regime should have been allowed to intervene in the [resubmission] proceeding, Venezuela does not point to any additional procedure that the [Tribunal] should have followed to address its claims." *Id.*; *see* Br. 9–11. Nor can Respondent challenge the fact that the Tribunal "heard and fully addressed all of its arguments," as articulated in its November and December 2020 submissions (Bruton Dec. Exs. 17 and 20). *Id.* "Rather, Venezuela simply objects to the [Tribunal's] disposition of the case," though "there can be no doubt that the Guaidó government's participation was 'fully and fairly' argued by the parties and 'finally decided' by the" Tribunal. *Id.* at 520–521.

Furthermore, although Respondent argues a lack of jurisdiction, "Section 1650a contains further signals that Congress did not intend federal courts to re-open the merits of ICSID awards," *Valores*, 87 F.4th at 519–520, and "the general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter." *Durfee*, 375 U.S.

16

at 112 ("[S]ince the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in a subsequent action between the parties.").

Respondent further ignores: 1) its own agreement that "a U.S. court is not permitted to examine . . . the ICSID tribunal's jurisdiction to render the award," Br. at 7; 2) the fact that ICSID's jurisdiction is determined by reference to the date on which judicial proceedings are instituted, "events taking place after that date will not affect jurisdiction," and ICSID determined in 2010 it had jurisdiction, Schreuer, *infra*, Article 25 ¶ 36 and Pet. ¶ 19; and 3) the fact that the Tribunal squarely addressed, at the Guaidó government's request, "Whether the representation issue is a political issue over which the Tribunal has no jurisdiction."  Bruton Dec. Ex. 23 ¶¶ 40–46.

The Tribunal found "that the representation of Venezuela is indeed a procedural issue pursuant to Article 44 of the [ICSID] Convention," and noted this finding was "unaffected by Curtis's argument that the issue of the representation of Venezuela in the present proceedings falls outside arbitral jurisdiction pursuant to the bilateral investment treaty between the Netherlands and Venezuela."  *Id.* ¶¶ 43–44.  The Tribunal noted that the "jurisdictional provisions in [the BIT] must be read in combination with the ICSID Convention.  The Tribunal's jurisdiction over the dispute as defined in Article 9(3) of the [BIT] is without prejudice to the Tribunal's power to address procedural issues that may arise in the course of the arbitration, which is governed by Article 44 of the ICSID Convention to which Article 9(1) of the [BIT] refers."  *Id.* ¶ 44.

The Tribunal further explained that, because "arbitral tribunals have a limited and functional capacity consisting in deciding the issues submitted to them by the disputing parties," and "do not have the capacity to recognize a government as sovereign States would do," its

17

decision on representation was not a decision "on 'the recognition of a Venezuelan government' or on the recognition of Venezuela's 'legitimate Government.'" *Id.* ¶ 45.  The Tribunal noted it had the power "to render procedural decisions on the representation of parties before" it for the "only purpose of assuring the proper conduct of the proceedings and protecting the rights of defence of the parties, which may also depend on criteria such as procedural fairness and efficiency different from those relevant to the recognition of States and governments." *Id.*  "As the tribunal in *Valores Mundiales* observed, the procedural issue of representation of the Respondent 'is limited in scope to these proceedings.'" *Id.*  The Tribunal accordingly "reject[ed] Curtis's objection to jurisdiction as unfounded." *Id.* ¶ 46.

In other words, the ICSID panel "fully considered, carefully addressed, and decided on the merits" the issue of Venezuela's representation, and accordingly "Section 1650a prohibits relitigation of [that] issue." *Valores*, 87 F.4th at 519–520; *Durfee*, 375 U.S. at 111.

"Venezuela has had its opportunity to be heard.  The issue of its representation was considered and decided by the [Tribunal] in full accordance with ICSID rules." *Valores*, 87 F.4th at 521.  This court should "not allow Venezuela to re-open the issue" when, "[o]n the record before" this court in the Bruton Declaration and accompanying exhibits, "it is clear that the judgment[] of the ICSID Arbitral Tribunal . . . [is] entitled to full faith and credit." *Id.*

2.    Petitioners' ICSID Award Should Be Enforced In This Court

Another aspect of Respondent's argument, regarding enforcement, was also considered and rejected by the D.C. Circuit in *Valores*, and should be rejected here for the same reasons.  As the Circuit Court held: Venezuela "attempts to skirt the well-established limits of full faith and credit review by suggesting that enforcement of the ICSID award[] against Venezuela would contravene the President's Recognition authority," but that "argument is clearly a non sequitur.  Neither the ICSID Convention nor its implementing legislation undermines the authority of the

President of the United States," and "enforcement of the ICSID award[] is not equivalent to recognition of the Maduro regime." *Id.*

The *Valores* court went on to hold that a federal court's "enforcement of the ICSID award[] [does not] imply a denial of the President's recognition of the Guaidó government," nor does it "force[] the Executive to contradict his statements recognizing the Guaidó regime." *Id.* at 522. Instead, by finding that ICSID awards are entitled to full faith and credit and enforcing them, U.S. courts "simply follow[] the path that Congress and the Executive have jointly forged: we apply legislation Congress passed to implement a treaty the President signed and the Senate approved." *Id.*[6]

Enforcement of an ICSID award "does not implicate a conflict between state and federal law" because "federal policy – in the form of the ICSID treaty and its implementing legislation – requires [the D.C.] court to enforce the award[] without review of the merits, pursuant to Article 54(1) of the ICSID Convention and Section 1650a." *Id.* at 523. "[A] refusal to enforce the ICSID award[] against Venezuela would require this court to ignore the treaty obligations undertaken by the Executive and approved by the Senate and the implementing legislation passed by Congress. Enforcement, not its opposite, is what the separation of powers requires." *Id.*

**B.     *Venezuela is Collaterally Estopped from Raising Its Defense***

Offensive collateral estoppel precludes a defendant "from relitigating identical issues that the defendant litigated and lost against another plaintiff." *Jack Faucett Associates, Inc. v. AT&T*

---

[6] "An ICSID Arbitral Tribunal and Annulment Committee are not bound by United States law. Rather, they must follow the framework set out in the ICSID Convention and the procedures adopted by ICSID pursuant to its authority under the ICSID Convention. The United States agreed to these rules when it became a Contracting State under the ICSID Convention. And . . . Section 1650a prohibits federal courts from relitigating issues that have been fully considered, addressed, and decided in an ICSID action." *Id.*

*Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984); *F.T.C. v. GlaxoSmithKline*, 202 F.R.D. 8, 11 (D.D.C. 2001) (Lamberth, J.) (applying non-mutual offensive collateral estoppel); *Ass'n of Indep. Sch. of Greater Washington v. D.C.*, 311 F. Supp. 3d 262, 271 (D.D.C.), *amended*, 317 F. Supp. 3d 355 (D.D.C. 2018) ("[T]he doctrine of non-mutual offensive collateral estoppel . . . may be used where 'a plaintiff seeks to estop a defendant from relitigating issues [that] the defendant previously litigated and lost against another plaintiff.'") (citing *Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 421–422 (D.C. 1984)).

Before a party can be estopped from relitigating an identical issue previously decided, three conditions must be satisfied:  "First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case.  Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case.  Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (citing *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

"When, as here, the party attempting to assert collateral estoppel was not a party to the original action, the Restatement [of Judgments] provides: '[a] party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.'"  *Bryson v. Gere*, 268 F. Supp. 2d 46, 56 (D.D.C. 2003) (Lamberth, J.) (citing Restatement (Second) of Judgments § 29).  However, once an issue— here, whether Venezuela should be represented by the Maduro government or the Guaidó government in an ICSID proceeding and whether that decision affects the enforceability of the ICSID award as a judgment—has been "'raised and determined, it is the

entire issue that is precluded, not just the particular arguments raised in support of it in the first case.'" *GlaxoSmithKline*, 202 F.R.D. at 11 (citing *Yamaha*, 961 F.2d at 254); *see also id.* at 12 (noting that "finality for purposes of issue preclusion" is a "pliant concept" which "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.") (citing *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)).

### 1.    The Issue Venezuela Raises Here Is Identical to The Issue Raised in *Valores*

As an initial matter, a court applying collateral estoppel must determine if the issues are the same, and may be aided in its analysis by consideration of factors including "whether there is substantial overlap between the evidence or the argument to be advanced" and whether the new evidence or argument involve application of the same rule of law.  *Bryson*, 268 F.Supp.2d at 57. "Where the basic facts underlying the new claims are indistinguishable from the facts at issue in the prior adjudication, the new claims are properly precluded."  *Id.* at 58.

The facts of *Valores* are indistinguishable from the undisputed facts at issue here.  First, the petitioners "commenced an arbitration under the ICSID Convention claiming that Venezuela forcibly occupied and decreed the expropriation of the[ir] assets" and "[a]n ICSID Arbitral Tribunal ruled in [their] favor."  *Valores*, 87 F.4th 513; Bruton Dec. ¶ 4.  Second, "the National Assembly of Venezuela ceased to recognize Nicolás Maduro as President and named Juan Guaidó as Interim President. Representatives for the Interim Government requested the ICSID [panel] to allow it to replace the lawyers representing Venezuela in the [subsequent] proceeding."  *Id.*; Bruton Dec. ¶¶ 9–12.  Third, "[a]fter careful review of the matter, the ICSID [panel] concluded that the lawyers who had been representing Venezuela should continue through the conclusion of the . . . proceeding."  *Id.*; Bruton Dec. ¶¶ 27–33.  Fourth, the

petitioners ultimately prevailed before ICSID and then sought to enforce the ICSID award in this court. *Valores*, 87 F.4th at 513–514. Fifth, "Venezuela opposed enforcement of the judgments issued by [ICSID]. Venezuela claimed that it had been deprived of due process because the ICSID [panel] had declined to recognize counsel designated by the Guaidó regime. Venezuela also argued that, because the United States had formally recognized the Guaidó regime, the District Court should not enforce the ICSID awards." *Id.* at 514; Br. at 13–15. Finally, although Venezuela denounced its ICSID membership in 2012, the terms of the underlying investment treaty "render Venezuela subject to ICSID's jurisdiction for the purpose of the arbitration proceedings at issue here." *Id.* at 516; Bruton Dec. ¶ 7.

Furthermore, the legal issues of whether the ICSID award is entitled to full faith and credit under 22 U.S.C. § 1650a, and whether this court should enforce the award, are the same. *Valores*, 87 F.4th at 516, 523.

### 2.    The Issue Was Necessarily and Actually Litigated

An issue is "actually litigated when it is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined,'" and it is necessarily litigated when it "forms the center of the dispute." *Bryson*, 268 F. Supp. 2d at 59 (citing Restatement (Second) of Judgments § 27, cmt. d). As discussed above, the question of whether an ICSID award issued after the ICSID panel considered, and rejected, the Guaidó government's efforts to appear as the representatives of Venezuela is enforceable in U.S. courts was necessarily and actually litigated both in the D.C. District Court and the D.C. Circuit Court. *Valores*, 2023 WL 3453633; *Valores*, 87 F.4th 510.

### 3.    The D.C. Circuit Issued a Valid Judgment on the Merits

"A judgment is valid when it was rendered by a court of competent jurisdiction." *Bryson*, 268 F. Supp. 2d at 59. The U.S. District Court for the District of D.C. has jurisdiction over the

enforcement of ICSID awards, and is a court of competent jurisdiction, as is the D.C. Circuit. 22 U.S.C. § 1650a(b) ("The district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings under subsection (a) of this section, regardless of the amount in controversy."). And the D.C. Circuit's judgment was issued on the merits: "Venezuela has had its opportunity to be heard. The issue of its representation was considered and decided . . . in full accordance with ICSID rules. We will not allow Venezuela to re-open the issue in federal court. On the record before us, it is clear that the judgments of the ICSID Arbitral Tribunal . . . are entitled to full faith and credit." *Valores*, 87 F.4th at 521.

4.   <u>Collateral Estoppel Works No Unfairness to Respondent</u>

Although the "unfairness concern is heightened when plaintiff seeks to use collateral estoppel 'offensively' against defendant when plaintiff was not party to prior suit," *Yamaha*, 961 F.2d at 254 (D.C. Cir. 1992), if a party has "the same incentive to litigate in both the earlier and the subsequent litigation, if there is no change in the controlling law and if there is no concern about procedural defects in the first litigation, the application of issue preclusion is unlikely to result in a "compelling" showing of unfairness to the party against which it is asserted." *Canonsburg Gen. Hosp.*, 807 F.3d at 306. The *Valores* case involved an ICSID award of over $430 million; although the award in this case is approximately twice as high, it defies belief that Venezuela did not have the same incentive to litigate the enforcement of an award worth nearly half a billion dollars as it does here. Accordingly, collateral estoppel works no unfairness to Venezuela.

## III.    Petitioners Would Be Prejudiced If the Default Were Set Aside

As Respondent's reference to the over 90 lawsuits pending against Venezuela makes clear, Br. at 6, there is a creditors' race taking place in the United States for Venezuela's assets. *See, e.g.*, *Crystallex*, No. 17-mc-151 (D. Del.); *OI Eur. Grp. B.V. v. Bolivarian Republic of*

*Venezuela*, 419 F. Supp. 3d 51, 55–56 (D.D.C. 2019) ("The Court also notes that in the past year, another creditor has sought attachment of Venezuelan assets to satisfy its debts, and a court in another district has granted attachment, despite Venezuela's political instability."). This court, citing a case *from this arbitration* from nearly ten years ago, noted that "[d]elays must be considered against the backdrop that '[l]itigation on actions to enforce [ICSID arbitral] awards need not be protracted.'" *Koch Mins.*, 514 F. Supp. 3d at 41 (citing *Mobil*, 863 F.3d at 117).

"The ICSID award-debtor would be a party to the action and would be able to challenge the United States court's jurisdiction to enforce the award—for instance, on venue grounds—but would not be permitted to make substantive challenges to the award." *Id.* (citing *Mobil*, 863 F.3d at 118). "[U]nnecessarily drawing out proceedings 'unfairly prejudices [a] plaintiff to some degree.'" *Id.* (citing *Konoike Constr. Co. v. Ministry of Works, Tanzania*, No. 17-cv-1986, 2019 WL 1082337, at *3 (D.D.C. Mar. 7, 2019)). Furthermore, creditors denied a place in line due to the debtor's default are prejudiced. *See Hillcrest Bank, N.A. v. Anzo*, No. 11-2035-JAR, 2011 WL 3299756, at *5 (D. Kan. Aug. 1, 2011) (denying motion to set aside default, and finding prejudice, where "another judgment creditor [got] in line ahead of plaintiff, despite the fact that this case was filed" earlier). With respect to Venezuela specifically, other courts have set a "'first in time, first in line' scheme . . . in connection with efforts to collect on Venezuela's debts," *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. MC 17-151-LPS, 2023 WL 4826467, at *9 (D. Del. July 27, 2023), and creditors whose cases were delayed by Venezuela's default and subsequent motions to vacate, such as Saint-Gobain Performance Plastics (*see Saint-Gobain*, 2019 WL 6785504), Tenaris (*see Tenaris*, 2020 WL 3265476) and Devengoechea (*see Devengoechea*, 2016 WL 11552419) ended up at the end of the priority line—if they were able to get in line at all—and are unlikely to collect anything. *Crystallex*, No.

24

17-mc-151-LPS, ECF No. 1102 (setting priority order with Tenaris's successor-in-interest Gramercy Distressed Opportunity Fund LLC in priority position #16, Saint-Gobain Performance Plastics in priority position #17, and excluding Devengoechea); *see Crystallex*, No. 17-mc-151-LPS, ECF No. 1741 (designating Stalking Horse bidder whose bid would pay out only to priority position #6).

Accordingly, Petitioners would be prejudiced if the default were to be set aside.

## CONCLUSION

For the foregoing reasons, this Court should deny Respondent's motion to set aside the default. In the event the Court grants Respondent's motion, the Court should direct the Republic to answer or otherwise respond within 14 days, as required by Local Rule 7(g).

Dated:   May 27, 2025                    Respectfully submitted,


                                         _/s/ Steven K. Davidson_____
                                         Steven K. Davidson (D.C. Bar No. 407137)
                                         Michael J. Baratz (D.C. Bar No. 480607)
                                         Molly Bruder Fox (D.C. Bar No. 981619)
                                         Emma Marshak (D.C. Bar. No. 1048357)
                                         STEPTOE LLP
                                         1330 Connecticut Avenue, N.W.
                                         Washington, D.C. 20036
                                         Tel: (202) 429-3000
                                         Fax: (202) 429-3902
                                         sdavidson@steptoe.com
                                         mbaratz@steptoe.com
                                         mbfox@steptoe.com
                                         emarshak@steptoe.com

                                         *Counsel for Petitioners*

                                         Of Counsel:

                                         Eugene J. Silva II
                                         Law Department
                                         EXXON MOBIL CORPORATION
                                         800 Bell Street
                                         Houston, Texas 77002
                                         Tel: (713) 656-3636
                                         Fax: (713) 656-3496
                                         eugene.j.silva@exxonmobil.com