**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MOBIL CERRO NEGRO, LTD., *et al*.,

Petitioners,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

Respondent.

Case No. 23-cv-3506-RCL

**COMBINED REPLY IN SUPPORT OF PETITIONERS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**INTRODUCTION**............................................................................................................... 1

**ARGUMENT**..................................................................................................................... 3

I.      Venezuela Cannot Relitigate Issues Already Decided by the ICSID Tribunal ................. 3

      A.      Venezuela Cannot Relitigate ICSID's Jurisdiction................................................ 4

            1.      ICSID Had Jurisdiction To Decide The Representation Issue.................... 5

            2.      The Argument Respondent Claims Here was "Jurisdictional" Was
Fully and Fairly Litigated and Finally Decided by the ICSID Tribunal..... 6

      B.      Venezuela Cannot Relitigate the Enforceability of the Final Award ................... 10

II.     Venezuela is Estopped from Repeating the Same Arguments........................................ 11

      A.      Venezuela is Estopped from Arguing That Arbitral Awards Issued After
Proceedings In Which the Maduro Government Participated and the Guaidó
Government Did Not Cannot Be Enforced in U.S. Courts .................................. 12

III.    Section 1650a Requires This Court to Enforce the Final Award and Give It Full
Faith and Credit............................................................................................................ 17

IV.    There Are No Disputed Material Facts........................................................................... 19

**CONCLUSION** ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BG Grp., PLC v. Republic of Argentina*,
  572 U.S. 25 (2014)................................................................................................5, 6

\* *Blasket Renewable Invs., LLC v. Kingdom of Spain*,
  No. CV 23-2701 (RC), 2024 WL 4298808 (D.D.C. Sept. 26, 2024) ............................4, 5, 17

*Canonsburg Gen. Hosp. v. Burwell*,
  807 F.3d 295 (D.C. Cir. 2015)................................................................................11

*Durfee v. Duke*,
  375 U.S. 106 (1963)................................................................................................6, 9

*F.T.C. v. GlaxoSmithKline*,
  202 F.R.D. 8 (D.D.C. 2001)...................................................................................10

*Jack Faucett Associates, Inc. v. AT&T Co.*,
  744 F.2d 118 (D.C. Cir. 1984)................................................................................10

*The Maret*, 145 F.2d 431 (3d Cir. 1944)................................................................14, 16

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017)......................................................................................18

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
  No. CV 16-1533 (ABJ), 2019 WL 2185040 (D.D.C. May 21, 2019) ............................16, 18

*Pfizer, Inc. v. Gov't of India*,
  434 U.S. 308 (1978)................................................................................................15

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002)..................................................................................18

*Republic of Iraq v. ABB AG*,
  768 F.3d 145 (2d Cir. 2014)....................................................................................14

*Republic of Panama v. Air Panama Internacional, S.A.*,
  745 F. Supp. 669 (S.D. Fla. 1988) ..........................................................................9

*Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*,
  No. 18-cv-1963-LPS, 2019 WL 6785504 (D. Del. Dec. 12, 2019) ........................................18

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993)................................................................................................17

ii

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
    No. CV 17-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018) ..............................6, 9, 17

\* *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del
    Poder Popular para Relaciones Exteriores*, 87 F.4th 510 (D.C. Cir. 2023) ................... *passim*

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
    No. 19-cv-00046-ACR-RMM, 2023 WL 3453633 (D.D.C. May 15, 2023)...............11, 12, 16

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
    No. 19-cv-00046-FYP-RMM, 2022 WL 17370242 (D.D.C. Aug. 3, 2022) ..........................12

\* *Venezuela US SRL, v. Bolivarian Republic of Venezuela*,
    No. 22-cv-3822-JMC, 2025 WL 1635370 (D.D.C. June 9, 2025) ................................. *passim*

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015)...............................................................................................................14, 15

**Statutes**

22 U.S.C. § 1650a ...................................................................................................... *passim*

28 U.S.C. § 1330(b) ...........................................................................................................18

28 U.S.C. § 1391(f) ............................................................................................................18

28 U.S.C. §§ 1605(a) ..........................................................................................................17

ICSID Convention Art. 25 .....................................................................................................5

ICSID Convention Art. 41 ...............................................................................................4, 5, 6

ICSID Convention Art. 44 .....................................................................................................8

ICSID Convention Art. 54 ...................................................................................................17

**Other Authorities**

Restatement (Third) U.S. Law of Int'l Comm. Arb. Archive § 5.6 (2017) ....................................17

Schreuer et al., *The ICSID Convention: A Commentary* (2d ed. 2009) ...................................14, 16

**INTRODUCTION**

Petitioners Mobil Cerro Negro, Ltd., Venezuela Holdings, B.V., and Mobil Cerro Negro Holding LLC (collectively "Petitioners"), by and through their undersigned counsel, respectfully submit this combined brief in further support of their Motion for Summary Judgment seeking judicial recognition and enforcement of a fully litigated ICSID[1] award rendered against Respondent the Bolivarian Republic of Venezuela ("Venezuela" or "Respondent"), and in opposition to Respondent's Cross-Motion for Summary Judgment.  There are no material disputed facts and, should the Court decide to set aside the default, both parties agree this case is ripe for resolution on the merits.[2]

The *Valores* court rejected the very argument Respondent is making here and made clear that Respondent cannot relitigate the question of which government the ICSID tribunal allowed to represent Venezuela in an arbitration by challenging the enforcement of the ensuing award in this court.  *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510 (D.C. Cir. 2023).  Accordingly, Respondent agrees—as it must—that "the statutory framework here requires a federal court to give an ICSID award 'the same full faith and credit' it would receive if the award were a 'final judgment' of a state court," and that "[t]he full faith and credit obligation owed final judgments 'precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based.'"  Opp. at 5–6 (quoting *Valores*, 87 F.4th at 519).  Respondent further agrees that consideration of any issue, even a jurisdictional

---

[1] Capitalized terms not otherwise defined shall have the meaning set forth in Petitioners' Memorandum in Support of Motion for Summary Judgment, ECF No. 27-1 ("Br.").

[2] *See* Respondent's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 29-1 ("Opp."), at 5 ("[I]t appears that the parties do not have any material factual dispute but rather a disagreement on the application of the law to the facts.").  Respondent partially disputes the interest rate, an issue which is discussed in Section IV, *infra*.

one, which "involve[s] relitigation of questions that have been fully and fairly litigated and finally decided in the court which rendered the original judgment," is not permitted. Opp. at 6 (citing *Valores*, 87 F.4th at 519–520). And Respondent does not deny that it is seeking to relitigate issues the ICSID tribunal fully and finally decided.

Nevertheless, Respondent attempts to evade the unambiguous words of Section 1650a and the holding of *Valores* by vainly claiming that the nature of the issues Respondent is seeking to relitigate here are somehow different than those faced by the *Valores* court.[3] Respondent claims here that the ICSID tribunal did not have jurisdiction to determine which government could represent Venezuela in arbitral proceedings. Respondent also claims that an arbitral award issued after a proceeding in which only the Maduro government's attorneys represented the Bolivarian Republic of Venezuela cannot be enforced in U.S. courts. But these issues were fully and fairly litigated and finally decided ***not only*** by the ICSID tribunal ***but also*** by the D.C. Circuit in *Valores*, and such decisions are binding on this Court. Furthermore, having litigated the same issues in *Valores*, Respondent is collaterally estopped from re-raising them here.

In addition, just last week, another court in this District rejected Respondent's "wrong government" argument. The court held that "Venezuela['s] argue[ment] that 'this Court may not enforce a foreign arbitral award rendered in proceedings in which only the Maduro regime purported to act on behalf of Venezuela, as if the award were binding on the Republic,' because that would recognize the Maduro regime as the government of Venezuela" was not a bar to enforcement of the underlying arbitral award. *Venezuela US SRL, v. Bolivarian Republic of*

---

[3] Indeed, Respondent recognizes the applicability of collateral estoppel, as its only response is a single sentence again incorrectly asserting that the legal issue raised in *Valores* is different than the issue here. Opp. at 7.

2

*Venezuela* ("*VUS*"), No. 22-cv-3822-JMC, 2025 WL 1635370, at \*6 (D.D.C. June 9, 2025).[4]

That decision also estops Respondent's enforcement argument made here.

Accordingly, the Court should grant Petitioners' motion for summary judgment, deny

Respondent's cross-motion for summary judgment, and enforce the pecuniary obligations of the

Final Award against Venezuela.

### ARGUMENT

### I.    Venezuela Cannot Relitigate Issues Already Decided by the ICSID Tribunal

"Preventing relitigation of issues already decided is the keystone of the full faith and

credit obligation," and "[a]s a result, a court may not deny a judgment full faith and credit

because 'it disagrees with the reasoning underlying the judgment or deems it to be wrong on the

merits.'" *Valores*, 87 F.4th at 519 (citing *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (per curiam)).

Instead, "the full faith and credit obligation owed final judgments 'precludes any inquiry into the

merits of the cause of action, the logic or consistency of the decision, or the validity of the legal

principles on which the judgment is based.'" *Id.* (citing *V.L.*, 577 U.S. at 407).

Respondent agrees with this relitigation ban but attempts to avoid it by arguing that "want

of jurisdiction can be an 'exceptional instance' in which an arbitral judgment may be denied full

faith and credit." Opp. at 6.  But Respondent's argument then fails under its own words, as it

admits that even this exception can only apply "***provided that the consideration does not involve***

***relitigation of questions that have been fully and fairly litigated and finally decided in the***

***court which rendered the original judgment***." *Id.* (emphasis added).  Yet both questions

Respondent raises here—first, whether the ICSID tribunal had jurisdiction to decide "who is

authorized to legitimately represent the Republic in an arbitration proceeding," Opp. at 9, and

---

[4] Although *VUS* concerns an arbitral award issued pursuant to the New York Convention, its principles (as discussed in greater detail below) are fully applicable here.

second, whether an award issued at the conclusion of proceedings in which the Maduro government participated and the Guaidó government did not can be enforced in U.S. courts—have been fully and fairly litigated, and finally decided, by the ICSID tribunal.  In addition, Respondent is collaterally estopped from raising these arguments by *Valores*, and also estopped from raising the enforcement argument by this court's *VUS* decision.

### A.    Venezuela Cannot Relitigate ICSID's Jurisdiction

"'A judgment is entitled to full faith and credit—*even as to questions of jurisdiction*—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.'"  *Valores*, 87 F.4th at 520 (quoting *Durfee v. Duke*, 375 U.S. 106, 111 (1963)) (emphasis added); *id.* at 519–20 (even the "exceptional instance" of "want of jurisdiction" "must yield to the prohibition against relitigation."); Opp. at 6 (conceding that a judgment may be denied full faith and credit for want of jurisdiction only "provided that the consideration does not involve relitigation of questions that have been fully and fairly litigated and finally decided in the court which rendered the original judgment"); Opp. at 8 (acknowledging "the direction in *Valores Mundiales* to not relitigate issues previously decided in the arbitration").

Because "the bar on collaterally attacking a state court's subject matter jurisdiction is particularly strong in cases where the issue was actually litigated," such that the "doctrine of jurisdictional finality" means the issue cannot subsequently be retried, and because an ICSID "Tribunal is 'the judge of its own competence,' ICSID Convention Art. 41(1), and must consider objections to its jurisdiction, *id.* Art. 41(2)," and the tribunal here did so, Venezuela "'may not' now 'reopen that question in a collateral attack upon an adverse judgment.'"  *Blasket Renewable Invs., LLC v. Kingdom of Spain*, No. CV 23-2701 (RC), 2024 WL 4298808, at *9 (D.D.C. Sept.

4

26, 2024) (citing *Durfee*, 375 U.S. at 113, and *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982)).

    1.  *ICSID Had Jurisdiction To Decide The Representation Issue*

Article 25 of the ICSID Convention provides that ICSID's jurisdiction extends "to any legal dispute arising directly out of an investment[] between a Contracting State . . . and a national of another Contracting State. . . . When the parties have given their consent, no party may withdraw its consent unilaterally." ICSID Convention Art. 25(1). Respondent has previously admitted that the relevant party for purposes of ICSID's jurisdiction is "the Bolivarian Republic of Venezuela—the nation state," ECF No. 25-1 at 12, and does not now try to reverse that position. Opp. at 13. ICSID's jurisdiction is determined by reference to the date on which proceedings are instituted (here, in 2007, when ICSID Case No. ARB/07/27 was opened), and "events taking place after that date will not affect jurisdiction." Baratz Decl.[5] Ex. E (Schreuer et al., *The ICSID Convention: A Commentary*, Article 25 ¶ 36 (2d ed. 2009)) (collecting cases).

Second, "[a]n Arbitral Tribunal convened under the [ICSID] Convention 'shall be the judge of its own competence,' and parties must raise jurisdictional challenges for the Tribunal to address as a 'preliminary question.'" *Blasket Renewable Invs., LLC*, 2024 WL 4298808, at *2 (citing ICSID Convention Art. 41); ICSID Convention Art. 41(2) ("Any objection by a party to the dispute that that dispute is not within the jurisdiction of the Centre, or for other reasons is not within the competence of the Tribunal, shall be considered by the Tribunal which shall determine whether to deal with it as a preliminary question or to join it to the merits of the dispute."); Schreuer et al., *The ICSID Convention: A Commentary*, Article 41 ¶ 23 (2d ed. 2009)

---

[5] Citations to the Baratz Declaration refer to the May 30, 2025 Declaration of Michael J. Baratz in Support of Petitioners' Motion for Summary Judgment, ECF No. 27-3, and its exhibits A–E (ECF Nos. 27-4–27-8).

("Decisions on jurisdiction and competence by ICSID tribunals enjoy the status of awards for purposes of their binding force for domestic courts."); *see BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 41 (2014) (citing Article 41(1) as support for holding that reviewing courts must apply "considerable deference" to decisions by arbitrators about the "interpretation and application" of bilateral investment treaties); *id.* at 44 ("[W]e cannot agree with Argentina that the arbitrators 'exceeded their powers' in concluding they had jurisdiction.").

Accordingly, the ICSID tribunal had the power to determine its jurisdiction over the case and was "the judge of its own competence" as to the jurisdictional challenge raised by Venezuela before the tribunal.  ICSID Convention Art. 41.  And it cannot be relitigated now.  *Valores*, 87 F.4th at 519–520; *Durfee*, 375 U.S. at 111; *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. CV 17-1457 (TJK), 2018 WL 6605633, at *6 n.4 (D.D.C. Dec. 17, 2018) ("[E]ven as to questions of ICSID's jurisdiction, provided that the question has been 'fully and fairly litigated and finally decided' by the tribunal, this Court has no authority to relitigate the matter here.").

> 2.     *The Argument Respondent Claims Here was "Jurisdictional" Was Fully and Fairly Litigated and Finally Decided by the ICSID Tribunal*

As provided for by the ICSID Convention, the ICSID tribunal requested submissions on the specific question of whether it had jurisdiction to decide the question of Venezuela's representation.  And the Guaidó government responded with ***precisely the same argument it now makes here***.  Baratz Decl. Ex. D (Bruton Decl. Ex. 17 (ECF No. 26-18) ¶¶ 8–19).  Specifically, Respondent argued that "[t]he question posed by the Tribunal . . . involves, by implication, the political question of recognition of the government of Venezuela. . . . [which] is an issue beyond the purview of any individual ICSID tribunal," ¶ 8; noted that the U.S. recognizes the Guaidó government, and "[t]hat recognition is binding on all courts in the United States," ¶ 9; listed the

6

countries that recognized the Guaidó government, including the Netherlands, and argued that "[t]he question of recognition of the government of Venezuela is not one of th[e] issues" covered by the BIT, ¶¶ 10–11; and stated, "the decision on the political question of which government is the legitimate government of Venezuela must be made on an institutional level for purposes of matters coming before ICSID, not by individual tribunals . . ." ¶ 15.  Respondent argued: "[I]rrespective of the characterization of the issue, a decision to exclude the Guaidó Government from participation in any case against Venezuela is tantamount to a recognition of the Maduro regime as the legitimate government of Venezuela, recognition that cannot be conferred by any individual ICSID tribunal.  Indeed, Venezuela can never accept the validity of an award or decision against it in a case in which the participation of the legitimate representatives of Venezuela is denied."  *Id.* ¶ 16.

Respondent maintained that "the issue of recognition of the government of Venezuela for purposes of cases before ICSID should be determined by the World Bank Group as a matter of policy for all issues falling within its jurisdiction, including whether Venezuela is properly before individual tribunals or committees of ICSID."  *Id.* ¶ 19.  Respondent further asserted that "[a]ny other course would render any award in this case void for lack of jurisdiction, as well as severely damage the credibility and integrity of the ICSID system itself."  *Id.*

In its decision, the ICSID tribunal ***explicitly addressed*** "Whether the representation issue is a political issue over which the Tribunal has no jurisdiction."[6]  *Id.* at Bruton Decl. Ex. 23 (ECF

---

[6] Respondent cites a few cases holding that "jurisdiction" has many meanings to support its argument that the question of the entry of appearance by legal counsel is jurisdictional rather than procedural, Opp. at 8–9, but this attempted hair-splitting is irrelevant ***where the specific legal issue has already been fully and fairly litigated and finally decided***, as evidenced by the plain text of the ICSID tribunal's heading in its decision.  Baratz Decl. Ex. D (Bruton Decl. Ex. 23 (ECF No. 26-24) at ¶¶ 43–46).

7

No. 26-24) ¶¶ 43–46.  The tribunal first determined that "the representation of Venezuela is indeed a procedural issue pursuant to Article 44 of the Convention" because "'it is an issue dealing with the proper conduct of this arbitration. In other words, it is a procedural issue.'"  *Id.* ¶ 43 (citing *Kimberly-Clark Dutch Holdings, B.V., Kimberly-Clark S.L.U., and Kimberly-Clark BVBA v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB(AF)/18/3), 15 October 2019, Order on Venezuela's Representation, §41)[7]; Schreuer, *supra*, at Article 44 ¶ 54 ("An ICSID tribunal's power to close gaps in the rules of procedure is declaratory of the inherent power of any tribunal to resolve procedural questions in the event of *lacunae*. . . . [T]he tribunal is free of the constraints of procedural law in any national legal system of law, including that of the tribunal's seat.").  Next, the tribunal noted that the jurisdictional provisions in the BIT "must be read in combination with the ICSID Convention," which gives the tribunal jurisdiction to resolve procedural issues.[8]  Baratz Decl. Ex. D (Bruton Decl. Ex. 23 (ECF No. 26-24) ¶ 44).

Finally, the tribunal concluded that by deciding the representation issue, it would not be recognizing a government because "[u]nlike sovereign States, arbitral tribunals have a limited and functional capacity consisting in deciding the issues submitted to them by the disputing parties.  As [the Guaidó government] rightly observes, they do not have the capacity to recognize

---

[7] *Kimberly-Clark* is one of the six ICSID tribunals or *ad hoc* committees that had considered the question of Venezuela's representation at the time the tribunal in this case invited the parties' views.  *See* Baratz Decl. Ex. D (Bruton Decl. Ex. 19 (ECF No. 26-20) at ¶¶ 5–21).  Of those six tribunals or *ad hoc* committees, five (including *Valores*) maintained the status quo and permitted only the Maduro government (which had been representing the actual party to the arbitration, *i.e.* the nation state of the Bolivarian Republic of Venezuela, since the initiation of the arbitral proceedings) to continue to represent Venezuela in future proceedings.  One allowed both the Maduro and Guaidó governments to represent Venezuela in future proceedings.  *Id.*
[8] Article 44 provides:  "Any arbitration proceeding shall be conducted in accordance with the provisions of this Section and, except as the parties otherwise agree, in accordance with the Arbitration Rules in effect on the date on which the parties consented to arbitration.  If any question of procedure arises which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties, the Tribunal shall decide the question."  ICSID Convention Art. 44.

a government as sovereign States would do.  But consequently, they do have the power, in accordance with their specific functions, to render procedural decisions on the representation of parties before them."  *Id.* ¶ 45.  The tribunal continued:  "They do so for the only purpose of assuring the proper conduct of the proceedings and protecting the rights of defence of the parties, which may also depend on criteria such as procedural fairness and efficiency different from those relevant to the recognition of States and governments."  *Id.*

"[E]ven as to questions of ICSID's jurisdiction, provided that the question has been 'fully and fairly litigated and finally decided' by the tribunal, this Court has no authority to relitigate the matter here."  *Tidewater Inv. SRL*, 2018 WL 6605633, at \*6 n.4 (citing *Durfee*, 375 U.S. at 111 and enforcing an ICSID award against Venezuela where "the ICSID tribunal devoted an entire written opinion to that question" of jurisdiction); *Durfee*, 375 U.S. at 111; *Valores*, 87 F.4th at 519–20.  Accordingly, Venezuela cannot now relitigate whether the tribunal's decision to allow the Maduro government's attorneys to continue their representation in the arbitral proceedings was a political question rather than a procedural one, and whether the ICSID tribunal had the jurisdiction to make the decision.[9]

---

[9] The only case Respondent cites for the proposition is not precedential authority, or even particularly persuasive.  *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669 (S.D. Fla. 1988) involves a split between *de jure* (U.S.-recognized) and *de facto* governments of a South American country, but is otherwise completely distinguishable.  Here, Petitioners obtained an arbitral award pursuant to a convention the U.S. has signed, and seek to enforce it pursuant to a statute passed by Congress for that specific purpose, which limits the information the Court may consider.  22 U.S.C. § 1650a.  There, the two regimes sought to appoint corporate officers to an airline, and the court was asked to enter a preliminary injunction and "void the recognition extended by the President and the Executive Branch of the United States."  *Id.* at 673.  For the reasons discussed in Section I.B, *infra*, this case does not involve the question of whether the judicial branch should follow recognition decisions made by the executive branch.

### B.   Venezuela Cannot Relitigate the Enforceability of the Final Award

"Full faith and credit's bar against relitigation is unyielding." *Valores*, 87 F.4th at 519; Opp. at 8 (acknowledging "the direction in *Valores Mundiales* to not relitigate issues previously decided in the arbitration").  One of the issues previously decided in the arbitration is the enforceability of the award, because Respondent argued to the ICSID tribunal that "Venezuela can never accept the validity of an award or decision against it in a case in which the participation of the legitimate representatives of Venezuela is denied."  Baratz Decl. Ex. D (Bruton Decl. Ex. 17 (ECF No. 26-18) ¶¶ 16, 18).  In other words, it argued that "[e]nforcing the arbitral award in these circumstances is unfair to the Republic."  Opp. at 15.

In Paragraph 66 of its decision, the ICSID tribunal quoted Respondent's language, interpreted it, and decided the award would be enforceable.  Baratz Decl. Ex. D (Bruton Decl. Ex. 23 (ECF No. 26-24) ¶ 66).  Specifically, the tribunal noted that Respondent was reserving its "right to challenge the Tribunal's award on this basis for lack of jurisdiction," but "observe[d]" that Article 54.1 required contracting states to recognize ICSID awards as binding and enforce the pecuniary obligations imposed by the award.  *Id.*  The tribunal concluded:  "Therefore, unless the award in these proceedings be annulled by an ICSID *ad hoc* Committee, no Contracting State has the right to negate its legitimacy or validity.  By virtue of ICSID Convention Article 72, that remains applicable to the recognition *and enforcement of the award* to be rendered by this Tribunal, Venezuela's denunciation of the Convention notwithstanding."  *Id.* (emphasis added).

Respondent cannot now relitigate the issue.  The ICSID Convention, and Section 1650a, require the enforcement of the award.

10

**II.    Venezuela is Estopped from Repeating the Same Arguments**

Respondent does not contest the use of collateral estoppel here, except in a single sentence attempting to distinguish the legal issue.  Opp. at 7.  Offensive collateral estoppel precludes a defendant "from relitigating identical issues that the defendant litigated and lost against another plaintiff."  *Jack Faucett Associates, Inc. v. AT&T Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984); *F.T.C. v. GlaxoSmithKline*, 202 F.R.D. 8, 11 (D.D.C. 2001) (Lamberth, J.) (applying non-mutual offensive collateral estoppel).  All three conditions are satisfied here with respect to all issues:  "First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case.  Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case.  Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (citing *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

The legal issue of whether the ICSID award is entitled to full faith and credit under 22 U.S.C. § 1650a is estopped by *Valores* for the reasons set forth in Petitioners' opening brief.  *See Valores*, 87 F.4th at 516, 523; Br. at 20–24.  Furthermore, both the District Court and the D.C. Circuit in *Valores* addressed the jurisdictional question, noting that the drafters of the ICSID Convention "concluded that '[a] domestic court . . . may not re-examine the ICSID tribunal's jurisdiction . . . [or] the fairness and propriety of the proceedings before the ICSID tribunal."  *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, No. 19-cv-00046-ACR-RMM, 2023 WL 3453633, at *2 n.3 (D.D.C. May 15, 2023) (citing Schreuer, *supra*); *Valores*, 87 F.4th at 514, 515.

11

And as set forth in Petitioners' opening brief and summarized below, the other two conditions—that the issue was actually and necessarily determined by a court of competent jurisdiction and that there is no unfairness to Respondent—are fully satisfied here.

### A. Venezuela is Estopped from Arguing That Arbitral Awards Issued After Proceedings In Which the Maduro Government Participated and the Guaidó Government Did Not Cannot Be Enforced in U.S. Courts

The issue of whether arbitral awards issued after proceedings in which the Maduro government participated and the Guaidó government did not can be enforced in U.S. courts has been necessarily and actually litigated not only in *Valores*, where Respondent argued that "because the United States had formally recognized the Guaidó regime, the District Court should not enforce the ICSID awards," 87 F.4th at 514, but also in another case in this District. *See VUS*, 2025 WL 1635370, at *6 (rejecting "Venezuela['s] argue[ment] that 'this Court may not enforce a foreign arbitral award rendered in proceedings in which only the Maduro regime purported to act on behalf of Venezuela, as if the award were binding on the Republic,' because that would recognize the Maduro regime as the government of Venezuela.").

First, in *Valores*, every level of review (from the magistrate judge to the D.C. Circuit) confirmed that the award was enforceable ***regardless of U.S. recognition of the particular Venezuelan government***: *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, No. 19-cv-00046-FYP-RMM, 2022 WL 17370242, at *8 (D.D.C. Aug. 3, 2022) ("It is irrelevant that Interim President Guaidó's government is the only representative of Venezuela authorized to participate in proceedings *here*, in this federal court, including in this enforcement proceeding. The alleged due process error occurred at ICSID, not before a court in the United States.") (internal citations omitted); *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, No. 19-cv-00046-ACR-RMM, 2023 WL 3453633, at *7 (D.D.C. May 15, 2023) ("Here, the question is not whether representatives of the Maduro government may proceed in this courtroom but

12

whether the Court has the power to second-guess the ICSID arbitrators' decision to recognize the Maduro government in their own proceedings.  It does not."); *Valores*, 87 F.4th at 521 ("Venezuela next attempts to skirt the well-established limits of full faith and credit review by suggesting that enforcement of the ICSID awards against Venezuela would contravene the President's Recognition authority under Article II of the Constitution. . . . This argument is clearly a non sequitur. Neither the ICSID Convention nor its implementing legislation undermines the authority of the President of the United States. . . . As the District Court correctly observed, enforcement of the ICSID awards is not equivalent to recognition of the Maduro regime."); *id.* at 522 ("Nor does our enforcement of the ICSID awards imply a denial of the President's recognition of the Guaidó government.  Our enforcement cannot seriously be seen as an attempt by this court to 'aggrandiz[e] its power at the expense of another branch.' . . . Nothing in our enforcement of the ICSID awards forces the Executive to contradict his statements recognizing the Guaidó regime.") (citing *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 30–32 (2015)).

The D.C. Circuit further explained that enforcing ICSID awards "simply follows the path that Congress and the Executive have jointly forged: we apply legislation Congress passed to implement a treaty the President signed and the Senate approved." *Id.*  "An ICSID Arbitral Tribunal and Annulment Committee are not bound by United States law.  Rather, they must follow the framework set out in the ICSID Convention and the procedures adopted by ICSID pursuant to its authority under the ICSID Convention.  The United States agreed to these rules when it became a Contracting State under the ICSID Convention.  And, as noted above, Section 1650a prohibits federal courts from relitigating issues that have been fully considered, addressed, and decided in an ICSID action." *Id.*  "In our constitutional scheme, the judiciary must follow

13

the political branches' lead on matters of foreign affairs. . . . Here, a refusal to enforce the ICSID awards against Venezuela would require this court to ignore the treaty obligations undertaken by the Executive and approved by the Senate and the implementing legislation passed by Congress. ***Enforcement, not its opposite, is what the separation of powers requires.***"  *Id.* at 523 (emphasis added).  This is a final decision on the merits.

Second, the *VUS* court rejected Venezuela's identical argument just last week.  *VUS*, 2025 WL 1635370, at *6 (rejecting the argument that enforcement was equivalent to recognition).  Although the *VUS* court was applying the New York Convention—and addressed the question of whether recognition of the arbitral award would violate the New York Convention's "public policy" exception to enforcement—rather than the ICSID Convention, its reasoning distinguishing recognition cases like *Zivotofsky*, 576 U.S. 1, and *The Maret*, 145 F.2d 431 (3d Cir. 1944) is equally persuasive here.

In *VUS*, as here, "'the *party* to the Arbitration,' and thus the one bound by the Final Award, 'was the Bolivarian Republic of Venezuela—the nation state—and not one government or the other.'"  *VUS*, 2025 WL 1635370, at *7; ECF No. 25-1 at 12 (Respondent explaining that "the party to the arbitral proceeding was the Bolivarian Republic of Venezuela—the nation state").  Relying on *Republic of Iraq v. ABB AG*, 768 F.3d 145, 163–64 (2d Cir. 2014), which Petitioners cited in their opening brief at 17 n.7, the *VUS* court noted that "'the legal position of a foreign state survives changes in its governments,' and 'the obligations of a foreign state are unimpaired by a change in the state's government[;] . . . In other words, the arbitration award runs against the foreign state, not any particular government thereof."  *VUS*, 2025 WL 1635370, at *7.  The *VUS* court found that "critically, the President's recognition decision in 2019 changed only the government of the Bolivarian Republic of Venezuela that the U.S. would recognize; it

14

did not change the United States' recognition of Venezuela as a sovereign state over its territory." *Id.*

"Thus, enforcing an award against the Republic of Venezuela, the same state that incurred the obligation under the award, is perfectly consistent with the Executive's previous and ongoing recognition of that Republic as a sovereign state.  And because the Interim Government is the sole recognized government of Venezuela, according to the Executive, it must answer for the obligations of the Republic of Venezuela even though the Maduro regime incurred the original debt and represented the Republic in part of the arbitration.  Under those principles, ***holding the Republic of Venezuela—represented in this Court by the Interim Government—to that state's obligations under the Final Award is not equivalent to letting the Maduro regime appear in this Court*** to represent Venezuela, the scenario that would implicate recognition." *Id.* (emphasis added).

The *VUS* court noted that "*Zivotofsky* is inapt" because "'the Executive's exclusive [recognition] power extends no further than his formal recognition determination,'" and while a "coordinate branch 'may not enact a law' or take another act 'that directly contradicts it' and either 'effects formal recognition' or 'mandate[s] that the Executive contradict his prior recognition determination,'" "enforcing the Final Award would do neither." *Id.* (citing *Zivotofsky*, 576 U.S. at 30).  The same reasoning applies here, where the cases Respondent cites regarding recognition are focused on the question of "which nations are entitled to sue," *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 319–320 (1978), not whether an arbitration award should be enforced.[10]

---

[10] The *VUS* court also took "judicial notice of the fact that countries around the world varied in their responses to the disputed Venezuelan election that led President Trump to recognize the Interim Government instead of the Maduro regime.  Specifically, some countries—including

15

Furthermore, "*The Maret* is hardly on all fours with the current facts." *VUS*, 2025 WL 1635370, at *8 (citing *The Maret*, 145 F.3d 431). In that case, "the central act of the unrecognized sovereign" was "a formal act or decree," while "[b]y contrast, the Final Award in the instant case is an act or decree of the third-party arbitrator, not the Maduro regime." *Id.*; *see also id.* at *8 & n.5 (noting that the D.C. Circuit has declined to extend *The Maret*'s holding to the context of arbitration award enforcement).

In short, the enforcement issue has been necessarily, fully, and finally litigated by courts of competent jurisdiction.

Finally, collateral estoppel works no unfairness to Respondent. Respondent asserts that "the arbitral panel handed the Maduro regime control over assets in the United States that the Maduro regime otherwise could not in any manner lawfully control based on the Executive Branch's plain direction," Opp. at 15, but that same argument has been considered and rejected by multiple courts in this District. *See, e.g.*, *VUS*, 2025 WL 1635370, at *7 ("[B]ecause the Interim Government is the sole recognized government of Venezuela, according to the Executive, it must answer for the obligations of the Republic of Venezuela even though the Maduro regime incurred the original debt and represented the Republic in part of the arbitration."); *Valores*, 87 F.4th at 523 ("Enforcement, not its opposite, is what the separation of powers requires."); *Valores Mundiales*, 2023 WL 3453633, at *7 ("[T]he question is not whether

---

signatories to the New York Convention—did not consistently recognize Guaidó as the interim president." *VUS*, 2025 WL 1635370, at *4; *id.* at *4 n.4 ("[H]ad VUS sought to enforce the Final Award in a different New York Convention signatory country that recognizes the Maduro regime instead of the Interim Government, such as Argentina"—which is also a signatory to the ICSID Convention—"the Maduro regime's representation of Venezuela in the arbitration would have affirmed the forum state's (Argentina's) public policy, not countermanded it. In that scenario, it would be even less plausible that the Maduro regime's substitution in the arbitration was erroneous.").

representatives of the Maduro government may proceed in this courtroom but whether the Court has the power to second-guess the ICSID arbitrators' decision to recognize the Maduro government in their own proceedings.  It does not."); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. CV 16-1533 (ABJ), 2019 WL 2185040 (D.D.C. May 21, 2019) (recognizing attorneys from the Guaidó regime and enforcing ICSID award).

**III.    Section 1650a Requires This Court to Enforce the Final Award and Give It Full Faith and Credit**

Even if Venezuela was not precluded from raising its defense (which it is), the ICSID Convention and its enabling statute 22 U.S.C. § 1650a require this Court to enforce the Final Award and give it full faith and credit.  All of the elements of recognition under Section 1650a are met here.  The only arguments Respondent makes—that the tribunal lacked jurisdiction to decide the question of which government could represent Venezuela in the arbitral proceedings, and that the award cannot be enforced in U.S. courts—were fully and fairly litigated before the tribunal, and the tribunal's decisions must be enforced by this Court.  Accordingly, this Court should "***recognize*** an award rendered pursuant to this Convention as binding ***and enforce*** the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  ICSID Convention art. 54(1) (emphasis added); *see* Restatement (Third) U.S. Law of Int'l Comm. Arb. Archive § 5.6 TD No 5 cmt. a (2017) ("The ICSID Convention imposes an obligation on courts of the contracting States to recognize and enforce ICSID Convention awards.  It recognizes no grounds on the basis of which recognition or enforcement of such awards may be denied.").

This Court is "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, [it] may do no more than examine the judgment's authenticity and enforce

17

the obligations imposed by the award." *Valores*, 87 F.4th at 515 (citing *Mobil*, 863 F.3d at 102).

Thus, for a district court to recognize and enforce an ICSID award, it must only (1) "establish it

has subject matter and personal jurisdiction over the matter," (2) "authenticate the award," and

(3) "look to whether ICSID would treat the award as binding." *Valores*, 87 F.4th at 519; *Blasket*

*Renewable*, 2024 WL 4298808, at *6 (concluding "that it must enforce the [ICSID] Award

because it satisfies all three of the factors the D.C. Circuit considered in *Valores*").

The Court has subject matter jurisdiction over Venezuela because it falls within specified

exceptions and is therefore not entitled to immunity, a point which Respondent does not dispute.

*Tidewater Inv. SRL*, 2018 WL 6605633, at *4 (citing 28 U.S.C. § 1330); *Saudi Arabia v. Nelson*,

507 U.S. 349, 355 (1993); 28 U.S.C. §§ 1605(a)(1), (6).  The Court has personal jurisdiction over

Venezuela because Venezuela was properly served, a point which Respondent does not dispute.

28 U.S.C. § 1330(b); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C.

Cir. 2002).  Finally, this District is the correct venue for civil actions against foreign states,

particularly for actions seeking to enforce ICSID awards, a point which Respondent does not

dispute.  28 U.S.C. § 1391(f)(4); *Saint-Gobain Performance Plastics Europe v. Bolivarian*

*Republic of Venezuela*, No. 18-cv-1963-LPS, 2019 WL 6785504, at *10 (D. Del. Dec. 12, 2019);

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 118 (2d Cir. 2017).

Nor does Respondent dispute that the Final Award is authentic and ICSID would treat it

as binding.  Therefore, "[b]ased on a straightforward application of Section 1650a, the ICSID

award[] [is] enforceable against Venezuela." *Valores*, 87 F.4th at 520; *OI Eur. Grp.*, 2019 WL

2185040, at *5; ICSID Convention Art. 53(1); Baratz Decl. Ex. D (Bruton Decl. Ex. 23 (ECF

No. 26-24) at ¶ 66) ("[U]nless the award in these proceedings be annulled by an ICSID *ad hoc*

Committee, no Contracting State has the right to negate its legitimacy or validity.  By virtue of

18

ICSID Convention Article 72, that remains applicable to the recognition and enforcement of the award to be rendered by this Tribunal, Venezuela's denunciation of the Convention notwithstanding.").

Accordingly, this Court should recognize and enforce the Final Award, and order Respondent to pay Petitioners the sum of US$985,545,515 plus interest.  Post-judgment interest should be awarded at the same rates Petitioners have been seeking for over a decade: the rates set forth in the Final Award, and discussed in greater detail below.

## IV.    There Are No Disputed Material Facts

Respondent provided no statement of material facts pursuant to Local Rule 7(h) in support of its own cross-motion for summary judgment, and responded to Petitioners' statement of material facts by admitting nearly every paragraph in full.  ECF No. 29-2 ("RSMF").  Petitioners provide additional factual details now only to clarify the interest rates which apply to the Final Award.[11]

First, in Paragraph 32 of the statement of material facts, Respondent incorrectly states, "The Tribunal did not order Venezuela to pay 'plus annual compound interest at the rate of 3.25% from June 27, 2007 until payment in full' on the sum of USD 984,527,000."  RSMF ¶ 32.  But that incorrect statement appears to be based on a misreading of the plain text of the Final Award.  Paragraph 289 of the Final Award provides:  "The non-annulled *dispositif* of the First Award states an interest rate for the amounts of compensation on the merits, including the one

---

[11] Respondent notes that the Original Award from ICSID has Petitioner Mobil Cerro Negro Holding, LLC, a Delaware limited liability company, listed as Mobil Cerro Negro Holding, Ltd.  RSMF ¶ 3.  This is true, but the Final Award from ICSID, which is the award Petitioners are seeking to enforce here, was issued in favor of Mobil Cerro Negro Holding, LLC.  Baratz Decl. Ex. A (Davidson Decl. Ex. 1 (ECF No. 1-5)).  Furthermore, Respondent incorrectly states that "the Maduro regime and the Plaintiffs both filed in late 2018 for a resubmission," Opp. at 3, when in fact only Petitioners filed a request for resubmission, RSMF ¶ 20.

19

which was subsequently annulled. This interest rate"—*i.e.*, 3.25%, *see* Original Award ¶ 404(h) (Baratz Decl. Ex. A (Davidson Decl. Ex. 1 (ECF No. 1-6))) ("these sums shall be increased by annual compound interest on their amount at the rate of 3.25% from 27 June 2007 up to the date when payment of th[ese] sums has been made in full")—"is *res judicata* and remains applicable to the amount of compensation that is accorded by the present Award on the merits." Baratz Decl. Ex. A (Davidson Decl. Ex. 1 (ECF No. 1-5) at ¶ 289). Accordingly, annual compound interest is owed on the sum of USD 984,527,000 at the rate of 3.25% from June 27, 2007 until the date of payment in full.

Second, in Paragraph 33 of the statement of material facts, it is not clear to Petitioners what element of the interest calculations Respondent may be declining to admit, but for the avoidance of any doubt Petitioners respectfully refer the Court to ¶¶ 286–290 of the Final Award. Baratz Decl. Ex. A (Davidson Decl. Ex. 1 (ECF No. 1-5)). The ICSID tribunal calculated the total arbitration costs as $941,623.27 and awarded half of those costs (*i.e.* $470,811.635) to Petitioners. *Id.* ¶ 286. Second, the ICSID tribunal calculated Petitioners' "aggregate legal fees and expenses" as "approximately USD 1,643,110.25," and awarded one-third of that amount, *i.e.* $547,703,41, to Petitioners. *Id.* "The total amount of costs and expenses awarded to the Claimants is therefore of USD 1,018,515.045." *Id.* ¶ 287. With respect to the interest rate that should apply to that sum, the ICSID tribunal stated, "Given the current market conditions as referred to by the Claimants, and given the Respondent's reference to an interest rate the Tribunal may consider appropriate, the Tribunal decides that the abovementioned amount of costs shall bear interest at the rate of 7.75% compounded annually up to the date when payment of this sum has been made in full. Interest on the abovementioned amount shall run as from the date of the Award rendered by this Tribunal," which was July 10,

2023. *Id.* ¶ 290. Accordingly, annual compound interest is owed on the sum of USD 1,018,515.045 from July 10, 2023 until the date of payment in full.

## CONCLUSION

For the foregoing reasons, the Court should grant Petitioners' Motion for Summary Judgment, deny Respondent's Cross-Motion for Summary Judgment, and enforce the pecuniary obligations of the Final Award.

Dated:   June 20, 2025                    Respectfully submitted,


   */s/ Steven K. Davidson*
Steven K. Davidson (D.C. Bar No. 407137)
Michael J. Baratz (D.C. Bar No. 480607)
Molly Bruder Fox (D.C. Bar No. 981619)
Emma Marshak (D.C. Bar. No. 1048357)
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 429-3000
Fax: (202) 429-3902
sdavidson@steptoe.com
mbaratz@steptoe.com
mbfox@steptoe.com
emarshak@steptoe.com

*Counsel for Petitioners*

Of Counsel:

Eugene J. Silva II
Law Department
EXXON MOBIL CORPORATION
800 Bell Street
Houston, Texas 77002
Tel: (713) 656-3636
Fax: (713) 656-3496
eugene.j.silva@exxonmobil.com

21