UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOBIL CERRO NEGRO, LTD.**, *et al.*, | |
| *Petitioners*, | |
| **v.** | Case No. 1:23-cv-3506-RCL |
| **BOLIVARIAN REPUBLIC OF VENEZUELA**, | |
| *Respondent.* | |

## MEMORANDUM OPINION

This action arises out of an attempt by Petitioners Mobil Cerro Negro, Ltd., Venezuela Holdings, B.V., and Mobil Cerro Negro Holding LLC (together, "the petitioners"), to enforce an arbitration award rendered by the International Centre for the Settlement of Investment Disputes ("ICSID") against the Bolivarian Republic of Venezuela ("Venezuela") under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("the ICSID Convention") and its implementing legislation. Because Venezuela did not appear in this case for nearly eight months following its commencement, the Clerk of Court has noted Venezuela's default. Venezuela has now appeared, represented by lawyers associated with Juan Guaidó, a former claimant to the contested presidency of Venezuela, as explained further below. Now before the Court are the petitioners' Motion for Default Judgment, *see* ECF No. 16, Venezuela's Motion to Set Aside the Default, *see* ECF No. 25, the petitioners' Motion for Summary Judgment, *see* ECF No. 27, and Venezuela's Cross-motion for Summary Judgment, *see* ECF No. 32.

The federal statutes implementing the ICSID Convention treat federal courts "as courts of enforcement, not review," and "[b]y design, any review of the merits of an ICSID Arbitral

Tribunal's decision occurs internally." *Valores Mundiales, S.L. v. Bolivarian Republic of Venez.*, 87 F.4th 510, 518 (D.C. Cir. 2023). Thus, because Congress "did not intend federal courts to re-open the merits of ICSID awards," respondents like Venezuela who dispute an ICSID Tribunal's decision in enforcement proceedings face a steep uphill battle. *Id.* at 520. In these proceedings, Venezuela faces more than the usual challenges associated with relitigating an ICSID award. That is because the core argument Venezuela raises as to how it might prevail on the merits—that the ICSID panel lacked jurisdiction to enter the award because it allowed the government of Nicolás Maduro, and not Juan Guaidó, to represent Venezuela in the arbitral proceeding—is squarely foreclosed by the reasoning in *Valores Mundiales*, a binding D.C. Circuit precedent.

As this decision explains, the fact that Venezuela's argument fails as a matter of law places the Court in a seeming predicament. When determining whether to set aside an entry of default, courts must give weight to whether the movant could raise a meritorious defense, and here, as the Court will explain, Venezuela has none. Thus, setting aside Venezuela's default and requiring litigation on the merits would not only direct the parties to beat a dead horse, but in doing so, would also work prejudice on the petitioners by delaying their opportunity to participate in the race among judgment debtors to collect on Venezuela's finite foreign assets. *Koch Mins. Sàrl v. Bolivarian Republic of Venez.*, 514 F. Supp. 3d 20, 41–42 (D.D.C. 2020). Nonetheless, judicial policy strongly favors resolution of cases on their merits, and particularly scorns "the entry of default judgment against a foreign state that has appeared in the case and expressed a desire to contest the claims." *Id.* at 32 (citation omitted); *see also Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 9 (D.D.C. 2005). That is because "[i]ntolerant adherence to default judgments against foreign states could adversely affect [the United States'] relations with nations and undermine the State

Department's continuing efforts to encourage foreign sovereigns to resolve disputes within the United States' legal framework." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 7 (D.C. Cir. 2021) (citation omitted).

Ultimately, Venezuela presents identical—and thus, equally unavailing—arguments in favor of both setting aside the default and in support of its cross-motion for summary judgment. For the reasons that follow, the Court concludes that the best course for balancing judicial policy and fairness to the parties, in light of the binding precedent in *Valores Mundiales*, is to **GRANT** Venezuela's Motion to Set Aside Default; **DENY** the petitioners' Motion for Default Judgment; **GRANT** the petitioners' Motion for Summary Judgment; and **DENY** Venezuela's Cross-motion for Summary Judgment.

## I.    BACKGROUND

### A.  Legal Framework

On October 22, 1991, Venezuela signed the Agreement on Encouragement and Reciprocal Protection of Investments Between the Kingdom of the Netherlands and the Republic of Venezuela, Neth.-Venez., Nov. 1, 1993, 1788 U.N.T.S. 45 ("BIT"). *See* Ex. 1 to Pet'rs' Mot. for Default J. at 2, ECF No. 16-2. Article 9(1) of the BIT provides that a concerned party in a dispute between the two states may submit a request for arbitration to ICSID. If a party prevails in arbitration, Article 54 of the ICSID Convention requires that party to enforce its award by seeking a judgment in the courts of member states. *Valores Mundiales*, 87 F.4th at 513. In the United States, federal courts have exclusive jurisdiction to enforce ICSID awards. *See* 22 U.S.C. 1650a.

### B.  The ICSID Arbitration

In 2007, the petitioners initiated an ICSID arbitration pursuant to the BIT, alleging that the then-President of Venezuela, Hugo Chávez, expropriated the petitioners' investments in oil field development in Venezuela. *See* Award, Ex. 2 to Petrs.' Mot. ¶¶ 1, 86–87, ECF No. 16-3. On

October 9, 2014, the original arbitral tribunal found that Venezuela had expropriated the petitioners' property in connection with two such projects — the Cerro Negro Project and the La Ceiba Project — and awarded the petitioners approximately $1.6 billion plus interest. *Id.* ¶ 404(b). The award consisted of (i) $9,042,482 in compensation for production and export limitations Venezuela implemented affecting the Cerro Negro Project; (ii) $1,411,700,000 in compensation for Venezuela's expropriation of investments in the Cerro Negro Project; and (iii) $179,300,000 in compensation for expropriation of the La Ceiba Project investment.[1] *Id.* ¶ 404(c)–(d), (f).

Venezuela then sought revision of the award, which the tribunal denied on June 12, 2015. *See* Decision on Revision § 5.1, ECF No. 16-3. Following that proceeding, Venezuela sought to annul the original award, and its request was granted in part and denied in part on March 9, 2017. *See* Decision on Annulment ¶¶ 188–93, ECF No. 16-3. In particular, ICSID annulled the award of $1.411 billion related the Cerro Negro Project expropriation but declined to annul the rest of its original award. *Id.*

In 2018, the petitioners resubmitted the annulled portion of their claim before another ICSID tribunal. *See* Resubmission Proceeding Award ¶ 6, ECF No. 16-4. While the Resubmission Proceeding was in early stages, political turmoil befell Venezuela, and ultimately, on January 23, 2019, the State Department recognized Guaidó as the leader of Venezuela, and over fifty nations joined the United States in recognizing Guaidó's administration as the legitimate government of Venezuela. Around March 27, 2019, ICSID received a letter from José Ignacio Hernández, who identified himself as the Special Attorney General of Venezuela. Preliminary Issue ¶ 8, Ex. 23 to

---

[1] The award also provided that the total sum should be paid to the petitioners "net of any Venezuelan tax," that they shall accrue "annual compound interest at a rate of 3.25% from 27 June 2007" until such time as payment has been made in full, that the parties would bear their own costs and fees, and that the parties would equally split ICSID's fees and expenses. *See* Award, Ex. 2 to Petrs.' Mot. ¶ 404(g)–(j), ECF No. 16-3.

Declaration of Leilah Bruton ("Bruton Decl."), ECF No. 26-24.  Hernández was "appointed by the Guaidó government."  *Id.* ¶ 11.  The letter purported to instruct ICSID that:

> any notice or communication from ICSID to the Republic of Venezuela should be addressed to [Hernández] in [his] capacity of [sic] Special Attorney General of the Republic of Venezuela, and not to any other person claiming to act on behalf of the Republic of Venezuela, especially based on alleged mandates given by the Office of the Attorney General of Venezuela.

*Id.* ¶ 8.  The letter further stated that "ICSID should not consider valid any instruction or communication submitted as of February 5, 2019, by any other person—different than [Hernández]—who pretends to act on behalf of the Republic of Venezuela."  *Id.*

Although the lawyers hired by the Maduro government took the position that ICSID "lack[ed] jurisdiction" over the question of the proper legal representatives of Venezuela before the arbitration panel, Guaidó's lawyer urged ICSID to "suspend[]" proceedings against Venezuela until "ICSID resolve[d] the matter."  *Id.* ¶ 9–10.  ICSID, with the urging of the petitioners, agreed with Guaidó's counsel and determined that "a decision on the proper representation of [Venezuela] in this proceeding will be in the interest of the Parties and the integrity of the proceeding."  *Id.* ¶ 21; *see also id.* ¶ 20 (noting that petitioners supported ICSID ruling on the question of representation).

Following two rounds of written submissions, *see id.* ¶ 30, 32, the panel ruled on the representation question in a decision rendered March 1, 2021.  For purposes of the instant motion, the key facts from this decision are those related to the panel's finding that it had jurisdiction to decide which lawyers could represent Venezuela in the ongoing proceedings.  Guaidó's lawyers contended that "the representation issue is a political question of who legitimately represents Venezuela," and over which "[t]he Tribunal has no jurisdiction."  *Id.* ¶ 35.  They urged ICSID to stay the arbitration and argued that "who is entitled to represent Venezuela" should be determined

in accordance with "international recognition by the international community, by the contracting states to the [BIT] or within the World Bank Group." *Id.*

The ICSID panel rejected Guaidó's position that the question of Venezuela's legal representation before the arbitral panel was "a political issue." *Id.* ¶ 43. The panel agreed that the question of the "legitimacy" of the competing regimes in Venezuela was "not within the Tribunal's jurisdiction." *Id.* ¶ 57. But it explained that previous ICSID panels, including cases Guaidó cited, had understood the question of representation as between Maduro and Guaidó as "a procedural issue to be decided pursuant to Article 44 of the ICSID Convention," not a political issue. *Id.* ¶ 43. The ICSID Convention allowed arbitral panels "to render procedural decisions on the representation of parties before them." *Id.* ¶ 45. Doing so "would not be deciding on 'the recognition of a Venezuelan government,'" but rather identifying the proper legal representative for Venezuela in a decision that would be "limited in scope to the [arbitral] proceedings." *Id.* The Tribunal then examined Venezuelan and international law and concluded that Maduro's lawyers were the proper representatives of Venezuela in the arbitral proceedings. *Id.* ¶¶ 57–72.

The resubmission proceedings resumed with Maduro's lawyers representing Venezuela, and on July 10, 2023, a final arbitration award was rendered in favor of the petitioners in the amount of $984,527,000 in compensation for the expropriation of the investments in the Cerro Negro Project, plus $1,018,515 in legal fees, expenses, and costs, with 7.75% annual compound interest from the date of the award. *See* Final Award, Ex. 3 to Decl. of Steven K. Davidson ("Davidson Decl."), ECF No. 16-4. ¶ 291.

## C. Procedural History

On November 22, 2023, the petitioners brought this action against Venezuela to enforce the non-annulled portion of the October 2014 award and the July 2023 award. Compl. ¶¶ 1, 13. Pursuant to a reservation to the Hague Service Convention, Venezuela does not accept foreign

service of process by mail.[2]  Ex. 4 to Davidson Decl., ECF No. 16-5.  The petitioners therefore dispatched copies of the pleadings in this case to the State Department for diplomatic service, which was effective as of September 4, 2024.  *See* Return of Service/Affidavit at 1, ECF No. 12.  Venezuela's answer was therefore due by November 3, 2024.  *See* Docket Entry at ECF No. 12; 28 U.S.C. § 1608(d) (requiring sovereign defendants in FSIA cases to answer complaints within sixty days of service).  Venezuela did not answer or otherwise respond, and on November 18, 2024, the Clerk of this Court noted Venezuela's default on the docket.  *See* Entry of Default, ECF No. 14; Fed. R. Civ. P. 55(a).  On February 13, 2025, the petitioners moved for default judgment.  *See* ECF No. 16.

Counsel for Venezuela first appeared in this case on April 10, 2025, and on May 12, 2025, Venezuela moved to set aside the default.  *See*, ECF No. 25; Notice of Appearance, ECF No. 18.  The petitioners opposed the motion to set aside on May 27, 2025, *see* ECF No. 26, and Venezuela replied on June 3, 2025, *see* ECF No. 28.   While those motions were pending, the petitioners moved for summary judgment, *see* ECF No. 27, and Venezuela cross-moved for summary judgment, *see* ECF No. 32.  The parties timely opposed and replied, and all four motions are now ripe.

---

[2] Service of process under the FSIA can be made upon a foreign state in four ways: (1) by delivering a copy of the summons and complaint in accordance with a special arrangement for service between the plaintiff and the foreign state, (2) by delivering a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents, (3) by sending a copy of the summons and complaint and a notice of suit, along with a translation of each into the official language of the foreign state, by any form of certified mail addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state, or (4) by sending two copies of the summons and complaint and notice of suit, along with a translation of each, to diplomatic channels to the foreign state.  28 U.S.C. § 1608.

## II.    LEGAL STANDARDS

### a.  Motion to Set Aside an Entry of Default

Rule 55(c) of the Federal Rules of Civil Procedure allows a federal court to set aside, or vacate, an entry of a default for good cause.  To determine whether a motion to vacate a default is supported by good cause, district court balance "whether (1) the default was willful, (2) a set-aside would prejudice [the petitioner], and (3) the alleged defense was meritorious."  *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 966 (D.C. Cir. 2016) (quoting *Keegel v. Key W. & Caribbean Trading*, 627 F.2d 372, 373 (D.C. Cir. 1980)).  This standard "entrusts the determination to the discretion of the court," *id.*, and "[n]o single factor is dispositive." *Mohammad Hilmi Nassif & Partners v. Republic of Iraq*, No. 17-cv-2193, 2020 WL 1444918, at *20 (D.D.C. Mar. 25, 2020).  All doubts must be resolved in favor of the movant, as there are "strong policies favoring the resolution of genuine disputes on their merits."  *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104, 109–10 (D.D.C. 2009) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016).

### b.  Motion for Default Judgment

Where a party has failed to respond to a complaint and the clerk has noted the party's default, a Court may enter default judgment.  *See* Fed. R. Civ. P. 55(b)(2).  For a foreign sovereign defendant, the movant must also "establish[] his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  That requires the movant to present "a legally sufficient prima facie case," meaning "a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff."  *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 63 (D.D.C. 2008).

### c. Motion for Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true." *Turkmani v. Republic of Bolivia*, 193 F. Supp. 2d 165, 169 (D.D.C. 2002). The non-movant must "establish more than 'the mere existence of a scintilla of evidence' in support of its position," and it "may not rely solely on allegations or conclusory statements." *Id.* at 169–70.

## III.  DISCUSSION

The Court's discussion largely centers on Venezuela's motion to set aside the default in this case. As noted above, to determine whether a movant has shown good cause to set aside a default, the Court must balance "whether (1) the default was willful, (2) a set-aside would prejudice [the petitioner], and (3) the alleged defense was meritorious." *Khochinsky*, 1 F.4th at 7. As set forth below, the Court finds the willfulness factor slightly favors Venezuela, and the prejudice factor slightly favors the petitioners. But critically, Venezuela offers only one potential defense on the merits: that the ICSID lacked jurisdiction to exclude Guaidó's representatives from the arbitral proceedings. That argument is foreclosed under the D.C. Circuit's decision in *Valores Mundiales*. The Court then weighs the factors to determine whether good cause exists and charts a path forward.

### i. Respondent did not willfully default.

"The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Flanagan v. Islamic Republic of Iran*, 190 F. Supp. 3d 138, 156 (D.D.C. 2016) (quoting *Int'l Painters & Allied Trades Union & Indus. Pension Fund v.*

*H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2011)).  The docket in this case indicates that Venezuela failed to defend this lawsuit from at least September 19, 2024, when the State Department returned the affidavit of foreign service on the respondent, until April 10, 2025, when counsel for Venezuela entered an appearance in this case and moved for an extension.  Venezuela does not dispute this point, and thus, it concedes its abandonment lasted nearly eight months, including nearly five months following the Clerk's entry of default on November 18, 2024.

Venezuela contends, however, that it did not willfully default because circumstances outside of its control prevented it from contesting the case.  Specifically, Venezuela faced a flood of U.S. litigation during a period of domestic political turmoil.  Ex. A. to Mot., Decl. of Gustavo Marcano ¶ 7, ECF No. 25-2 ("Marcano Decl.").  It contends that the turmoil caused delays in accessing Venezuela's public monies, frustrating a timely response in this case.  *Id.* ¶¶ 8–9.  The petitioners respond that this case is the latest in a "continued pattern of delinquent behavior" by Venezuela and urges the Court to infer willfulness from such conduct.  Resp. to Mot. at 11 (quoting *Egypt Dep't of Def. v. Alboghdady*, No. 21-cv-1144, 2022 WL 715229, at *9 (D.D.C. Mar. 10, 2022)).

It is true, as the petitioners assert, that the "[m]ere passage of time" can be "enough to indicate that a default was willful."  *Koch Mins.*, 514 F. Supp. 3d at 40; *see also Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 82–83 (D.D.C. 2011) (holding the defendant willfully defaulted because parallel cases showed express intentions to default); *Flanagan*, 190 F. Supp. 3d at 157 (finding the defendant willfully defaulted because it sought no extension of filing deadlines and was properly served); *Biton v. Palestinian Interim Self Gov't Auth.*, 233 F. Supp. 2d 31, 33 (D.D.C. 2002) (similar).  Moreover, the passage of five months without any litigation effort from Venezuela distinguishes this case from the often forgivable circumstance in which the defaulting

party "entered an appearance and sought to litigate the[] matter[] soon after the Clerk entered the default." *Cf. Redes Adinas de Comunicaciones S.R.L. v. Republic of Peru*, No. 22-cv-3631, 2024 WL 4286107, at *8 (D.D.C. Sept. 24, 2024). Finally, the Court acknowledges the past litigation tactics that the petitioners call attention to. Yet courts in this district "regularly disregard[] the willfulness of a foreign sovereign's default once it [has] appear[ed] in court to defend an action." *Id.* at *8 (citing cases). In light of such custom and Venezuela's plausible representation that political turmoil interfered with its ability to mount a timely response, the Court concludes that the willfulness factor weighs slightly in favor of Venezuela.

### ii. Setting aside the default judgment would prejudice the petitioners.

Next, the Court must consider whether setting aside Venezuela's default would prejudice the petitioners. When assessing prejudice, "courts consider the possible, tangible harms that may flow from a party's delayed appearance in the case, including 'loss of evidence, increased difficulties of discovery, and an enhanced opportunity for fraud or collusion.'" *Flanagan*, 190 F. Supp. 3d at 159 (citing *Gilmore*, 675 F. Supp. 2d at 110). An unresponsive party's delay, standing alone, generally does not suffice to show prejudice. S*ee Keegel*, 627 F.2d at 374. Only "*unnecessarily* drawing out proceedings 'unfairly prejudices [a] plaintiff to some degree.'" *Koch Mins.*, 514 F. Supp. 3d at 41 (citation omitted). Venezuela "has the burden to show that setting aside the default judgment will pose no prejudice" for the petitioners. *Flanagan*, 190 F. Supp. 3d at 159.

The petitioners contend that vacating the default would prejudice them by hindering their ability to collect on the judgment in light of the "creditor's race taking place in the United States for Venezuela's assets." ECF No. 26 at 28. Citing the fact that courts administering the distribution of Venezuela's domestic assets have implemented a "first in time, first in line" system, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, No. 17-mc-151-LPS, 2023 WL 4826467,

at \*9 (D. Del. July 27, 2023), they say that further delay decreases the real value of their eventual judgment.  This is particularly so, they contend, given that ICSID litigation generally "need not be protracted."  *Koch Mins.*, 514 F. Supp. 3d at 41.  The Court appreciates this concern and agrees that the petitioners' argument is not merely a cloaked, mine-run complaint of prejudicial delay. *Cf. Keegel*, 627 F.2d at 274 (holding that the mere fact "[t]hat setting aside the default would delay satisfaction of plaintiffs' claim, should plaintiffs succeed at trial, [was] insufficient" to establish prejudice).  Rather, the petitioners here contend that the delay is likely to cause them to miss out on finite opportunities to satisfy an eventual judgment based on the specific nature of particular collection proceedings.

Venezuela's sole response is that the prejudice to the petitioners is mitigated by the fact that the parties have already briefed cross-motions for summary judgment—so even if this case were to proceed to the merits, any delay could reasonably be expected to be modest.  ECF No. 28 at 3.  The opportunity to swiftly litigate merits briefing may indeed alleviate prejudice.  *See Koch Mins.*, 514 F. Supp. 3d at 42 (ordering "expedited briefing" on merits issues to "preclude Venezuela from running out the clock" on potential collection to mitigate risk of prejudice).  Yet the *Keegel* factors do not exist in siloed vacuums.  Because the Court, as explained below, finds that Venezuela has failed to present a meritorious argument, it agrees that prolonging this litigation prejudices the petitioners because it forecloses opportunities for the petitioners to collect on the judgment they will ultimately be entitled to, without providing any discernible concomitant benefit.

### iii.  Venezuela Has No Meritorious Defense

Venezuela contends it has a meritorious defense, namely, that the ICSID panel lacked jurisdiction over the resubmission proceeding because it barred Guaidó's attorneys from

representing Venezuela.  *See* Mot. at 8–10.  This factor presents only a "modest requirement." *Koch Mins.*, 514 F. Supp. 3d at 42.  A defaulting party's defense is "meritorious" within the meaning of the Rule 55(c) "good cause" standard if it contains "even a hint of a suggestion" which, if proven at trial, "would constitute a complete defense" to liability.  *Keegel*, 627 F.2d at 374. "Likelihood of success is not the measure."  *Koch Mins.*, 514 F. Supp. 3d at 42 (quoting *Keegel*, 627 F.2d at 374).  Yet Venezuela's jurisdiction argument is directly contrary to binding D.C. Circuit precedent and, consequently, it fails to surmount even this low bar for presenting a meritorious defense.

The "[ICSID] Convention and its implementing legislation strictly limit a federal court's authority to review an ICSID award."  *Valores Mundiales*, 87 F.4th at 518.  As Venezuela recognizes, the rule in this Circuit is that courts may not examine the merits of an ICSID tribunal's award because the statute implementing the ICSID treaty affords ICSID awards "the same full faith and credit" that the court would afford to a "final judgment" rendered in state court.  *Id.* at 518 (quoting 22 U.S.C. § 1650a(a)); *see also Mar. Int'l Nominees Establishment v. Republic of Guinea*, 693 F.2d 1094, 1103 n.14 (D.C. Cir. 1982) ("ICSID arbitrations are to be enforced as judgments of sister states.").

The full faith and credit owed to judgments "is exacting."  *Valores Mundiales*, 87 F.4th at 519 (quoting *Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998)).  And "the keystone of the full faith and credit obligation" is "[p]reventing [the] relitigation of issues already decided."  *Id.* (quoting *Underwriters Nat'l Assur. Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982)).  Thus, the full faith and credit bar "precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based."  *Id.* (quoting *V.L. v. E.L.*, 577 U.S. 404, 407 (2016)).

Despite the "unyielding" bar on relitigating ICSID proceedings in federal court, *id.*, Venezuela attempts to shoehorn its putative merits argument into a narrow exception for jurisdictional challenges to the ICSID panel, seizing on the D.C. Circuit's acknowledgment that "want of jurisdiction" is "an exceptional instance in which a judgment may be denied full faith and credit." *Id.*; *see also* Mot. at 8. And Venezuela insists that "the D.C. Circuit left open in *Valores Mundiales* the issue of when a jurisdictional issue can be an 'exceptional instance' in which an arbitral judgment may be denied full faith and credit." ECF No. 28 at 9. Venezuela, however, elides the next sentence of the D.C. Circuit's reasoning. As the Court went on to explain: "However, *even* [the jurisdiction] exception *must yield* to the prohibition against relitigation." *Valores Mundiales*, 87 F.4th at 519–20 (emphasis added). Thus, "even as to questions of jurisdiction," an enforcing court must afford full faith and credit to the ICSID panel's decision so long as the jurisdictional question was "fully and fairly litigated" in the ICSID proceedings "and finally decided" by the panel. *Id.* at 520 (quoting *Durfee v. Duke*, 375 U.S. 106, 111 (1963)); *see also Durfee*, 375 U.S. at 112 ("[T]he general rule is no different when the claim is made that the original forum did not have jurisdiction over the subject matter.").

The question, then, is whether the ICSID Tribunal's jurisdiction to select between Maduro's lawyers or Guaidó's lawyers as Venezuela's representatives was "fully and fairly litigated" in the ICSID proceedings "and finally decided" by the panel. The arbitration record answers both questions affirmatively.

First, the jurisdiction issue was "fully considered," as the record indicates that the ICSID panel "carefully addressed" the arguments Guaidó presented. *Valores Mundiales*, 87 F.4th at 520. The resubmission panel recognized that Guaidó's "argument" was that "the issue of the representation of Venezuela in the [resubmission] proceedings [fell] outside [ICSID's] arbitral

jurisdiction."[3]  Ex. 23 to Bruton Decl. ¶ 44, ECF No. 26-24.  Venezuela does not dispute that characterization of the issue.  The Tribunal explained that a line of ICSID decisions, including decisions relied on by Guaidó, had concluded that the representational issue was not a "political issue," which would place it outside the tribunal's jurisdiction, and instead concluded the issue was "procedural," which allowed the tribunal to rule on it.  *Id.* ¶ 43.  The reason why the issue was not a political question was that ICSID lacks "the capacity to recognize a government as sovereign States would do," and so "[i]n deciding on the representation issue, the Tribunal would not be deciding on 'the recognition of a Venezuelan government.'"  *Id.* ¶ 45.  Rather, the issue of Venezuela's legal representation before ICSID was "limited in scope to the[] [arbitral] proceedings,'" and thus procedural.  *Id.* (quoting *Valores Mundiales, S.L. and Consorcio Andino, S.L. v. Bolivarian Republic of Venez.*, ICSID Case No. ARB/13/11, Annulment Proceedings, Procedural Order No. 2, ¶ 32 (Aug. 29, 2019)).  Critically, as in previous federal litigation on the same subject, Venezuela does not dispute that the Tribunal "heard and fully addressed all of its arguments," but rather, "simply objects to [its] disposition of the case."  *Valores Mundiales*, 87 F.4th at 520.

Second, the Tribunal rendered a final determination that the representational issue fell within its jurisdiction.  After the analysis above, the panel "reject[ed]" Guaidó's "objection to jurisdiction as unfounded."  Ex. 23 to Bruton Decl. ¶ 46, ECF No. 26-24.  The Tribunal then turned to the merits of the representation issue, exercising the very jurisdiction it had just established, consistent with it having made a final determination that the panel had the jurisdiction to do so.

---

[3] The Tribunal also specifically discussed the cases cited in Guaidó's briefs but concluded that those cases supported the Tribunal's jurisdiction.  *See* Decl. of Leilah Bruton Ex. 23 ¶ 43 & n.7.

*See id.* ¶ 47 ("The qualification of the representation issue as 'procedural' within the meaning of Article 44 of the ICSID Convention founds the Tribunal's power to determine the issue . . . .").

Thus, "there can be no doubt" that the question of the Tribunal's jurisdiction to determine the "Guaidó government's participation was 'fully and fairly' argued by the parties and 'finally decided'" by the tribunal. *Valores Mundiales*, 87 F.4th at 521. The question of jurisdiction is therefore entitled to full faith and credit, and neither § 1650a nor D.C. Circuit precedent could possibly permit this Court to second guess that ruling on its merits.

Venezuela briefly nods to one other argument, equally unavailing. It contends that enforcing the ICSID petition would amount to judicial recognition of the Maduro administration as the legitimate ruler of Venezuela — impinging on the President's authority to recognize foreign governments and thus violating the separation of powers. ECF No. 25-1 at 13. This argument, too, runs afoul of the D.C. Circuit's holding in *Valores Mundiales*. As the D.C. Circuit explained, and the Court is well aware, the power to formally recognize "that a particular regime is the effective government of a state" amounts to "a political rather than a judicial question." *Valores Mundiales*, 87 F.4th at 522 (first quoting *Zivotofsky v. Kerry*, 576 U.S. 1, 11 (2015); and then quoting *Guaranty Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 137 (1938)). But the mere "enforcement of [an] ICSID award[] is not equivalent to recognition of the Maduro regime" and does not "imply a denial of the President's recognition of the Guaidó government." *Id.* at 521–22. The ICSID Convention and Section 1650a, as explained above, express a policy against the relitigating of ICSID awards and sharply circumscribe the scope of judicial review in such proceedings. *Id.* at 522. Indeed, under the treaty obligations ratified by the political branches, the Court quite simply is "not permitted to examine . . . the ICSID tribunal's jurisdiction to render [an] award." *Id.* (quoting *Mobil*, 863 F.3d at 102). As the D.C. Circuit explained:

> In our constitutional scheme, the judiciary must follow the political branches' lead on matters of foreign affairs. Here, a refusal to enforce the ICSID award[] against Venezuela would require this court to ignore the treaty obligations undertaken by the Executive and approved by the Senate and the implementing legislation passed by Congress. Enforcement, not its opposite, is what the separation of powers requires.

*Id.* at 523. Venezuela has not raised any reason why the Court could or should depart from that holding in this case. Venezuela, therefore, is without a meritorious defense.[4] This factor weighs heavily against setting aside the default.

\*\*\*

The foregoing analysis presents the Court with an unenviable choice between law and policy. The binding law of this Circuit makes clear that Venezuela lacks even a hint of a meritorious argument. It is also clear that, on the merits, Venezuela intends to pursue only this failing argument, because that is the only ground raised in Venezuela's cross-motion for summary judgment. And because the argument is without merit, the Court concludes that further delay would work unfair prejudice on the petitioners by jeopardizing their opportunities to collect on an eventual judgment. These considerations weigh strongly in favor of declining to set aside the default judgment and moving for a default judgment.

Yet "courts also 'universally favor trial on the merits.'" *Keegel*, 627 F.2d at 375 (quoting *Erick Rios Bridoux v. E. Air Lines*, 214 F.2d 207, 210 (D.C. Cir. 1954)). This Court is no exception. Thus, "while a court has discretion to decide whether to set aside an entry of default, 'there is a strong policy favoring the adjudication of a case on its merits.'" *Acree v. Republic of Iraq*, 658 F. Supp. 2d 124, 127 (D.D.C. 2009). And doubly so in cases involving foreign state

---

[4] The petitioners contend that Venezuela is doubly forbidden from raising these arguments because, as the losing party in *Valores Mundiales*, Venezuela is collaterally estopped from raising the issue again. Because *Valores Mundiales* settles the question on its merits and constitutes binding precedent, the Court instead resolves the case on that ground, without taking any position on whether estoppel would provide a separate basis for the same disposition of the case.

defendants: a strong presumption counsels "against the entry of default judgment against a foreign

state that has appeared in the case and expressed a desire to contest the claims." *Koch Mins.*, 514

F. Supp. at 32 (quoting *Owens*, 374 F. Supp. 2d at 9); *but see Flanagan*, 190 F. Supp. 3d at 183

(declining to vacate default against Sudan, with narrow exception, where factors overwhelmingly

defeated finding good cause).

Ultimately, the question of whether to vacate a default "lies within the discretion of the

trial court." *Keegel*, 627 F.2d at 373. In this case, an expedient ruling on the merits would respect

the judicial preference for avoiding defaults against foreign sovereigns, while "preclud[ing]

Venezuela from running out the clock" on the petitioners' opportunity to attach assets to satisfy its

judgment and, thus, mitigate much of the prejudice they assert. *Koch Mins.*, 514 F. Supp. 3d at

42. Critically, the Court's foregoing analysis is dispositive of the merits of this case. The only

basis Venezuela raises in opposition to the petitioners' motion for summary judgment, and in

support of Venezuela's cross-motion, is the same jurisdictional challenge to the ICSID

Resubmission Tribunal that the Court just rejected.[5] The parties do not raise any genuine dispute

---

[5] The petitioners contend that the Court has subject-matter and personal jurisdiction over Venezuela in this proceeding, and that venue is proper in the District of Columbia. *See* Mem. in Support of Mot. for Summary J. at 14–19, ECF No. 27-1. Venezuela does not dispute personal jurisdiction or venue in its opposition to summary judgment, and as such, those points are conceded. Nor does Venezuela take issue with the petitioners' arguments concerning the Court's subject-matter jurisdiction, and the Court agrees that it has jurisdiction to decide this case. Federal district courts have "subject-matter jurisdiction over 'any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity.'" *Tidewater Inv. SRL v. Bolivarian Republic of Venez.*, No. 17-cv-1457-TJK, 2018 WL 6605633, at *4 (D.D.C. Dec. 17, 2018) (citing 28 U.S.C. § 1330). Under the Foreign Sovereign Immunities Act ("FSIA"), foreign sovereigns are "presumptively immune from the jurisdiction of United States courts[,] unless a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). The dispute here falls within the FSIA's arbitration exception because "the judgment is based on an order confirming an arbitral award rendered against the foreign state." 28 U.S.C. § 1610(a)(6). "To proceed under [§ 1610(a)(6)] a district court must find three 'jurisdictional facts': (1) an arbitration agreement, (2) an arbitration award, and (3) a treaty potentially governing award enforcement." *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (quoting *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015)). The burden of production is on the petitioners, *see id.*, and they meet all three here. First, there is an arbitration agreement. Investment treaties like the BIT, which are agreements between two states that explicitly provide for ICSID arbitration "for the benefit" of investors like the petitioners, operate as "a unilateral offer to arbitrate," which is deemed accepted as an "arbitration agreement" when a private party notices an intent to arbitrate pursuant to the treaty's terms. *Id.* at 1101–02. Second, ICSID entered a final award in favor of the petitioners. Baratz Decl. Ex. A

of material fact, *see* Statement of Facts, ECF No. 29-2 (admitting all asserted material facts as to the existence and validity of the ICSID award). The petitioners are thus entitled to judgment as a matter of law. Thus, the Court concludes that the proper balancing of the policy favoring judgments on the merits against foreign sovereigns, coupled with the posture and presentation of this case, calls for the entry of summary judgment against Venezuela. *See Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, No. 1:19-cv-00046-ACR-RMM, 2023 WL 3453633, at *8 (D.D.C. May 15, 2023) (affirming report and recommendation reaching similar disposition).

## IV. CONCLUSION

In the exercise of its discretion based on the current procedural facts of this case, the Court rules as follows. The Court will **GRANT** the Motion to Set Aside Default Judgment, **DENY** the Motion for Default Judgment, **GRANT** the petitioner's Motion for Summary Judgment, and **DENY** Venezuela's cross-motion.

A separate order and judgment will issue.


Date: September 26, 2025

Royce C. Lamberth
United States District Judge

---

(Davidson Decl. Ex. 1 (ECF 1-5)). Finally, Article 54 of the ICSID Convention, which calls for recognition and enforcement of awards, supplies the existence of a treaty for purposes of the inquiry's third prong. Venezuela does not dispute any of these jurisdictional facts. *See NextEra*, 112 F.4th at 1100 (explaining that once the petitioner makes an initial showing as to jurisdiction, the burden shifts to the "the foreign sovereign to 'establish the absence of the factual basis by a preponderance of the evidence'"). And the Court, in any event, finds that each showing is satisfied by the factual record before it.